R. Bruce Carlson, Esq.
Kelly K. Iverson, Esq.
Kevin W. Tucker, Esq.
 (*All pro hac vice*)
**CARLSON LYNCH SWEET KILPELA & CARPENTER, LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
(412) 322-9243 (telephone)
(412) 231-0246 (fax)
Email: bcarlson@carlsonlynch.com
Email: kiverson@carlsonlynch.com
Email: ktucker@carlsonlynch.com

James J. Davis, Jr., AK Bar No. 9412140
Goriune Dudukgian, AK Bar No. 0506051
**NORTHERN JUSTICE PROJECT, LLC**
310 K Street, Suite 200
Anchorage, AK 99501
(907) 264-6634 (telephone)
(866) 813-8645 (fax)
Email: gdudukgian@njp-law.com
Email: jdavis@njp-law.com

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| KATIE VAN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LLR, INC. d/b/a LuLaRoe, and LULAROE, LLC<br><br>Defendants. | Case No. 3:18-cv-00197-HRH<br><br><br>Filed Electronically |

# NOTICE OF PLAINTIFF'S RESPONSE TO DEFENDANTS' EVIDENTIARY OBJECTIONS TO DECLARATIONS OF KELLY IVERSON AND KATIE VAN FILED IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

## I. INTRODUCTION

Defendants filed a Motion to Dismiss Plaintiff's Complaint under, in part, Rule 12(b)(1). In support thereof (and in support of its Rule 12(b)(6) and 12(f) motions), Defendant submitted evidence outside of the pleadings in the form of a Declaration of Jamie Ellis and Request for Judicial Notice. The Declaration of Jamie Ellis included misleading statements of facts and half-truths. In response, and in support of Plaintiff's Opposition to the Motion, Plaintiff submitted her own evidence, consistent with the legal standards and practices under Rule 12(b)(1). For the reasons set forth below, Plaintiff's evidence should be considered by this Court, and LuLaRoe's objections overruled.

## II. LEGAL STANDARD

"On a motion to dismiss pursuant to Rule 12(b)(1), Federal Rules of Civil Procedure, the court is not restricted to the scope of the pleadings but may review evidence outside the pleadings concerning the existence of subject matter jurisdiction." *Alaska Cargo Transport, Inc. v. Alaska R.R. Corp.*, 834 F. Supp. 1216, 1220 (D. Alaska 1991) (J. Holland), *aff'd*, 5 F.3d 378 (9th Cir. 1993) (*quoting McCarthy v. United States,* 850 F.2d 558 (9th Cir. 1988); *Biotics Research Corp. v. Heckler,* 710 F.2d 1375 (9th Cir. 1983)).

As Judge Sedwick recently summarized:

> In order to survive a defendant's motion to dismiss, the plaintiff has the burden of proving jurisdiction. Where the defendant brings a facial attack on

*Van v. LLR, Inc., et al*
Case No. 3:18-cv-00197-HRH                                                                 1

the subject matter of the district court, the court assumes the factual allegations in the plaintiff's complaint are true and draws all reasonable inferences in the plaintiff's favor. The court does not, however, accept the truth of legal conclusions cast in the form of factual allegations. Where the defendant brings a factual attack—that is, where the movant challenges the substantive allegations supporting jurisdiction—**the court may consider evidence outside the pleadings to determine whether jurisdiction exists**.

*Scudero v. Moran*, 230 F. Supp. 3d 980, 983 (D. Alaska 2017) (emphasis added) (*citing Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)) (internal citations omitted).

Once Defendants convert their Motion to Dismiss into a factual motion by presenting evidence outside of the Complaint, Plaintiff must furnish evidence necessary to satisfy her burden to establish subject matter jurisdiction. *Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa Cty.*, 343 F.3d 1036, 1039, n. 2 (9th Cir. 2003) (parties supplied affidavits and public documents in support of their respective positions). Once converted to a factual challenge, as here, the Court is not required to presume the truthfulness of Plaintiff's allegations in her Complaint. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

