IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

KATIE VAN, individually and on behalf )
of all others similarly situated, )
)
                                 Plaintiff, )
)
  vs. )
)
LLR, INC., d/b/a LuLaRoe, and LULAROE, )
LLC, )
)   No. 3:18-cv-0197-HRH
                            Defendants. )
_____)

O R D E R

Motion to Dismiss

Defendants move to dismiss plaintiff's first amended class action complaint, or in the alternative, to strike the class allegations in plaintiff's first amended class action complaint.[1] This motion is opposed.[2] Oral argument was requested and has been heard.

Background

Defendants LLR, Inc., d/b/a LuLaRoe, and LuLaRoe, LLC "sell[] clothing through fashion retailers located in all fifty states to consumers across the United States."[3] Plaintiff

---

[1]Docket No. 28.

[2]Docket No. 35.

[3]First Amended Class Action Complaint at 3, ¶ 7, Docket No. 4.

Katie Van alleges that she "made purchases from LuLaRoe retailers in other states and had those purchases shipped to her home in Anchorage, Alaska."[4] Plaintiff alleges that she was improperly charged sales tax "on purchases she made from LuLaRoe's remote consultants."[5] Alaska does not have a state-wide sales tax, although some local jurisdictions impose a sales and/or use tax.[6] Plaintiff alleges that defendants improperly charged sales tax "on at least 72,503 sales transactions shipped into non-taxing jurisdictions in Alaska from April 2016 through June 1, 2017."[7]

Plaintiff alleges that defendants began improperly charging sales tax in 2016 after it was discovered that "LuLaRoe was paying sales tax on <u>all</u> sales regardless of whether or not the end consumer was charged or paid sales tax on a transaction. . . ."[8] Plaintiff alleges that this happened because of the way that defendants' point-of-sale system, which was called "Audrey," was programmed.[9] Plaintiff alleges that in response to this discovery, defendants, in April 2016, implemented a new sales tax policy, which was that "Audrey would be

---

[4] Id. at 10, ¶ 56.

[5] Id. at 10, ¶ 57.

[6] Id. at 4, ¶ 19.

[7] Id. at 11, ¶ 67.

[8] Id. at 5, ¶ 28. Plaintiff alleges that defendants "collect[] and remit[] sales tax on behalf of its retailers." Id. at 4, ¶ 18.

[9] Id. at 3, ¶ 11; 5, ¶ 28. Plaintiff alleges that defendants began using Audrey in May or June 2015. Id. at 5, ¶ 25.

collecting tax from end consumers based upon the retailer location[.]"[10] Plaintiff alleges that defendants "altered the Audrey POS to prevent retailers from turning off the sales tax features when making sales delivered into other states with no sales tax[.]"[11]

Plaintiff alleges that defendants "told [their] retailers that the policy [they] implemented, requiring that tax be charged based upon the location of the retailer, was proper and legal."[12] Defendants explained that the option of collecting sales tax based on the retailer's location "recognize[d] that sufficient 'nexus' exists between the consultant's state, the consultant, and LuLaRoe so that the consultant's customer is doing business with LuLaRoe through the consultant."[13] Plaintiff alleges, however, that defendants knew their 2016 tax policy was not legal.[14]

Plaintiff alleges that defendants "announced its new tax policy via webinar and conference call[s.]"[15] Defendants told the LuLaRoe retailers that sales tax would be collected based on the retailer's location "for a short time" and that they would "shift" to the

---

[10]Id. at 6, ¶ 30.

[11]Id. at 6, ¶ 33. Plaintiff alleges that "[p]rior to April 2016, the Audrey system included a toggle-switch, which permitted LuLaRoe's retailers to turn off tax charges when they made a sale into a tax-free jurisdiction[.]" Id. at 5, ¶ 26.

[12]Id. at 7, ¶ 40.

[13]Sales Tax Update, Exhibit 2 at 39, Defendants' Request for Judicial Notice [etc.], Docket No. 26.

