IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| KATIE VAN, individually and on behalf of all others similarly situated,<br><br>          Plaintiff,<br><br> vs.<br><br>LLR, INC., d/b/a LuLaRoe, and LULAROE, LLC,<br><br>          Defendants. | No. 3:18-cv-0197-HRH |

O R D E R

Motion to Dismiss;
Motion to Strike

Now before the court, following remand from the Ninth Circuit Court of Appeals, is defendants' motion to dismiss plaintiff's first amended complaint, or in the alternative, to strike the class allegations in plaintiff's first amended complaint.[1] This motion is opposed.[2] Oral argument was requested and has been heard.

---

[1] Docket No. 28.

[2] Docket No. 35.

Background

Defendants LLR, Inc. d/b/a LuLaRoe and LuLaRoe, LLC "sell[] clothing through fashion retailers located in all fifty states to consumers across the United States."[3] Plaintiff Katie Van alleges that she "made purchases from LuLaRoe retailers in other states and had those purchases shipped to her home in Anchorage, Alaska."[4] Plaintiff alleges that she was improperly charged sales tax "on purchases she made from LuLaRoe's remote consultants."[5] Alaska does not have a statewide sales tax, although some local jurisdictions impose a sales and/or use tax.[6] Plaintiff alleges that defendants improperly charged sales tax "on at least 72,503 sales transactions shipped into non-taxing jurisdictions in Alaska from April 2016 through June 1, 2017."[7]

Plaintiff alleges that defendants began improperly charging sales tax in 2016 after it was discovered that "LuLaRoe was paying sales tax on all sales regardless of whether or not the end consumer was charged or paid sales tax on a transaction. . . ."[8] Plaintiff alleges that this happened because of the way that defendants' point-of-sale system, which was called

---

[3]First Amended Class Action Complaint at 3, ¶ 7, Docket No. 4.

[4]Id. at 10, ¶ 56.

[5]Id. at 10, ¶ 57.

[6]Id. at 4, ¶ 19.

[7]Id. at 11, ¶ 67.

[8]Id. at 5, ¶ 28. Plaintiff alleges that defendants "collect[] and remit[] sales tax on behalf of its retailers." Id. at 4, ¶ 18.

-2-

"Audrey," was programmed.[9] Plaintiff alleges that in response to this discovery, defendants, in April 2016, implemented a new sales tax policy, which was that "Audrey would be collecting tax from end consumers based upon retailer location[.]"[10] Plaintiff alleges that defendants "altered the Audrey POS to prevent retailers from turning off the sales tax feature when making sales delivered into other states with no sales tax[.]"[11]

Plaintiff alleges that defendants "told [their] retailers that the policy [being] implemented, requiring that tax be charged based upon the location of the retailer, was proper and legal."[12] Defendants explained that the option of collecting sales tax based on the retailer's location "recognize[d] that sufficient 'nexus' exists between the consultant's state, the consultant, and LuLaRoe so that the consultant's customer is doing business with LuLaRoe through the consultant."[13] Plaintiff alleges, however, that defendants knew their 2016 tax policy was not legal.[14]

---

[9]Id. at 3, ¶ 11; 5, ¶ 28. Plaintiff alleges that defendants began using Audrey in May or June 2015. Id. at 5, ¶ 25.

[10]Id. at 6, ¶ 30.

[11]Id. at 6, ¶ 33. Plaintiff alleges that "[p]rior to April 2016, the Audrey system included a toggle-switch, which permitted LuLaRoe's retailers to turn off tax charges when they made a sale into a tax-free jurisdiction[.]" Id. at 5, ¶ 26.

[12]Id. at 7, ¶ 40.

[13]Sales Tax Update, Exhibit 2 at 39, Defendants' Request for Judicial Notice [etc.], Docket No. 26.

[14]First Amended Class Action Complaint at 8, ¶¶ 42, 47, Docket No. 4.