"There are only a few procedural limitations placed on a district court when it faces a factual challenge to a complaint's jurisdictional allegations." *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989) (*citing* 5 C. Wright & A. Miller, *Federal Practice and Procedure,* § 1350, at 558–59 (1969); *Crawford v. United States,* 796 F.2d 924, 929 (7th Cir. 1986) ("No format is specified by statute or rule for evidentiary hearings on jurisdiction; any rational mode of inquiry will do.")). Indeed, the Court can take evidence

and make any findings of fact necessary to determine the jurisdictional question, if it can be done separate from the merits. *Rosales v. United States,* 824 F.2d 799, 802–803 (9th Cir. 1987). Further, it may also permit discovery. *San Luis & Delta-Mendota Water Auth. v. U.S. Dep't of the Interior*, 905 F. Supp. 2d 1158, 1167–68 (E.D. Cal. 2012). "However, if the jurisdictional issue and substantive claims are so intertwined that resolution of the jurisdictional question is dependent on factual issues going to the merits, the court should dismiss for lack of jurisdiction only if the material facts are not in dispute and the moving party is entitled to prevail as a matter of law. Otherwise, the intertwined facts must be resolved by the trier of fact." *Id.*

In addition to the 12(b)(1) Motion, Defendants posit that their Motion to Dismiss Plaintiff's claims is pursuant to Rule 12(b)(6) and their Motion to Strike Class Allegations based on lack of superiority and adequacy of representation is pursuant to Rule 12(f). Despite this, the Rule 12(b)(6) and 12(f) motions are truly Rule 56 motions because, for each of those arguments, Defendants rely on facts outside of the pleadings – namely, their Declaration of Jamie Ellis alleging (without providing any accounting) that Defendants refunded the fraudulent overcharges to Plaintiff and the class. (*See* ECF 28, Section IV(B)(1) (arguing that Plaintiff cannot establish ascertainable loss under the UTPA because of Defendants "comprehensive Refund Program, which has already provided her a full refund"); Section IV(C) (arguing that Plaintiff cannot establish a claim for conversion because she "has already been refunded"); Section V(B) (arguing that Defendants' refunds program is superior to this class action, and citing Mr. Ellis' Declaration in support of that

*Van v. LLR, Inc., et al*
Case No. 3:18-cv-00197-HRH  3

argument); an Section V(C) (arguing that Plaintiff is an inadequate class representative because she was refunded)).

## III. ARGUMENT

Because LuLaRoe filed a 12(b)(1) Motion, Plaintiff provided this Court with declarations and record evidence of the allegations in the Complaint, which cannot be taken as true in such factual attack. The factual background of this action is important in light of Plaintiff's claims under the UTPA and for conversion. Here, LuLaRoe attempts to frame the only "relevant" evidence for its Motion to Dismiss as its own self-serving declaration, including misstatements and half-truths about its overcharges and refunds. Plaintiff counters that evidence and impeaches those misstatements and half-truths with testimony from LuLaRoe and documents produced by LuLaRoe (and bates numbered "LLR"). Plaintiff also counters LuLaRoe's Rule 23 challenges with evidence of the conduct of LuLaRoe and Plaintiff's purpose for bringing this action.

LuLaRoe's purported "refunds" must be considered in light of its conduct. Indeed, the UTPA was "designed to meet the increasing need in Alaska for the protection of consumers as well as honest businessmen from the depredations of those persons employing unfair or deceptive trade practices. The act protects the consumer from deceptive sales and advertising practices, and it protects honest businesses from their unethical competitors." *Donahue v. Ledgends, Inc.*, 331 P.3d 342, 353 (Alaska 2014). Here, Plaintiff provides evidence to support her Amended Complaint to show that: (1) LuLaRoe intentionally and knowingly overcharged its customers; (2) it passed these charges onto its

customers in order to save itself from overpaying taxes because of known limitations and miscalculations of its faulty POS system; and (3) that it hid its knowledge of its unlawful tax overcharges from its employees, retailers, and customers until it was sued in Court. Further, even if LuLaRoe (as it contends) planned at the time of implementing the 2016 Tax Policy overcharges to later refund its customers, these facts only support Plaintiff's causes of action. In essence, LuLaRoe is asking this Court to sanction its calculated decision to take an unapproved, interest free loan from its customers, in the guise of a "tax," without its customers' knowledge and at their expense, claiming that the delayed repayment of those fraudulent charges, without interest or any penalty, immunizes LuLaRoe from liability for its bad acts. These background facts are relevant and important to this Court's determination of the Motion to Dismiss because, if LuLaRoe may escape its intentional fraud by making belated refunds, then any retailer "could freely [and intentionally] misrepresent the benefits of their products secure in the knowledge that [their belated refunds] effectively immunizes them from a suit. . ." *Korolshteyn v. Costco Wholesale Corp.*, No. 3:15-cv-709, 2017 WL 1020391, *8 (S.D. Cal. Mar. 16, 2017). Consequently, and as described in more detail below, the evidence submitted by Plaintiff should be considered by this Court.