[14]First Amended Class Action Complaint at 8, ¶¶ 42, 47, Docket No. 4.

[15]Id. at 6, ¶ 30.

option of collecting "sales tax based on the physical address where the sale takes place . . . or where the products are shipped to a customer . . . [i]n the near future."[16] Defendants advised retailers that "[t]hose who simply do not wish to use the option offered by LuLaRoe can apply directly to their state for the permit to manage their own sales tax."[17] Defendants also advised that the only thing preventing it from collecting sales tax based on where the products were being shipped was the Audrey software.[18]

Defendants launched a new POS system in January 2017 called Bless and began transitioning retailers from Audrey to Bless.[19] This transition was not completed until May and Audrey was permanently disabled on May 31, 2017.[20]

In February 2017, a law suit (the Webster case) was filed in the Western District of Pennsylvania, "alleging claims on behalf of class members in eleven states that have jurisdictions where there is no sales tax on the clothing LuLaRoe sells, but where those customers were charged the fraudulent tax. . . ."[21] Although plaintiff was not a named

---

[16]Sales Tax Update, Exhibit 2 at 39, Defendants' Request for Judicial Notice [etc.], Docket No. 26.

[17]Id. at 42.

[18]Id. at 39.

[19]Memorandum Opinion, Exhibit 1 at 10, Defendants' Request for Judicial Notice [etc.], Docket No. 26.

[20]Id.

[21]First Amended Class Action Complaint at 12, ¶ 68, Docket No. 4. The Webster
(continued...)

plaintiff in the Webster case,[22] there was an Alaskan named plaintiff. Class certification was denied in the Webster case on August 20, 2018 because the "[p]laintiffs [were] unable to establish Rule 23's requirements relating to commonality, the adequacy of class representation, predominance and superiority."[23] The court's conclusion was primarily based on the fact that the laws of eleven different states would apply to the plaintiffs' claims. The court mentioned defendants' refund program in a footnote, referring to it as "a comprehensive refund program[.]"[24] On September 19, 2018, the Webster case was dismissed for lack of jurisdiction.[25]

Plaintiff alleges that after the Webster case was filed, defendants "engaged in a confusing, ad hoc, refund scheme in a failed effort to escape responsibility for its bad acts."[26] Defendants contend that they "recognized in or about June 2016 that a comprehensive sales

---

[21](...continued)
plaintiffs were represented by the same counsel who represent plaintiff in this action.

[22]In November 2017, plaintiff moved to be substituted as the representative of the Alaska class in the Webster case, a motion the court denied as moot after it denied the motion for class certification. Attorney Declaration of Kelly K. Iverson at 7, ¶ 16, Docket No. 36.

[23]Order of Court at 12, Exhibit 1, Defendants' Request for Judicial Notice [etc.], Docket No. 26.

[24]Id. at 15 n.6.

[25]Order of Court, Exhibit 4, Defendants' Request for Judicial Notice [etc.], Docket No. 26.

[26]First Amended Class Action Complaint at 13, ¶ 77, Docket No. 4.

tax refund program was needed" and that most refunds were issued by March 2017.[27] In answers to interrogatories in the <u>Webster</u> case, defendants admitted that they had only made 38 refunds prior to the filing of the <u>Webster</u> case on February 17, 2017 and that they had made no refunds to any Alaska residents prior to February 17, 2017.[28] Ultimately, defendants refunded $255,483.35 to Alaska consumers who were improperly charged sales tax.[29]

Plaintiff commenced this action on September 5, 2018. Plaintiff asserts two claims on behalf of herself and others similarly situated. In Count I, plaintiff asserts an Alaska Unfair Trade Practices and Consumer Protection Act (UTPCPA) claim. Plaintiff alleges that