Plaintiff alleges that defendants "announced [their] new tax policy via webinar and conference call[s.]"[15] Defendants told the LuLaRoe retailers that sales tax would be collected based on the retailer's location "for a short time" and that they would "shift" to the option of collecting "sales tax based on the physical address where the sale takes place . . . or where the products are shipped to a customer . . . [i]n the near future."[16] Defendants advised retailers that "[t]hose who simply do not wish to use the option offered by LuLaRoe can apply directly to their state for the permit to manage their own sales tax."[17] Defendants also advised that the only thing keeping it from collecting sales tax based on where the products were being shipped was the Audrey software.[18]

Defendants launched a new POS system in January 2017 called Bless and began transitioning retailers from Audrey to Bless.[19] This transition was not completed until May and Audrey was permanently disabled on May 31, 2017.[20]

---

[15]Id. at 6, ¶ 30.

[16]Sales Tax Update, Exhibit 2 at 39, Defendants' Request for Judicial Notice [etc.], Docket No. 26.

[17]Id. at 42.

[18]Id.

[19]Memorandum Opinion, Exhibit 1 at 10, Defendants' Request for Judicial Notice [etc.], Docket No. 26.

[20]Id.

In February 2017, a law suit (the Webster case) was filed in the Western District of Pennsylvania, "alleging claims on behalf of class members in eleven states that have jurisdictions where there is no sales tax on the clothing that LuLaRoe sells, but where those customers were charged the fraudulent tax. . . ."[21] Although plaintiff was not a named plaintiff in the Webster case,[22] there was an Alaska named plaintiff. Class certification was denied in the Webster case on August 20, 2018 because the "[p]laintiffs [were] unable to establish Rule 23's requirements relating to commonality, the adequacy of class representation, predominance and superiority."[23] The court's conclusion was primarily based on the fact that the laws of eleven different states would apply to the plaintiffs' claims. The court mentioned defendants' refund program in a footnote, referring to it as "a comprehensive refund program."[24] On September 19, 2018, the Webster case was dismissed for lack of jurisdiction.[25]

---

[21]First Amended Class Action Complaint at 12, ¶ 68, Docket No. 4. The Webster plaintiffs were represented by the same counsel who represent plaintiff in this action.

[22]In November 2017, plaintiff moved to be substituted as the representative of the Alaska class in the Webster case, a motion the court denied as moot after it denied the motion for class certification. Attorney Declaration of Kelly K. Iverson at 7, ¶ 16, Docket No. 36.

[23]Memorandum Decision, Exhibit 1 at 19, Defendants' Request for Judicial Notice [etc.], Docket No. 26.

[24]Id. at 22 n.6.

[25]Order of Court, Exhibit 4, Defendants' Request for Judicial Notice [etc.], Docket No. 26.

Plaintiff alleges that after the Webster case was filed, defendants "engaged in a confusing, ad hoc, refund scheme in a failed effort to escape responsibility for its bad acts."[26] Defendants contend that they "recognized in or about June 2016 that a comprehensive sales tax refund program was needed" and that most refunds were issued by March 2017.[27] In answers to interrogatories in the Webster case, defendants admitted that they had only made 38 refunds prior to the filing of the Webster case on February 17, 2017 and that they had made no refunds to any Alaska residents prior to February 17, 2017.[28] Ultimately, defendants refunded $255,483.35 to Alaska consumers who were improperly charged sales tax.[29]

Plaintiff commenced this action on September 5, 2018. Plaintiff asserts two claims on behalf of herself and others similarly situated. In Count I, plaintiff asserts an Alaska Unfair Trade Practices and Consumer Protection Act (UTPCPA) claim. Plaintiff alleges that

> [d]efendants violated the UTPCPA by knowingly charging and collecting an unlawful sales tax on its clothing sales to [p]laintiff and class member[s]; by failing to disclose that they were not authorized to collect such taxes; and by actively misrepresenting to their customers, directly and through [their] retailers, that their 2016 Tax Policy and their collection of "sales tax" from the class members was proper and lawful.[30]

---

[26]First Amended Class Action Complaint at 13, ¶ 77, Docket No. 4.

[27]Declaration of Jamie Ellis [etc.] at 5, ¶ 12; 7-8, ¶ 18; Docket No. 27.