### A. The Iverson Declaration

Defendants' sole challenge to paragraphs 3 through 14 and 17 through 26 of the Iverson Declaration is based on relevance. Evidence is relevant if: "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact

is of consequence in determining the action." *Allen v. State Farm Mut. Auto. Ins. Co.*, No. 3:15-CV-0019-HRH, 2018 WL 2327368, at *2 (D. Alaska May 22, 2018) (Holland, J.). As explained above, the factual background of this action frames Plaintiff's response to the Motion to Dismiss, and Plaintiff provides the evidence necessary to satisfy her Rule 12(b)(1) burden, which does not permit facts in the Amended Complaint to be assumed as true. The relevance of each challenged paragraph is further explained in the chart below:

| Declaration Paragraph | Relevance |
|---|---|
| 3 | These background facts, not in dispute (*see* ECF 28, p. 12), are relevant and admissible. |
| 4 | In Footnote 2 of Defendants' Brief (*see* ECF 28, n. 2), they attempt to shock this Court with the statutory damages – approved by the Alaska legislature – that are being pursued by the class ($36,251,500). It is relevant that, while knowingly and intentionally defrauding its customers to save itself from overpaying $8.3 million in taxes due to its faulty POS system, LuLaRoe had over $885,000,000 in combined net assets and income. |
| 5 | This paragraph provides background for how (and why) the deceptive 2016 Tax Policy was implemented and attaches and references the related evidence to support the averments in the Amended Complaint at ¶ 26. |
| 6 | In Mr. Ellis' Declaration, he claimed that LuLaRoe was overpaying sales tax because of the manner the retailers were using the toggle switch function (*see* ECF 27, ¶¶ 4-5). This is inconsistent with Mr. Ellis' sworn deposition testimony in which he confirmed that they were overpaying on all out-of-state sales because their POS system only reported the total sales completed and LuLaRoe paid tax on *all* of those sales, even when the customer was (properly) not charged tax. Evidence for the purposes of impeachment is always relevant. Further, this evidence explains why LuLaRoe decided to implement the fraudulent practice – to pass its overpayment of tax caused by its faulty system onto its end users, rather than LuLaRoe bearing the costs of its faulty system, providing the evidence to support the averments in the Amended Complaint at ¶ 27-29. |
| 7 | This paragraph provides the evidence for Plaintiff's averment in her Amended Complaint ¶ 30 n.1, and is relevant background to show that |

| | |
|---|---|
| | LuLaRoe itself manipulated the Audrey POS system to overcharge its customers. |
| 8 | This information is relevant to Defendants' institution of and implementation of the 2016 Tax Policy at issue in this Complaint. The information therein, and documents attached, were all specifically referenced in, but not attached to, the Amended Complaint ¶¶ 30, 39, 43 n. 2. |
| 9 | The sales tax memorandum and "white paper" detailed the 2016 Tax Policy of LuLaRoe that is at issue in this action. While LuLaRoe asserts a relevance objection, it relied on the sales tax memorandum in its Brief (*see* ECF 28, generally), and asked this Court to take judicial notice of the same. Further, both of these documents are referenced in, but not attached to, the Amended Complaint ¶¶ 30-46. |
| 10-11 | These paragraphs provide evidence of LuLaRoe's knowledge of the proper manner to charge tax; instead, LuLaRoe chose to implement an unlawful tax collection practice at the cost of its consumers. |
| 12-14 | These paragraphs provide the evidence to support the contentions in the Amended Complaint ¶¶ 30-46, and is relevant evidence of the implementation and dissemination of LuLaRoe's unlawful 2016 Tax Policy as a result of its faulty system: "this is what the software is doing and our policy and position." |
| 17 | Mr. Ellis' Declaration addresses this same evidence (the amount of overcharges both to the class and nationwide), (*see* ECF 27, ¶¶ 21-23), but LuLaRoe argues that Plaintiff's evidence is not relevant. The overcharges are directly at issue here, and Plaintiff provides this evidence in support of her Amended Complaint ¶ 67. |
| 18-21 | Mr. Ellis claims that LuLaRoe made refunds, pre-*Webster*, to its customers that requested the same. (*See* ECF 27, ¶¶ 8-11). Plaintiff's submitted evidence that directly contradicts that assertion and addresses the contrary course of dealing that LuLaRoe testified it used in such circumstance (i.e., referring the customer to the retailer) and provides ample examples of customers requesting refunds and not receiving any pre-*Webster*. These paragraphs providing the evidence for the Amended Complaint ¶¶ 74-78. Further, impeachment evidence is always relevant. |
| 22-23 | These paragraphs provide evidence that supports Plaintiff's assertion that LuLaRoe knew about, and hid, its deceptive conduct until after it was sued, as alleged in the Amended Complaint ¶¶ 80-83. |
| 24 | This paragraph addresses the inadequacies of LuLaRoe's post-suit refund efforts, as alleged in the Amended Complaint ¶¶ 82-87. |
| 25 | This paragraph provides the evidence that LuLaRoe failed to fully compensate Plaintiff and the class, making its failure to compensate for |