> [d]efendants violated the UTPCPA by knowingly charging and collecting an unlawful sales tax on its clothing sales to [p]laintiff and class member[s]; by failing to disclose that they were not authorized to collect such taxes; and by actively misrepresenting to their customers, directly and through [their] retailers, that their 2016 Tax Policy and their collection of "sales tax" from the class members was proper and lawful.[[30]]

Plaintiff also alleges that "[d]efendants intentionally violated the UTPCPA by programming their online point-of-sale payment system to collect sales tax on clothing when such collection was unlawful and not authorized by the taxing authority of the buyer."[31] In Count

---

[27]Declaration of Jamie Ellis [etc.] at 5, ¶ 12; 7-8, ¶ 18; Docket No. 27.

[28]Exhibit 10 at 3-4, Iverson Declaration, Docket No. 36.

[29]First Amended Class Action Complaint at 14, ¶ 86, Docket No. 4.

[30]<u>Id.</u> at 19, ¶ 108.

[31]<u>Id.</u> at 19, ¶ 109.

-6-

II, plaintiff asserts a conversion claim. In her first amended complaint, plaintiff sought the following relief: 1) actual, statutory, and punitive damages, 2) interest on her damages, 3) a declaration that defendants' conduct was unlawful, 4) an injunction prohibiting defendants from improperly collecting sales tax in the future, and 5) attorney's fees and costs. In her opposition to the instant motion, she states that she is seeking "the following relief: an accounting; interest; statutory damages; and punitive damages."[32]

Defendants now move to dismiss plaintiff's first amended class action complaint. Should the court not dismiss plaintiff's first amended class action complaint in its entirety, then defendants move to strike the class allegations.

## Discussion

Pursuant to Rule 12(b)(1), Federal Rules of Civil Procedure, defendants move to dismiss plaintiff's first amended class action complaint for lack of standing. "'Because standing . . . pertain[s] to federal courts' subject matter jurisdiction, [it is] properly raised in a Rule 12(b)(1) motion to dismiss.'" Carijano v. Occidental Petroleum Corp., 643 F.3d 1216, 1227 (9th Cir. 2011) (quoting Chandler v. State Farm Mut. Auto. Ins. Co., 598 F.3d 1115, 1122 (9th Cir. 2010)). "A Rule 12(b)(1) jurisdictional attack may be facial or factual." Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the

---

[32]Plaintiff's Opposition to Defendants' Motion to Dismiss at 1, Docket No. 35.

truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." Id. Here, defendants are making a factual attack. "In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." Id. "The court need not presume the truthfulness of the plaintiff's allegations." Id. "The plaintiff . . . bears the burden of proof to establish standing 'with the manner and degree of evidence required at the successive stages of the litigation.'" Wash. Envtl. Council v. Bellon, 732 F.3d 1131, 1139 (9th Cir. 2013) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)). "'[A]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice[.]'" Id. at 1139 (quoting Lujan, 504 U.S. at 561). If plaintiff "lacks standing, the class lacks standing as well." Pimentel v. Dreyfus, 670 F.3d 1096, 1111 (9th Cir. 2012).

"The 'irreducible constitutional minimum of standing' consists of three elements: the plaintiff must have (1) suffered an injury in fact; (2) that was caused by the defendant's challenged conduct; and (3) that would be redressed by the remedy the plaintiff seeks." Desert Water Agency v. U.S. Dep't of the Interior, 849 F.3d 1250, 1253 (9th Cir. 2017) (quoting Lujan, 504 U.S. at 560-61). "'[A] plaintiff must demonstrate standing for each claim [s]he seeks to press and for each form of relief that is sought.'" Maya v. Centex Corp., 658 F.3d 1060, 1068–69 (9th Cir. 2011) (quoting Davis v. Fed. Elec. Comm'n, 554 U.S. 724, 734 (2008)).