[28]Exhibit 10 at 3-4, Iverson Declaration, Docket No. 36.

[29]First Amended Class Action Complaint at 14, ¶ 86, Docket No. 4.

[30]Id. at 19, ¶ 108.

Plaintiff also alleges that "[d]efendants intentionally violated the UTPCPA by programming their online point-of-sale payment system to collect sales tax on clothing when such collection was unlawful and not authorized by the taxing authority of the buyer."[31] In Count II, plaintiff asserts a conversion claim. In her first amended complaint, plaintiff sought the following relief: 1) actual, statutory, and punitive damages, 2) interest on her damages, 3) a declaration that defendants' conduct was unlawful, 4) an injunction prohibiting defendants from improperly collecting sales tax in the future, and 5) attorney's fees and costs. In her opposition to the instant motions, plaintiff states that she is seeking "the following relief: an accounting; interest; statutory damages; and punitive damages."[32]

Defendants originally moved to dismiss plaintiff's first amended complaint both due to a lack of standing and because her claims were not plausible. The Ninth Circuit Court of Appeals has resolved the standing issue in plaintiff's favor.[33] The court now takes up the issue of whether plaintiff's claims are plausible. Should the court not dismiss plaintiff's first amended complaint in its entirety, then the court will take up defendants' motion to strike the class allegations.

---

[31] Id. at 19, ¶ 109.

[32] Plaintiff's Opposition to Defendants' Motion to Dismiss at 1, Docket No. 35.

[33] Docket No. 69.

Motion to Dismiss

"'To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Zixiang Li v. Kerry, 710 F.3d 995, 999 (9th Cir. 2013) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Iqbal, 556 U.S. at 678). "The plausibility standard requires more than the sheer possibility or conceivability that a defendant has acted unlawfully." Id. "'Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Iqbal, 556 U.S. at 678). "[T]he complaint must provide 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" In re Rigel Pharmaceuticals, Inc. Securities Litig., 697 F.3d 869, 875 (9th Cir. 2012) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "In evaluating a Rule 12(b)(6) motion, the court accepts the complaint's well-pleaded factual allegations as true and draws all reasonable inferences in the light most favorable to the plaintiff." Adams v. U.S. Forest Srvc., 671 F.3d 1138, 1142-43 (9th Cir. 2012). "However, the trial court does not have to accept as true conclusory allegations in a complaint or legal claims asserted in the form of factual allegations." In re Tracht Gut, LLC, 836 F.3d 1146, 1150 (9th Cir. 2016).

Defendants first argue that plaintiff's conversion claim is not plausible. "To establish a conversion claim, a plaintiff must prove that it had a possessory interest in the property, that the defendants intentionally interfered with the plaintiff's possession, and that the defendants' acts were the legal cause of the plaintiff's loss of property." St. Paul Church, Inc. v. Board of Trustees of Alaska Missionary Conference of United Methodist Church, Inc., 145 P.3d 541, 558 (Alaska 2006). Defendants argue that plaintiff's conversion claim is not plausible because she cannot prove that she lost any property given that the sales tax she was charged has been refunded.

Plaintiff contends that she lost interest on the sales tax she improperly paid. "'Damages in an action of conversion generally are measured by the value of the item at the time it was converted plus interest.'" Dressel v. Weeks, 779 P.2d 324, 328 (Alaska 1989) (quoting Rollins v. Leibold, 512 P.2d 937, 944 (Alaska 1973)). Alaska has long recognized that "interest is in the nature of compensatory damages, not costs." Amer. Nat'l Watermattress Corp. v. Manville, 642 P.2d 1330, 1343 (Alaska 1982). Because plaintiff has allegedly lost interest on the sales tax she paid, it is plausible that she has lost property as a result of defendants' conduct. Thus, plaintiff's conversion claim is plausible.