| | |
|---|---|
| | time value of money more probable, as alleged in the Amended Complaint ¶¶ 82-87. |
| 26 | LuLaRoe boasts about the "8.4 million" that it refunded consumers, but this did not come from LuLaRoe's pocket – indeed, LuLaRoe admits it recovered every penny from the taxing authorities, making its refund program inadequate to serve the purpose of the UTPA, as alleged in the Amended Complaint ¶¶ 86-87. |

For the reasons set forth above, LuLaRoe's relevance objections to the above paragraphs of the Iverson Declaration should be overruled.

LuLaRoe also objects to certain exhibits attached to the Iverson Declaration – many of which were documents produced by LuLaRoe. During the *Webster* action, counsel for LuLaRoe confirmed that it would not challenge the authenticity of the documents produced by LuLaRoe, but now attempts to do just that. Further, all parties agreed that the *Webster* documents and testimony may be used in this action. Notably, the evidence submitted here was also submitted in support of the Class Certification Motion in *Webster*, without objection. *See Webster, et. al. v. LLR, Inc.*, 2:17-cv-00225 (W.D. Pa.), ECF 86.[1] Further, the same evidence was recently submitted in Opposition to a Motion to Dismiss in a Montana class action based on substantially similar facts and argument by LuLaRoe, and LuLaRoe did not object to them there. *Hill v. LLR, Inc., et al.*, 4:18-cv-00120 (D. Mont.), ECF 37-38.

| EXHIBIT NO. | RESPONSE |
|---|---|
| 1 | As discussed above, LuLaRoe's sales tax procedures and the 2016 Tax Policy are directly at issue in this action and evince LuLaRoe's calculated decision to surcharge its customers. Such evidence is relevant, at minimum, to show the harm suffered by Plaintiff and the |

---

[1] Attaching, as exhibits to Motion for Class Certification, the Exhibits included in the Iverson Declaration at Exhibits 1-4 and 9-13.

*Van v. LLR, Inc., et al*
Case No. 3:18-cv-00197-HRH   8

| | |
|---|---|
| | class. With respect to authentication, LuLaRoe does not claim that the excerpts are incorrect and provide this Court with other language – indeed, it cannot. Instead, it complains that the reporter certificate is not included.[2] LuLaRoe is aware that these excerpts are accurate. However, to address and cure any concern, Plaintiff attaches a revised Exhibit 1 hereto, with the certification included. |
| 2 | In Footnote 2 of Defendants' Brief (*see* ECF 28, n. 2), they attempt to shock this Court with the statutory damages – approved by the Alaska legislature – that are being pursued by the class ($36,251,500). It is relevant that, while knowingly and intentionally defrauding its customers to save itself from overpaying $8.3 million in taxes due to its faulty POS system, LuLaRoe had over $885,000,000 in combined net assets and income. As to authentication, this document was produced by LuLaRoe and bears the LuLaRoe bates numbers ("LLR"). Again, LuLaRoe presents no evidence to state that the excerpt is actually incorrect, nor can it. However, to address and cure any concern, Plaintiff attaches a revised Exhibit 2 hereto, with the certification included. |
| 3 | As discussed above, LuLaRoe's sales tax procedures and the 2016 Tax Policy are directly at issue in this action and evince LuLaRoe's calculated decision to surcharge its customers. Further, much of Mr. Ellis' testimony is presented by Plaintiff for the purpose of impeaching his Declaration submitted in support of Defendants' Motion to Dismiss; impeachment evidence is always relevant. With respect to authentication, LuLaRoe does not claim that the excerpts are incorrect and provide this Court with other language – indeed, it cannot. Instead, it complains that the reporter certificate is not included. LuLaRoe is aware that these excerpts are accurate. However, to address and cure any concern, Plaintiff attaches a revised Exhibit 3 hereto, with the certification included. |
| 4 | This is a document produced by LuLaRoe and bearing LuLaRoe's bates numbers ("LLR"). Iverson confirms this in the Iver. Dec. ¶ 2, confirming her personal knowledge of the production by LuLaRoe. LuLaRoe challenges its authentication, despite that the document is LuLaRoe's own production. To the extent this Court requires further information, in addition to an Attorney Declaration verifying that this was a document produced by LuLaRoe, Plaintiff provides additional testimony of Jamie Ellis, which confirmed the authenticity of Exhibit |