Defendants argue that plaintiff has not shown that she suffered an injury, "the '[f]irst and foremost' of standing's three elements." Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016) (quoting Steel Co. v. Citizens for Better Environment, 523 U.S. 83, 103 (1998)). "A plaintiff establishes injury in fact, if he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Van Patten v. Vertical Fitness Group, LLC, 847 F.3d 1037, 1042 (9th Cir. 2017) (quoting Spokeo, Inc., 136 S. Ct. at 1548).

Defendants argue that plaintiff cannot show that she has suffered an injury in fact as to her claims for damages because the sales tax that she was charged has been refunded. Jamie Ellis, a Senior Tax Analyst for defendants,[33] avers that "[b]etween April 2016 (the time of her first purchase) and June 2017, [plaintiff] made purchases totaling over $10,000 (before sales tax was added) that were delivered into a non-taxing jurisdiction."[34] Ellis avers that plaintiff "was charged sales tax through Audrey on some of these transactions, but not all. For the transactions on which she was charged sales tax, the sale tax charges amount to $531.25."[35] Ellis avers that plaintiff "was refunded the full $531.25" and that these refunds "were issued to [her] debit card on May 17 and 18, 2017."[36]

---

[33] Ellis Declaration at 2, ¶ 1, Docket No. 27.

[34] Id. at 10, ¶ 26.

[35] Id. at 10-11, ¶ 26.

[36] Id. at 11-12, ¶¶ 27-28.

Plaintiff does not dispute that she was refunded $531.25 but she avers that she was not notified that defendants were making these refunds, that defendants did not request permission to electronically transfer funds to her account, and that defendants "did not condition receipt of any of the 164 separate electronic fund transfers on a release of any claims I have against them for their deceptive practices and conversion."[37] She also avers that she has no way of knowing if she has been refunded the correct amount because she does not have "invoices or receipts for all of the purchases that I made from LuLaRoe since April 2016[.]"[38]

The bottom line here is that plaintiff does not dispute that she has been refunded $531.25, and she admits that she has no proof to refute that this amount properly reflects the amount of sales tax she was improperly charged. The record also shows that plaintiff was refunded the $531.25 prior to her filing this lawsuit and prior to her unsuccessful attempt to become a named plaintiff in the Webster case.

Courts have held that a plaintiff lacks standing when a defendant refunds or offers to refund the plaintiff's losses prior to litigation. For example, in Hamilton v. General Mills, Inc., Case No. 6:16-cv-382-MC, 2016 WL 4060310, at *1 (D. Or. July 27, 2016), Hamilton purchased General Mills cereal that was labeled as gluten-free but that had been contaminated by wheat flour on specific production dates in July of 2015. "On October 5, 2015,

---

[37] Declaration of Katie Van at 2, ¶¶ 9-11, Docket No. 37.

[38] Id. at 3, ¶ 18.

General Mills, working in conjunction with the United States Food and Drug Administration ('FDA'), issued a widely-advertised voluntary recall and refund program for the cereals produced on those dates." Id. Hamilton brought suit against General Mills, on behalf of himself and others similarly situated, "alleg[ing] that General Mills (1) violated the Oregon Uniform Trade Practices Act, Or. Rev. Stat § 646.605, et seq.; (2) received unjust enrichment; and (3) engaged in unfair and deceptive acts and practices under various states' laws." Id. "General Mills argue[d] that Hamilton lack[ed] Article III standing because he has not suffered any physical or economic injury and has no possibility of obtaining relief because he has already been offered a full refund." Id. at *4. The court agreed, concluding that Hamilton had not "alleged a concrete and particularized injury-in-fact" because he did "not allege that he suffered any injury as a result of those alleged wrongdoings except a $15.98 purchase to which he is entitled a refund." Id. at *5.

Similarly here, plaintiff's injury-in-fact for her damages claims cannot be based on the amount of sales tax she paid. That money was refunded to plaintiff prior to her commencing this lawsuit.