Defendants next argue that plaintiff's UTPCPA claim is not plausible. The UTPCPA was "designed to meet the increasing need in Alaska for the protection of consumers as well as honest businessmen from the depredations of those persons employing unfair or deceptive trade practices. The act protects the consumer from deceptive sales and advertising practices,

-9-

and it protects honest businesses from their unethical competitors." Donahue v. Ledgends, Inc., 331 P.3d 342, 353 (Alaska 2014) (internal citation omitted). "Two elements must be proved to establish a prima facie case of unfair or deceptive acts or practices under the Alaska Act: (1) that the defendant is engaged in trade or commerce; and (2) that in the conduct of trade or commerce, an unfair act or practice has occurred." State v. O'Neill Investigations, Inc., 609 P.2d 520, 534 (Alaska 1980). An individual who has "suffer[ed] an ascertainable loss of money or property as a result of another person's act or practice declared unlawful by AS 45.50.471" may bring a claim under the UTPCPA. AS 45.50.531(a).

Defendants argue that plaintiff cannot show that she suffered an ascertainable loss of money because the sales tax she was charged has been refunded. Plaintiff has, however, alleged that she suffered an ascertainable loss of money because she was not paid interest on the amount refunded. It is plausible that the interest that plaintiff is allegedly due is an "ascertainable loss of money" for purposes of the UTPCPA.

Defendants also argue that plaintiff's UTPCPA claim should be dismissed because she has failed to plead this claim with the particularity required under Rule 9(b). "A motion to dismiss a complaint or claim 'grounded in fraud' under Rule 9(b) for failure to plead with particularity is the functional equivalent of a motion to dismiss under Rule 12(b)(6) for failure to state a claim." Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1107 (9th Cir. 2003). "Under Rule 9(b), a plaintiff 'must state with particularity the circumstances

-10-

constituting fraud.'" United States v. United Healthcare Ins. Co., 848 F.3d 1161, 1180 (9th Cir. 2016) (quoting Fed. R. Civ. P. 9(b)). "This means the plaintiff must allege 'the who, what, when, where, and how of the misconduct charged[.]'" Id. (quoting Ebeid ex rel. United States v. Lungwitz, 616 F.3d 993, 998 (9th Cir. 2010)).

Plaintiff argues that she has pled her UTPCPA claim with the required particularity. She argues that her first amended complaint contains allegations that are "specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." Vess, 317 F.3d at 1106 (citation omitted). Plaintiff cites to Keating v. Nordstrom, Inc., Case No. 3:17-cv-00030-SLG, 2018 WL 576825 (D. Alaska Jan. 26, 2018), in support of her argument.

There, the plaintiff alleged "that Nordstrom ha[d] a pattern and practice of advertising false sales prices while regularly charging its customers more than the ticketed price." Id. at *1 (internal quotation marks omitted). In her first amended complaint, the plaintiff alleged the details of several purchases she had made at Nordstrom, including the date of the purchase, the item that was purchased, the price she paid, and the price that was advertised. Id. at *1-2. Nordstrom moved to dismiss the plaintiff's first amended complaint for failure to plead her UTPCPA claim with particularity. Id. at *7. The court found that the plaintiff had pled her UTPCPA claim with the required particularity, explaining

> Ms. Keating alleges in her FAC that Nordstrom "has a pattern and practice of advertising false sales prices while regularly charging its customers more than the ticketed price" and that the advertised price, whether it be hand written or on a sign, was not

-11-

>honored at the cash register. She maintains that she was charged a higher price. Ms. Keating has satisfied Rule 9(b)'s particularity requirements in providing specific details of several events where this allegedly occurred.

Id.

Similarly here, plaintiff argues that it is sufficient that she has given one example of when she was charged sales tax on a LuLaRoe purchase. In her first amended complaint, plaintiff has provided one sample of an invoice which shows that she was charged $1.30 in tax on a $28.00 purchase of leggings.[34] Plaintiff also points out that as evidenced by the declaration of Jamie Ellis, defendants have been able to identify more than $10,000 worth of purchases that she made between April 2016 and June 2017, for which they charged her $531.25 in sales tax.[35] Plaintiff argues that this undermines defendants' Rule 9(b) argument because plainly they have been able to identify the basis of her UTPCPA claim.