---

[2] LuLaRoe did not make the same challenges or complaints about this testimony, or that in Exhibits 2 or 3 herein, in the *Webster* action nor the *Hill* action, despite the certification pages not being included there.

*Van v. LLR, Inc., et al*
Case No. 3:18-cv-00197-HRH 9

|   | |
|---|---|
|   | 4, which he confirms was distributed by LuLaRoe to its retailers. *See* Exhibit A hereto, Ellis 30(b)(6) excerpts pp. 68-73 addressing Exhibit F to the deposition, which is Exhibit 4 to the Iver. Dec. Further, this announcement was specifically referenced in the Amended Complaint, ¶ 43 n. 2, but not attached thereto. |
| 5 | Like Exhibit 4, the webinar here is the manner that LuLaRoe disseminated the 2016 Tax Policy to its retailers (*see also* Exhibit A hereto, in which Mr. Ellis confirms the same). Indeed, this document was not only produced by LuLaRoe, it is the one that transcribed the webinar. To the extent the Court would like Plaintiff to produce the webinar itself, which LuLaRoe produced with this transcript, Plaintiff can do so. Because LuLaRoe challenges its own transcription of the webinar, Plaintiff attaches a revised Exhibit 5 hereto, with the certification included. |
| 7 | Yet again, LuLaRoe challenges the authenticity of its own "LLR" documents, which Iverson confirmed by Declaration were produced by LuLaRoe. These agreements provide further evidence of LuLaRoe's knowledge of the proper manner to charge tax; instead, LuLaRoe chose to implement an unlawful tax collection practice at the cost of its consumers. Alaska agreements would not be at issue because LuLaRoe (improperly) claimed to be collecting tax for remote sales based on other states' tax laws – accordingly, Plaintiff provides exemplar agreements from other states. To the extent this Court requires further information, in addition to an Attorney Declaration verifying that this was a document produced by LuLaRoe, Plaintiff provides this supplement of Jamie Ellis' testimony, which confirmed the authenticity of these co-vendor agreements. *See* Exhibit A hereto, Ellis 30(b)(6) excerpts p. 150 addressing Exhibit W to the deposition, which is Exhibit 7 to the Iver. Dec. |
| 9 | Mr. Ellis' Declaration addresses this same evidence (the amount of overcharges both to the class and nationwide), (*see* ECF 27, ¶¶ 21-23), but LuLaRoe claims only its evidence, and not Plaintiff's evidence, is relevant. The overcharges are directly at issue here, and Plaintiff provides this evidence in support of her Amended Complaint ¶ 67. |
| 10 | Mr. Ellis claims that LuLaRoe made refunds, pre-*Webster*, to its customers that requested the same. (*See* ECF 27, ¶¶ 8-11). Plaintiff's submitted evidence directly contradicts that assertion as LuLaRoe admits that it refunded not a single Alaska consumer pre-*Webster*, and the refunds it did make are so utterly dwarfed by the number of fraudulent transactions that Mr. Ellis' claims about pre-*Webster* refunds are, at best, disingenuous (and wholly contradicted by evidence submitted in Plaintiff's Exhibits 10, 11, and 3). These |