That plaintiff is seeking statutory damages[39] is of no import as to the issue of whether plaintiff has Article III standing to pursue her claims for damages. A claim for statutory

---

[39]The UTPCPA provides that "[a] person who suffers an ascertainable loss of money or property as a result of another person's act or practice declared unlawful by AS 45.50.471 may bring a civil action to recover for each unlawful act or practice three times the actual damages or $500, whichever is greater." AS 45.50.531(a).

damages cannot be the injury-in-fact that establishes constitutional standing. In Hamilton, the plaintiff argued that his claim for statutory damages "support[ed] his standing to sue for relief beyond the refund." Hamilton, 2016 WL 4060310, at *4. The court rejected this argument "because Hamilton's loss of $15.98 is mooted by General Mills' refund program[,]" and that was the only actual injury he alleged. Id. at *5. As the Supreme Court stated in Spokeo, 136 S. Ct. at 1549-50, "Article III standing requires a concrete injury even in the context of a statutory violation. . . . [A plaintiff] cannot satisfy the demands of Article III by alleging a bare procedural violation."

Plaintiff argues that she has not alleged "a bare procedural violation, divorced from any harm," which is what the Spokeo court found insufficient. Id. at 1549. Rather, she argues that she is alleging that she has suffered a concrete, economic harm beyond just the sales tax that she was improperly charged. Plaintiff argues that the fact that she is seeking statutory damages, which are damages that exceed the scope of defendants' refund program, means that she has standing. Plaintiff cites to Haddix v. General Mills, Inc., Case No. 2-15-cv- 02625-MCE-AC, 2016 WL 2901589 (E.D. Cal. May 17, 2016), and Lengen v. General Mills, Inc., 185 F. Supp. 3d 1213 (E.D. Cal. 2016), in support of her argument. Both of those cases involved the same General Mills refund program at issue in Hamilton and in both cases, the court concluded that the plaintiff's claim for damages was not moot because the plaintiff was seeking relief "that exceeds the scope of the recall program. . . ." Lengen, 185 F. Supp. 3d at 1221; Haddix, 2016 WL 2901589, at *6. But in neither case did the court

conclude that Article III standing could be based on statutory damages alone. Without some other allegation of concrete economic harm, plaintiff's request for statutory damages cannot be the injury-in-fact that establishes Article III standing.

Because of defendants' refund program, the only concrete economic harm that plaintiff has alleged is that she did not receive interest on the amount that defendants refunded. The question here is whether that interest is sufficient to establish Article III standing.

Plaintiff argues that the lost time value of money is sufficient to confer Article III standing. Plaintiff cites to <u>Oyola v. Cavalry SPV I, LLC</u>, Case No. 4:17-cv-40083-TSH, 2018 WL 1940313 at (D. Mass. March 1, 2018), in support. There, the defendant was alleged to have improperly garnished the plaintiff's wages "from August 2014 through April 2017 in a total amount of $6,498.21." <u>Id.</u> at *2. The defendant argued that the plaintiff had not suffered an injury in fact because it had returned all of the garnished funds to the plaintiff. <u>Id.</u> at *6. The court rejected this argument because "[m]erely refunding [the p]laintiff's money dollar-for-dollar may not fully compensate [her] for the alleged deprivation of her right to have and spend her wages as she saw fit." <u>Id.</u> at *7; <u>see also</u>, <u>South Peninsula Hospital v. Xerox State Healthcare LLC</u>, 223 F. Supp. 3d 929, 934 (D. Alaska 2016) (finding that "delayed reimbursements resulted in financial harms to Medicaid providers, including loss of the time value of money").

Plaintiff estimates that she is owed, at a minimum, $3.76 in interest.[40] Plaintiff argues that it is irrelevant that this is a small amount because "[f]or standing purposes, a loss of even a small amount of money is ordinarily an 'injury.'" Czyzewski v. Jevic Holding Corp., 137 S. Ct. 973, 983 (2017); see also, Carter v. HealthPort Technologies, LLC, 822 F.3d 47, 55 (2d Cir. 2016) (quoting Natural Resources Defense Council, Inc. v. United States Food & Drug Admin., 710 F.3d 71, 85 (2d Cir. 2013) ("[a]ny monetary loss suffered by the plaintiff satisfies th[e injury-in-fact] element; '[e]ven a small financial loss' suffices").