Plaintiff alleges that defendants

> violated the UTPCPA by knowingly charging and collecting an unlawful sales tax on its clothing sales to Plaintiff and class member[s]; by failing to disclose that they were not authorized to collect such taxes; and by actively misrepresenting to their customers, directly and through [their] retailers, that their 2016 Tax Policy and their collection of "sales tax" from the class members was proper and lawful.[36]

---

[34]First Amended Class Action Complaint at 10, ¶ 57, Docket No. 4.

[35]Docket No. 27 at 10-11, ¶ 26.

[36]First Amended Class Action Complaint at 19, ¶ 108, Docket No. 4.

-12-

While plaintiff has alleged with particularity that she was charged sales tax on clothing she purchased from defendants' retailers, she has not alleged any particulars as to her allegation that defendants were actively misrepresenting that their sales tax policy was proper and lawful. Plaintiff has not alleged that she saw or read the 2016 Sales Tax policy or when and where she saw such misrepresentations. Plaintiff must allege specific details connecting the 2016 Tax Policy to her individually. Plaintiff has to do more than simply allege that she was improperly charged sales tax on some of her purchases. That is not sufficient for purposes of Rule 9.

Plaintiff's UTPCPA claim is dismissed because plaintiff has failed to plead this claim with the required particularity. However, because it is possible that plaintiff can plead her UTPCPA claim with particularity, she is given leave to amend as to this claim.

### Motion to Strike Class Allegations

"Pursuant to Rule 12(f), a party may move to strike from a pleading 'any insufficient defense or any redundant, immaterial, or impertinent and scandalous matter.'" Sanders v. Apple Inc., 672 F. Supp. 2d 978, 989–90 (N.D. Cal. 2009) (quoting Fed. R. Civ. P. 12(f)). "Where the complaint demonstrates that a class action cannot be maintained on the facts alleged, a defendant may move to strike class allegations prior to discovery." Id. at 990. The "[c]ourt has authority to strike class allegations prior to discovery if the complaint demonstrates that a class action cannot be maintained." Tietsworth v. Sears, 720 F. Supp. 2d 1123, 1146 (N.D. Cal. 2010). But, "it is in fact rare to do so in advance of a motion for

class certification." Cholakyan v. Mercedes-Benz USA, LLC, 796 F. Supp. 2d 1220, 1245 (C.D. Cal. 2011).

Pursuant to Rule 23(b)(3),[37] plaintiff seeks to certify a class composed of

> [a]ll persons who were or will be assessed sales tax on clothing purchases from LuLaRoe whose purchases were delivered into a location in Alaska that does not assess a sales or use tax on the clothing that LuLaRoe sells.[38]

"Parties seeking class certification bear the burden of demonstrating that they have met each of the four requirements of Federal Rule of Civil Procedure 23(a) and at least one of the requirements of Rule 23(b)." Ellis v. Costco Wholesale Corp., 657 F.3d 970, 979–80 (9th Cir. 2011).

> Rule 23(a) requires parties seeking class certification to establish: (1) that the class is so large that joinder of all members is impracticable (numerosity); (2) that there are one or more questions of law or fact common to the class (commonality); (3) that the named parties' claims are typical of the class (typicality); and (4) that the class representatives will fairly and adequately protect the interests of other members of the class (adequacy of representation).

Id. at 980. "The United States Supreme Court requires district courts to engage in a 'rigorous analysis' of each Rule 23(a) factor when determining whether plaintiffs seeking class

---

[37]In her first amended complaint, plaintiff also sought to certify a class pursuant to Rule 23(b)(2). "Class certification under Rule 23(b)(2) is appropriate only where the primary relief sought is declaratory or injunctive." Zinser v. Accufix Research Institute, Inc., 253 F.3d 1180, 1195 (9th Cir. 2001). Since plaintiff is no longer seeking declaratory or injunctive relief, presumably she no longer seeks to certify a class under Rule 23(b)(2).

[38]First Amended Class Action Complaint at 16, ¶ 94, Docket No. 4.

certification have met the requirements of Rule 23." Id. (quoting General Telephone Co. of Southwest v. Falcon, 457 U.S. 147, 161 (1982)). Rule 23(b)(3) requires a finding "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

Defendants first argue that plaintiff cannot meet the Rule 23(a)(4) requirement, which requires that she "fairly and adequately protect the interests of the class." "To determine whether named plaintiffs will adequately represent a class, courts must resolve two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" Ellis, 657 F3d at 985 (quoting Hanlon v. Chrysler Corp., 150 F.3d 1011, 1020 (9th Cir. 1998)).