| | |
|---|---|
| | paragraphs providing the evidence for the Amended Complaint ¶¶ 74-78. Further, impeachment evidence is always relevant. |
| 11 | Mr. Ellis claims that LuLaRoe made refunds, pre-*Webster*, to its customers that requested the same. (*See* ECF 27, ¶¶ 8-11). Plaintiff's submitted evidence directly contradicts that assertion and addresses the contrary course of dealing that LuLaRoe testified it used in such circumstance (i.e., referring the customer to the retailer) and provides ample examples of customers requesting refunds and not receiving any pre-*Webster*. These paragraphs providing the evidence for the Amended Complaint ¶¶ 74-78. Further, impeachment evidence is always relevant. Lastly, again, these documents were produced by LuLaRoe. To the extent this Court requires further information, in addition to an Attorney Declaration verifying that these were documents produced by LuLaRoe, Mr. Ellis confirmed the same in his deposition (*See* Exhibit 3 to Iver. Dec., 102:7-112:9). |
| 12 | The Attorney General Complaints were referenced in the Amended Complaint, ¶¶ 46-53, but not attached thereto. Further, they were also referenced in Mr. Ellis' Declaration, submitted with Defendants' Motion to Dismiss. (*See* ECF 27, ¶ 11). Consequently, LuLaRoe's challenge the relevance is disingenuous. To the extent this Court requires further information, in addition to an Attorney Declaration verifying that this was a document produced by LuLaRoe and authentic, Plaintiff provides this supplement of Jamie Ellis' testimony, which confirmed the authenticity of the Attorney General complaints and LuLaRoe's responses. *See* Exhibit A hereto, Ellis 30(b)(6) excerpts pp. 90-91 addressing Exhibit K to the deposition, which is Exhibit 12 to the Iver. Dec. |
| 13 | This document, again, was produced and bates numbered by LuLaRoe. The document is utilized as impeachment evidence in light of Mr. Ellis' half-truths and misstatements about pre-*Webster* refunds in his Declaration to this Court. |

For the reasons set forth above, LuLaRoe's objections to Exhibits 1 through 5, 7, and 9 through 13 of the Iverson Declaration should be overruled

**B. The Van Declaration**

LuLaRoe has challenged Plaintiff Katie Van's adequacy as a class representative. In doing so, LuLaRoe relies upon extrinsic evidence in the form of a Declaration by Mr.

Ellis, despite that such challenge should be based on the pleadings. Because LuLaRoe has challenged Ms. Van's adequacy, her involvement in this action and the reason that she is pursuing this action (including her understanding of her claims, LuLaRoe's liability, and her concern and desire to protect Alaska consumers from LuLaRoe's bad acts and any company that attempts to deceive Alaska consumers) – addressed in each of the paragraphs challenged by LuLaRoe – are relevant and have been placed at issue by LuLaRoe in its Motion to Dismiss. Accordingly, LuLaRoe's objections to Ms. Van's Declaration should be overruled.

## IV.  CONCLUSION

For all of the reasons addressed herein, Plaintiff Katie Van respectfully requests that this Court Overrule Defendants' Evidentiary Objections to Declarations of Kelly Iverson and Katie Van Filed in Support of Plaintiff's Opposition to Defendants' Motion to Dismiss.

| | |
|---|---|
| Dated: December 26, 2018 | CARLSON LYNCH SWEET KILPELA & CARPENTER, LLP |
| | Attorneys for Plaintiff |
| | By: *Kelly K. Iverson.*_____<br>R. Bruce Carlson, Esq.<br>bcarlson@carlsonlynch.com<br>Kelly K. Iverson, Esq.<br>kiverson@carlsonlynch.com<br>Kevin W. Tucker, Esq.<br>ktucker@carlsonlynch.com<br>(*All pro hac vice*)<br>**CARLSON LYNCH SWEET KILPELA & CARPENTER, LLP**<br>1133 Penn Avenue, 5th Floor |

Pittsburgh, PA 15222
(p) (412) 322-9243
(f) (412) 231-0246


James J. Davis, Jr., AK Bar No. 9412140
Goriune Dudukgian, AK Bar No. 0506051
**NORTHERN JUSTICE PROJECT, LLC**
310 K Street, Suite 200
Anchorage, AK 99501
(907) 264-6634 (telephone)
(866) 813-8645 (fax)

## CERTIFICATE OF SERVICE

I hereby certify that on December 26, 2018 the foregoing document was filed with the Court through its CM/ECF service which shall send electronic notice of said filing to the email addresses for all counsel listed on the Electronic Mail Notice list, including counsel of record for all parties.

*/s/ Kelly K. Iverson*  
Kelly K. Iverson