Plaintiff cites to Weidenhamer v. Expedia, Inc., Case No. C14–1239RAJ, 2015 WL 1292978 (W.D. Wash. Mar. 23, 2015), in support of her argument that a small amount of monetary loss is sufficient for purposes of Article III standing. There, the plaintiff sought, among other relief, "a credit equivalent to 5% of his family's total airfare to account for the discount" he contended Expedia promised, but which "he did not receive." Id. at *1. Expedia argued that the plaintiff lacked standing because it had refunded "$79.66 (5% of the total that Mr. Weidenhamer paid to Expedia) to Mr. Weidenhamer's credit card." Id. at *1, 3. The court rejected Expedia's argument, explaining

> that Article III also recognizes temporary deprivations of money as injuries. A "full" refund is not "full" compensation unless it comes with compensation for the lost time value of the money. In this case, the lost time value of Mr. Weidenhamer's $80 overcharge is very little, to be sure. Assuming that Expedia deprived him of $80 for two months and the applicable interest rate is 10%, he lost $1.33. At 1% interest, he lost just 13 cents.

---

[40]This is based on an interest rate of 4.25% on $531.25 for two months.

-14-

> That is very little, to be sure, but the court is aware of no appellate authority excluding tiny monetary injuries from the scope of Article III. Perhaps Article III places a minimum on a purely monetary injury, but the court does not believe Mr. Weidenhamer's complaint asserts an injury below that minimum.

Id. at *4.

The court is not persuaded by plaintiff's argument. Rather, the court concludes that in this case, "[t]he de minimus amount alleged lost [in interest] is . . . inadequate to establish Article III standing. . . ." Becker v. Skype Inc., Case No. 5:12–CV–06477–EJD, 2014 WL 556697, at *3 (N.D. Cal. Feb. 10, 2014); see also, Epstein v. JPMorgan Chase & Co., Case No. 13 Civ. 4744(KPF), 2014 WL 1133567, at *7 n.6 (S.D.N.Y. Mar. 21, 2014) (claim of $.67 of interest "would at most demonstrate that Plaintiff was inconvenienced, and any alleged injury would rest on pure speculation. Allegations of that sort would be far too slender a reed on which to premise Article III standing."). While "a loss of even a small amount of money is ordinarily an 'injury[,]'" Czyzewski, 137 S. Ct. at 983, "[t]here is, of course, a de minimis level of imposition with which the Constitution is not concerned." Ingraham v. Wright, 430 U.S. 651, 674 (1977). Some injuries are "too trifling of an injury to support constitutional standing." Skaff v. Meridien N. Am. Beverly Hills, LLC, 506 F.3d 832, 840 (9th Cir. 2007). Plaintiff's alleged loss of interest in this case is such an injury. It is too little to support Article III standing as to either of plaintiff's UTPCPA or conversion claims.

Because plaintiff lacks standing, the court need not consider defendants' arguments that plaintiff has failed to state plausible claims or defendants' alternative motion to strike plaintiff's class allegations.

## Conclusion

Based on the foregoing, defendants' motion to dismiss is granted. Plaintiff's first amended class action complaint is dismissed with prejudice because any amendment would be futile.[41]

DATED at Anchorage, Alaska, this 1st day of March, 2019.

/s/ H. Russel Holland
United States District Judge

---

[41] Plaintiff contends in her opposition to the instant motion that she is seeking an accounting although such a claim is not pled in her first amended class action complaint. To the extent that plaintiff is suggesting that she could amend her complaint to add such a claim, even if plaintiff had standing to bring such a claim, defendants have already provided her an accounting in the form of Mr. Ellis' declaration.