Defendants rely on In re Aqua Dots Products Liability Litigation, 654 F.3d 748 (7th Cir. 2011), in support of their argument that plaintiff is not an adequate class representative. "Aqua Dots [was] a toy consisting of small, brightly colored beads that c[ould] be fused into designs when sprayed with water." Id. at 749. Some of the toys contained beads which were harmful if swallowed. Id. at 749-50. "After learning of the problem, Spin Master," the distributor of the toy, "recalled all Aqua Dots products." Id. at 750. Consumers were offered either a non-defective toy, a comparably priced alternative toy, or a refund. Id. The plaintiffs were a group of "purchasers of Aqua Dots products whose children were not harmed and

who did not ask for a refund[.]" Id. They sought "a full refund under federal law plus punitive damages under state law." Id. The district court denied the plaintiffs' motion to certify a class, and the Seventh Circuit affirmed, in part because the plaintiffs were not adequate class representatives. Id. at 752-53. The court explained that the

> [p]laintiffs want relief that duplicates a remedy that most buyers already have received, and that remains available to all members of the putative class. A representative who proposes that high transaction costs (notice and attorneys' fees) be incurred at the class members' expense to obtain a refund that already is on offer is not adequately protecting the class members' interests.

Id. at 752; see also, Waller v. Hewlett-Packard Co, 295 F.R.D. 472, 490 (S.D. Cal. 2013) ("following Aqua Dots, the Court finds that Waller isn't fairly and adequately protecting the class's interests under Rule 23(a)(4) by pursuing litigation to obtain a restitution remedy that is already on offer in the form of the software update").

Defendants' reliance on Aqua Dots and Waller is misplaced because a refund of the sales tax they were charged is not the only relief plaintiff and putative class members would be entitled to if they were to prevail on their UTPCPA claims. Plaintiff and the putative class members could be entitled to statutory damages of $500 per transaction. Because plaintiff and the putative class members are seeking statutory damages, which could be substantial, plaintiff is not proposing that high transaction costs be incurred in order for class members to recover something defendants may have already provided. A named plaintiff is "not [an] inadequate representative[] simply because [she has] chosen to litigate [her] claims rather than avail" herself of the defendants' refund program. In re Scotts EZ Seed Litig., 304

-16-

Case 3:18-cv-00197-HRH   Document 72   Filed 08/18/20   Page 16 of 20

F.R.D. 397, 407 n.5 (S.D.N.Y. 2015). "There are reasons a rational purchaser might choose litigation over a refund, including the availability of statutory and/or punitive damages, or the desire to send a message to a company the consumer believes is behaving unlawfully." Id.

Defendants next argue that the class allegations should be stricken because plaintiff cannot meet the superiority requirement of Rule 23(b)(3) due to their refund program. "[A] number of district courts have factored remedial measures taken by a defendant directly into the superiority analysis and found superiority to be lacking." Waller, 295 F.R.D. at 488 (citing Pagan v. Abbott Labs., 287 F.R.D. 139, 151 (E.D.N.Y. 2012); Webb v. Carter's Inc., 272 F.R.D. 489, 504 (C.D. Cal. 2011); In re PPA Products Litig., 214 F.R.D. 614, 622 (W.D. Wash. 2003); Chin v. Chrysler Corp., 182 F.R.D. 448, 463 (D.N.J. 1998)). "In Pagan, for example, which involved infant formula contaminated by beetle parts and larvae that had been recalled, the court said that 'rational class members would not choose to litigate a multiyear class action just to procure refunds that are readily available here and now.'" Id. (quoting Pagan, 287 F.R.D. at 151).

> "In Webb, a familiar case involving the tagless clothing labels with toxic ink, the court was not persuaded that a class action was superior "because Carter's is already offering the very relief that [p]laintiffs seek: it allows consumers to obtain refunds for the garments, even without a receipt, and reimburses consumers for out-of-pocket medical costs for treating skin irritation resulting from the tagless labels."

Id. (quoting Webb, 272 F.R.D. at 504).

-17-

> In re PPA Products Litig. involved medicine containing PPA which was withdrawn from the market following an FDA health advisory. The court noted that "defendants maintain refund and product replacement programs for individuals still in possession of PPA-containing products" and concluded that "[i]t makes little sense to certify a class where a class mechanism is unnecessary to afford the class members redress."

Id. (quoting In re PPA Products Litig., 214 F.R.D. at 622). In re Conagra Peanut Butter Products Liability Litigation, 251 F.R.D. 689, 691 (N.D. Ga. 2008), involved "peanut butter that was contaminated by Salmonella bacteria." The court concluded that a class action would not be superior in part because Conagra had an "ongoing refund program." Id. at 699.

Similarly here, defendants argue that their refund program is superior to plaintiff's proposed class action because the refund program has already provided a remedy to class members by providing them a refund of the sales tax they have been charged. And, defendants emphasize that the refunds were provided automatically without putative class members having to offer any proof of purchase.

However, the refund program is not necessarily a method of adjudication. As one court has

> observe[d,], . . . Rule 23(b)(3) does not address superiority as a matter of abstract economic choice analysis, but asks if a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy"—i.e., other possible adjudication methods such as individual lawsuits or a consolidated lawsuit. Indeed, all four enumerated factors in this portion of the Rule deal with adjudication. Recently, the Seventh Circuit recognized this language in holding that a refund program cannot be considered a method of "adjudicating the controversy" under 23(b)(3). . . . Hannaford may or may not

-18-

>have a good program to satisfy aggrieved customers, but . . . the Hannaford [refund] program is not relevant to [the] superiority determination under the class certification decision.

In re Hannaford Bros. Co. Customer Data Sec. Breach Litig., 293 F.R.D. 21, 34–35 (D. Me. 2013) (internal citations omitted). Similarly in Korolshteyn v. Costco Wholesale Corp., Case No. 3:15-cv-709-CAB-RBB, 2017 WL 1020391, at *8 (S.D. Cal. March 16, 2017), the court observed that "allowing class members to obtain a refund is not an alternative to 'adjudicating' whether Defendants are liable for material misrepresentations on the labels of their products. If it were, then Costco (and any retail store) could freely misrepresent the benefits of their products secure in the knowledge that their return policy effectively immunizes them from any suit seeking restitution." In addition, defendants' refund program is not necessarily superior to the proposed class action because plaintiff and the putative class members are seeking statutory damages. "The remedy available for plaintiffs in a class action—statutory damages [of $500 per purchase]—is a more effective remedy for most class members than a simple refund of" the sales tax they were charged. Kurtz v. Kimberly–Clark Corp., 321 F.R.D. 482, 553 (E.D.N.Y. 2017). At this point, the court cannot conclude that the proposed class action is not a superior method of adjudicating the controversy.

### Evidentiary Objections

Defendants have made numerous evidentiary objections to the declaration of Kelly Iverson and the attached exhibits and the declaration of Katie Van, which were filed in support of plaintiff's opposition. To the extent the court relied on any of the objected to

-19-

evidence, defendants' evidentiary objections are overruled. The court has determined that the evidence it has relied on is relevant, is not impermissible legal argument, does not exceed the scope of defendants' motion, and/or is properly authenticated. As to the objected to evidence that the court has not relied on, defendants' evidentiary objections are overruled as moot.

## Conclusion

Defendants' motion to dismiss is denied in part and is granted in part. It is denied as to plaintiff's conversion claim. It is granted as to plaintiff's UTPCPA claim. Plaintiff is given leave to amend as to this claim.

Defendants' alternative motion to strike plaintiffs' class allegations is denied.

Should plaintiff elect to file a second amended complaint, that complaint shall be filed on or before September 1, 2020.

DATED at Anchorage, Alaska, this 18th day of August, 2020.

/s/ H. Russel Holland
United States District Judge