R. Bruce Carlson, Esq.
Kelly K. Iverson, Esq.
(*All admitted pro hac vice*)
**CARLSON LYNCH, LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
(412) 322-9243 (telephone)
(412) 231-0246 (fax)
Email: bcarlson@carlsonlynch.com
Email: kiverson@carlsonlynch.com

James J. Davis, Jr., AK Bar No. 9412140
Goriune Dudukgian, AK Bar No. 0506051
**NORTHERN JUSTICE PROJECT, LLC**
310 K Street, Suite 200
Anchorage, AK 99501
(907) 264-6634 (telephone)
(866) 813-8645 (fax)
Email: gdudukgian@njp-law.com
Email: jdavis@njp-law.com

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| KATIE VAN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LLR, INC. d/b/a LuLaRoe, and LULAROE, LLC<br><br>Defendants. | Case No. 3:18-cv-00197-HRH<br><br><br>Filed Electronically<br><br>**JURY TRIAL DEMANDED** |

## SECOND AMENDED CLASS ACTION COMPLAINT

Plaintiff Katie Van ("Plaintiff") brings this action on behalf of herself and all others similarly situated against Defendant LLR, Inc. ("LLR") and LuLaRoe, LLC ("LLR LLC") (hereinafter, collectively, "LuLaRoe" or "Defendants"), and states:

## INTRODUCTION

1.      From at least April 2016 through June 1, 2017, Defendants knowingly charged a non-existent "tax" to consumers in tax-free jurisdictions in Alaska on their purchases of clothing. LuLaRoe knew its assertion that it was collecting a tax was false, concealed this knowledge from its retailers and its end consumers. This unlawful practice harmed Plaintiff and each class member in precisely the same manner.

2.      Plaintiff brings this action on behalf of herself and all others similarly situated to challenge Defendants' unlawful, unjust, and deceptive practice, which damaged Alaska residents by including unauthorized overcharges on remote purchases and seeks the following relief:  (1) actual damages in the form of a complete and accurate disgorgement of all surcharges made under the guise of "tax"; (2) an accounting to ensure that the disgorgement is in fact complete and accurate; and (3) all available compensatory, statutory, and punitive damages, along with attorneys' fees and costs.

## JURISDICTION AND VENUE

3.      This Court has original jurisdiction of this action pursuant to the Class Action Fairness Act, 28 U.S.C §1332(d): the matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000; this case is a class action in which at least some members of the proposed class have a different citizenship from Defendants; and there are more than 100 putative class members.

2

4.     The District of Alaska has personal jurisdiction over the Defendants named in this action because Defendants conduct substantial business in this District.

5.     Venue is proper in the District of Alaska under 28 U.S.C. § 1391(b) because Plaintiff Van purchased products from Defendants in this District, and a substantial part of the acts and omissions giving rise to her claims occurred here.

## PARTIES

6.     Plaintiff Katie Van is and at all times relevant hereto has been a resident of Anchorage, Alaska.

7.     LuLaRoe is a multilevel-marketing company that sells clothing through fashion retailers located in all fifty states to consumers across the United States.

8.     Defendant LLR is incorporated in Wyoming and headquartered in California.

9.     Defendant LLR LLC is organized in and headquartered in California.

10.     Defendant LLR implemented the 2016 "Tax" Policy (defined *infra*) that is at issue in this Complaint and collected the unlawful tax at issue in this Complaint.

11.     Defendant LLR LLC enforced the unlawful 2016 "Tax" Policy at issue in this Complaint and LLR LLC owned the point-of-sale ("POS") system, Audrey, which was programmed to charge the unlawful surcharges complained of in this Complaint.

12.     According to the CEO of LLR, "there is not a clear distinction" between LLR and LLR LLC and the two companies convene an executive committee meeting every Monday that involves members of both companies and is not designated as an LLR or LLR LLC meeting.

13.     Accordingly, both Defendants were involved in perpetrating the deceptive and fraudulent conduct, explained more fully below.

3

## STATEMENT OF FACTS

14.     Sales and use tax is a consumption tax on the purchase of goods or services assessed by some states and municipalities.

15.     A interstate retail transaction is only subject to use tax in the taxing authority where the goods are delivered.

16.     For example, when a buyer and seller reside in the same state, and the buyer takes possession of the purchased goods in that state, the sales tax laws of that state (in which both parties reside) governs the transaction.

17.     But, when the buyer and seller reside in different states, and the seller delivers the purchased goods from its state to the buyer's state, the tax laws of the buyer's state governs the transaction.

18.     LuLaRoe collects and remits sales tax on behalf of its retailers.

19.     Alaska has no sales or use tax, but permits jurisdictions in Alaska to impose a sales and/or use tax.

20.     Some jurisdictions in Alaska impose a sales tax, while others do not.

21.     Similarly, some impose a corollary use tax, while others do not.

22.     This action is brought on behalf of consumers that made purchases from LuLaRoe retailers outside of Alaska and had them shipped into a jurisdiction in Alaska that does not impose a sales or use tax on the clothing LuLaRoe sells.

A.  **LuLaRoe's Tax Practices Prior to April 2016**

23.     Beginning in 2014, LuLaRoe was being pressured by taxing authorities to remit tax on its retailers' sales.

4

24.     As a result, it initiated a relationship with Utah-based POS vendor ControlPad to implement a POS system called "Audrey."

25.     Audrey was introduced to retailers in or around May or June 2015 and LuLaRoe's policy and procedures, which the retailers contractually agreed to follow, required that LuLaRoe retailers "must" use the Audrey POS.

26.     Prior to April 2016, the Audrey system included a toggle-switch, which permitted LuLaRoe's retailers to turn off tax charges when they made a sale into a tax-free jurisdiction, preventing any improper tax charges to the putative class members.

B.  **LuLaRoe Discovers it is Overpaying Taxing Jurisdictions**

27.     In January 2016, LuLaRoe's Senior Tax Advisor undertook to reconcile LuLaRoe's prior tax filings.

28.     What he discovered was that, because of the way Audrey was programmed, LuLaRoe was remitting a tax to retailers' states on *all* sales based on the retailer location – this was regardless of whether or not the end consumer was charged or paid sales tax on a transaction (*i.e.*, LuLaRoe was overpaying sales tax because it was paying retailer states on the transactions shipped to class members not subject to any such tax).

29.     LuLaRoe manufactured a "solution" to address this tax dilemma: the 2016 "Tax" Policy (defined below), which was designed to wrongly shift the overpayments caused by the failures of LuLaRoe's Audrey system from LuLaRoe to its end consumers, including the Plaintiff and class members.

C. **LuLaRoe's Implementation of its 2016 "Tax" Policy**

30.    In April 2016,[1] LuLaRoe announced a new policy via webinar and conference call: henceforth Audrey would be collecting a "tax" from end consumers based upon retailer location, across the board, on every transaction, regardless of where the product was delivered and regardless of whether there was any authority to impose such a "tax" on the consumers (the "2016 "Tax" Policy").

31.    LuLaRoe knew, however, that there was no "tax" imposed by either the class members' jurisdictions, or the retailers' jurisdictions, on class members' purchases.

32.    The use of Audrey, as *well as compliance with the new policy*, was not an option for retailers.  The new policy was sent by email to *all* LuLaRoe retailers.

33.    One retailer summarized the instruction from LuLaRoe as follows:

Sales Tax - LEAVE THE BOX CHECKED FOR SALES TAX IN ALL CIRCUMSTANCES FROM NOW ON - it will be calculated based on where you live. We can either start right now and charge you as retailers sales tax on the retail amount when you place your wholesale orders (a terrible solution that no one wants) - or, you all have to collect sales tax 100% of the time regardless of where it is being shipped. The Sales Tax will be calculated based on where YOU live and do business. This is NOT optional - you MUST leave the sales tax box checked - everyone NEEDS to charge Sales Tax based on the rate of the location where THEY DO BUSINESS on all purchases no matter what. The tax rate that your customer will be charged will be based on where YOU are. Keep the box checked. This is our process now - to remain in good standing with all the states. This is short term. In the long term, the software will get a new functionality and your customer will be charged tax based on the shipping destination in the future.

34.    Thereafter, LuLaRoe altered the Audrey POS to prevent retailers from turning off the tax feature when making sales delivered into other states with no sales tax, such as to class members.

---

[1]    In early 2016, LLR LLC purchased Audrey from Control Pad and moved the Audrey point-of-sale system in house with LuLaRoe.

6

35.     LuLaRoe retailers were instructed not to change the tax rate calculated by Audrey, even for remote sales delivered to jurisdictions where the purchases were not taxable such as to the class members' jurisdictions.

36.     As a result of LuLaRoe's new policy and the change in Audrey's functionality, when anyone from any jurisdiction, including jurisdictions without any sales or use tax, purchased a LuLaRoe product, that consumer's invoice had a "tax" automatically and systematically added if the retailer was located in a jurisdiction which imposed a sales tax on the product (even though that retailers' jurisdiction did not impose a tax on the product when sold to the class members).

37.     By way of example, if a consumer from Anchorage, Alaska purchased a LuLaRoe product online from a retailer in a state with sales tax on clothes, such as Ohio, and had that product shipped to Anchorage, Alaska, LuLaRoe added a surcharge on the purchase invoice in the amount of the retailer's Ohio state and local sales tax on that purchase. That surcharge was identified on the invoice as a "tax."

38.     No Ohio state or local taxing authority imposes a tax on purchases shipped to consumers in Alaska.

39.     Indeed, in the example above, there was no "tax" imposed or collected, despite LuLaRoe issuing an invoice identifying the surcharge as a "tax."

40.     If that same Alaska consumer also purchased from a retailer in Washington and Hawaii, LuLaRoe sur-charged the consumer the state and local Washington and Hawaii tax rates, respectively, to the Alaska consumer. That surcharge was identified on the invoice as a "tax."

41.     No Washington state or local taxing authority imposes a tax on purchases shipped to consumers in Alaska.

42.     Indeed, in the example above, there was no "tax" imposed or collected, despite LuLaRoe issuing an invoice identifying the surcharge as a "tax."

43.     To be clear, despite that LuLaRoe called these surcharges a "tax," they were not a "tax" because there was *NO TAX* whatsoever imposed by any taxing authority on class members' purchases.

44.     And, because neither the retailers' jurisdictions nor the class members' jurisdictions imposed any tax on Plaintiff or the class members, there was *NO TAX* whatsoever being collected in trust on behalf of any taxing authority.

45.     Indeed, the "tax" charged by LuLaRoe was not a "tax" at all.

D.     **LuLaRoe Lies to its Retailers Regarding the Legality of the 2016 "Tax" Policy**

46.     LuLaRoe's retailers are the front-line point of communication with LuLaRoe's end consumers.

47.     Immediately after it enacted the unlawful 2016 "Tax" Policy, LuLaRoe issued a sales tax memorandum and "white paper" memorandum to all of its retailers, which was authored by Terrel Transtrum, a "licensed tax attorney with law degrees from University of Idaho (J.D.) and University of Miami (LL.M. – Masters of Law in Taxation)."

48.     In the "white paper," LuLaRoe told its retailers that the policy it implemented, requiring that tax be charged based upon the location of the retailer, was proper and legal.

49.     The "white paper" fraudulently claimed that it was proper to collect sales tax based on the retailer address, whether the customer is physically present or not, because it is as if the customer is purchasing from the retailers' homes.

8

50.     As repeatedly admitted by LuLaRoe's own officers, this information was false; LuLaRoe's "Ethics Specialist," who was part of LuLaRoe's management team, admitted that it was "not ethical" to collect tax from the class members when no tax should have been charged.

E.  **LuLaRoe Knew that its Sales Tax Procedures were Unlawful Yet Continued its Practices**

51.     Within a month of LuLaRoe issuing the sales tax memorandum and white paper to its retailers the Attorney General of the Commonwealth of Pennsylvania transmitted a consumer complaint to LuLaRoe, dated May 16, 2016, challenging LuLaRoe's illegal practices.

52.     On June 28, 2016, LuLaRoe responded to the Attorney General, ***unequivocally admitting that LuLaRoe knew that it was overcharging people in states that did not have a sales tax on the clothing that LuLaRoe sells***.

53.     Despite this admission, LuLaRoe ***did not*** discontinue its improper practices or reinstitute the ability for retailers to remove tax charges on purchases sold to the putative class.

54.     By May 31, 2016, LuLaRoe had also received a notice from the State of Minnesota Office of the Attorney General requesting that LuLaRoe "review and correct its systems to be in compliance with Minnesota sales tax law" and "determine the number of other Minnesotans who need to be refunded for paying sales tax."

55.     Yet again, LuLaRoe acknowledged its fault and systematic overcharging, but did nothing discontinue its practice of surcharging the class members in the guise of a "tax."

56.     Indeed, LuLaRoe was aware that its practices would result in customers being overcharged on their purchases. LuLaRoe's CEO, Mr. Stidham, admitted under oath in an unrelated Utah proceeding brought by its former payment processing vendor that LuLaRoe knew this class action was coming.

9

57.    Despite these acknowledgements and after admitting to two different states'
Attorney Generals that its practices were unlawful, LuLaRoe continued to unlawfully surcharge
its consumers under the guise of a "tax" until June 1, 2017.[2]

58.    LuLaRoe did nothing to retract its statements to its retailers that what it was doing
was proper and lawful, continuing to conceal its knowledge from those retailers and, by extension,
its end consumers.

59.    LuLaRoe also continued to disseminate the false information in the sales tax
memorandum and white paper to its retailers.

F.  **The Plaintiff's and Class Members' Experiences**

60.    Plaintiff resides in Anchorage, Alaska, which has no sales or use tax.

61.    Plaintiff Van made purchases from LuLaRoe retailers in other states and had those
purchases shipped to her home in Anchorage, Alaska.

62.    Plaintiff Van was charged a "tax" on purchases that she made from LuLaRoe's
remote consultants, but such charge was not a "tax" and LuLaRoe knew it was not a "tax".

63.    Plaintiff Van saw the "tax" representation made on the invoices that LuLaRoe sent
to her and Plaintiff believed it represented a legitimate "tax" and that she was required to pay.

64.    An example invoice received by Plaintiff Van is below, which details the subtotal,
the non-existent "tax" charge, and the total charge including the "tax" for the purchase.

---

[2]      According to LuLaRoe, by June 1, 2017, its retailers were no longer operating on Audrey
and the new POS system purportedly does not overcharge tax to the class members.

10

**Katie Van**

Invoice #42365278

https://www.facebook.com/groups/LuLaRoeCitybythesea/

Balance Due This invoice has a balance of $29.30

Click here to pay invoice 42365278

**Subtotal** $28.00

1

**Tax** $1.30
**Total** $29.30
**Balance** $29.30

Pay invoice 42365278

| Model | One Size | na |
|---|---|---|
| First Class Shipping and Handling | | 1 |
| Leggings OneSize | 1 | |
| **Total Items In This Order** | | **2** |

65.     Plaintiff Van received numerous similar invoices from LuLaRoe that asserted to be charging a "tax" which Plaintiff Van paid.

66.     There was, however, no "tax" on any of the sales made to Plaintiff Van.

67.     LuLaRoe's conduct was uniform to Plaintiff and all class members.

68.     Like Plaintiff, the class members all purchased LuLaRoe clothing from retailers outside of Alaska to be shipped into jurisdictions in Alaska with no use tax on such purchases.

11

69.     Plaintiff and every class member received an invoice from the retailer that was generated by LuLaRoe's Audrey system.

70.     On each invoice, LuLaRoe represented that Plaintiff the class members owed a "tax" on the purchase.

71.     That representation was false.

72.     There was no "tax" whatsoever owed on the class members' purchase.

73.     Nor was LuLaRoe collecting a "tax" in trust for retailers' jurisdictions from the putative class members.

74.     The retailers' jurisdictions for the remote sales made to Plaintiff and the putative class members do not impose any tax on the sales to Plaintiff and the putative class members.

75.     Indeed, no state outside of Alaska imposes a tax on product sales delivered into Alaska.

76.     Plaintiff and every class member paid the invoices that represented they were paying a "tax" when, in fact, there was no such tax—a fact readily known by LuLaRoe.

77.     Each invoice sent by LuLaRoe to Plaintiff and the class members for remote purchases made from retailers in jurisdictions that impose (on their own citizens) a sales tax, made the same misrepresentation that the class members owed a "tax" on the purchase.

78.     If a customer questioned LuLaRoe about the "tax" charge, LuLaRoe perpetuated its deceptive practice by telling the customers that there was a tax imposed by retailer locations.

79.     In turn, LuLaRoe's retailers were trained to wrongly uniformly inform the customer that they owed such tax (*i.e.*, that the tax was properly assessed based on retailer location).

12

80. LuLaRoe has identified the transactions for which it surcharged consumers in Alaska under the false assertion that the sale had a "tax" and LuLaRoe was able to ascertain the identity of the end consumers for those transactions.

81. The harm to the class is consistent – Plaintiff and each class member was overcharged by LuLaRoe's surcharging a non-existent "tax."

82. LuLaRoe deceptively and unfairly surcharged Alaska customers on at least 72,503 sales transactions from April 2016 through June 1, 2017.

## G. **LuLaRoe is Sued on February 17, 2017 on Behalf of, *Inter Alia*, the Class**

83. On February 17, 2017, a law suit styled as *Webster v. LLR, Inc.*, was instituted in the Western District of Pennsylvania, alleging claims on behalf of class members in eleven states with no sales tax on the clothing LuLaRoe sells, but where those customers were surcharged in the guise of a "tax" – the class in *Webster* included the putative class members here.

84. A motion for class certification was filed on December 6, 2017, on behalf of eleven subclasses representing eleven different states, including Alaska.

85. On August 20, 2018, the *Webster* Court denied certification based on the variations in state laws that would have to be addressed with the eleven subclasses.

86. The District Court there made no findings on the merits, nor did the decision preclude filing this class action Complaint on behalf of Alaska residents because the issues that the court found precluded Rule 23 class certification in that action are no longer present in light of this action involving only one state's laws – that of Alaska.

## H. **LuLaRoe's Improper Attempt to "Pick Off" the Class**

87. From April 2016 until the *Webster* Complaint was filed, LuLaRoe stood by its decision to systematically and fraudulently surcharge its customers in the guise of "tax."

Case 3:18-cv-00197-JMK   Document 73   Filed 08/24/20   Page 13 of 22

88.     Once its unfair and deceptive practices became the subject of a class action (and media attention), only then did LuLaRoe change its tune.

89.     In a statement published on February 27, 2017, (after the filing of the complaint in *Webster*) a LuLaRoe spokesperson told Forbes Magazine:

> We have been aware of sporadic problems with our former payments vendor, which have increased over the past year with the fast growth of our company.
> …
> The issue involved 'our former payments vendor, which had a technology system failure that misidentified the accurate location of certain individuals.' Since that time, according to a company spokesperson, '[w]e have immediately reimbursed any individual whom we could identify as having been improperly charged sales tax.' Further, the company says '[w]e are proactively working to ensure that all affected individuals are refunded.'

*See* Forbes, Popular Fashion Line LuLaRoe Sued Over Sales Tax Charges, Feb 27, 2017, available at https://www.forbes.com/sites/kellyphillipserb/2017/02/27/popular-fashion-line-lularoe-sued-for-overcharging-customers-sales-tax/#5f4aeac7176d.

90.     As part of an apparent effort to put the genie back into the bottle regarding its unlawful surcharges, **and only after the *Webster* lawsuit was filed,** LuLaRoe engaged in a confusing, ad hoc, refund scheme in a failed effort to escape responsibility for its bad acts.

91.     But any suggestion that LuLaRoe's attempt to manufacture its own "remedy" to its unfair and deceptive conduct somehow excuses the harm it caused is disingenuous.

92.     LuLaRoe's "remedy" provided class members with no basis for ascertaining what the amount of the overcharge was or whether the entire amount of the unlawful charges were refunded, nor did it compensate Plaintiff or the class members for the full amount of their damages under the class claims (*i.e*, compensatory damages, interest, statutory, and/or punitive damages).

93.     LuLaRoe refunded ***only*** the amounts it improperly charged without any interest or other damages added.

14

94.     Indeed, while LuLaRoe alleges that it has refunded the $255,483.35 it overcharged the Plaintiff and putative class, LuLaRoe has suffered ***absolutely no*** consequence for its knowing and unlawful conduct towards the class because in LuLaRoe's own words, the refund program made after over a year of LuLaRoe's deception of its consumers was a "zero-sum" game for LuLaRoe.

95.     This scenario is the exact reason why states have consumer protection statutes. LuLaRoe's belated refunds do nothing to defeat the class claims here.

I.   **LuLaRoe Benefited From the Use of Audrey and the Deceptive 2016 "Tax" Policy**

96.     For its retailers' mandatory use of Audrey, LuLaRoe received incentive payments from its payment processing vendor, totaling approximately $5.6 million in 2016 and $1.9 million in just the first two months of 2017.  At the same time that LuLaRoe overcharged consumers in jurisdictions with no sales tax more than $8 million, LuLaRoe garnered $7.5 million in processing fees for its consumers' use of the Audrey POS system.

97.     Prior to its 2016 "Tax" Policy, LuLaRoe was paying retailers' taxing authorities on remote purchases made by class members, despite that such payment was not requested, due, nor required by those taxing authorities.

98.     LuLaRoe was indiscriminately paying such unowed money to the retailers' taxing authorities because LuLaRoe's POS system did not distinguish between retailers' in-state sales and out of state sales.

99.     LuLaRoe's conduct in changing its system to charge "tax" to Plaintiff and the putative class, improperly passed the costs associated with the shortcomings of its POS system and its indiscriminate payments to retailers' taxing jurisdiction onto its end consumers, including the class members, under the assertion of collecting a "tax" when there was no tax.

15

100. LuLaRoe's 2016 "Tax" Policy was implemented at the expense of the class and was designed to save LuLaRoe from paying both: (i) the immediate costs associated with fixing the systemic flaws of its POS System; and (ii) its overpayments to the retailers' taxing authorities caused by Audrey's failures. Any suggestion by LuLaRoe that it did not receive a benefit from its deceptive acts is unsupportable.

## CLASS ALLEGATIONS

101. Plaintiff bring this class action on behalf of herself and all other similarly situated class members under Rules 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure, and seeks to certify the following class:

> All persons who were assessed tax on purchases of LuLaRoe products and whose purchases were delivered into a location in Alaska that does not assess a sales or use tax on the clothing that LuLaRoe sells.

102. Excluded from the class is Defendants, as well as their past and present officers, employees, or agents and any judge who presides over this action.

103. Plaintiff reserves the right to expand, limit, modify or amend the class definitions, including the addition of one or more subclasses, in connection with her motion for class certification, or at any other time, based on, among other things, changing circumstances and new facts obtained.

104. <u>Numerosity</u>. The class described above is so numerous that joinder of all members is impracticable. The disposition of the individual claims of the respective class members will benefit the parties and the Court and will facilitate judicial economy.

105. <u>Typicality</u>. Plaintiff's claims are typical of the claims of the members of the classes. The claims of each class member arise from the same course of conduct: Defendants' requirement that class members pay for their purchases via an online point-of-sale payment platform that

16

automatically assesses sales tax without consideration of the laws of the taxing authorities where the class members reside. The claims of Plaintiff and class members are based on the same legal theories and arise from the same unlawful conduct.

106. <u>Existence and Predominance of Common Questions of Law and Fact</u>. This action involves common questions of law and fact, which predominate over any questions affecting individual class members. These common questions include, but are not limited to, the following:

a. Whether Defendants collected funds from Plaintiff and individual class members under the guise of a tax;

b. Whether the law authorized these converted funds;

c. Whether Defendants' conduct was deceptive and/or likely to mislead consumers;

d. Whether Defendants violated the consumer protection laws;

e. Whether Defendants converted funds that lawfully belonged to Plaintiff and the class members; and

f. Whether Plaintiff and the class members suffered damages as a result of Defendants' conduct.

107. <u>Adequacy of Representation</u>. Plaintiff is an adequate representative of the class because her interests do not conflict with the interests of the class members. Plaintiff will fairly, adequately, and vigorously represent and protect the interests of the class members and Plaintiff has no interests antagonistic to the class members. Plaintiff has retained counsel who are competent and experienced in class action litigation, and who possess specific expertise in consumer class actions.

108. <u>Superiority</u>. The nature of this action and the nature of laws available to Plaintiff and the class make the use of the class action format a particularly efficient and appropriate procedure to afford relief for themselves and the class for the wrongs alleged. The damages or

17

other financial detriment suffered by individual class members is relatively modest compared to the burden and expense that individual litigation of their claims against Defendants would entail. It would thus be virtually impossible for Plaintiff and class members, on an individual basis, to obtain effective redress for the wrongs done to them. Absent class action litigation, class members, and the general public would not likely recover, or would not likely have the chance to recover damages, and Defendants will be permitted to retain the converted proceeds of its fraudulent and deceptive misdeeds and would suffer no consequences for the fraud it committed on consumers in this state.

109.    Choice of Law. Plaintiff seeks to certify the class under the laws of Alaska.

## COUNT I
### Alaska Unfair Trade Practices and Consumer Protection Act

110.    The allegations contained in the previous paragraphs are incorporated by reference.

111.    Plaintiff brings this claim individually under the laws of Alaska, and on behalf of the Class.

112.    The Alaska Unfair Trade Practices and Consumer Protection Act ("UTPCPA") prohibits unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce. See Alaska Stat. Ann. § 45.50.471(a).

113.    Defendants violated the UTPCPA by:

   a.   representing on invoices issued to Plaintiff and class member that they owed a "tax" when that representation was false;

   b.   by programming their POS system to add a non-existent "tax" to Plaintiff and the class members' purchases;

18

c.  by programming their online point-of-sale payment system to misrepresent there was a "tax" on class members' purchases and thereby surcharging Plaintiff and members of the class;

d.  by failing to disclose to Plaintiff and the class members that they were overcharging them because of Audrey's system failures;

e.  by issuing invoices that included a non-existent "tax" that created the likelihood of confusion;

f.  by issuing invoices that included a non-existent "tax" that caused Plaintiff and the class members damages; and/or

g.  by issuing invoices that included a non-existent "tax" that had a likelihood to deceive its customer and to be interpreted in a misleading way.

114.  Defendants' representation on each invoice it issued to Plaintiff and the class members stating they owed a "tax" and the Defendants were collecting a "tax" was deceptive and false. There was no tax owed or being collected.

115.  Defendants' conduct offends public policy within the concept of unfairness.

116.  Defendants' conduct was immoral, unethical, oppressive, or scrupulous.

117.  Defendants' conduct had the capacity to deceive its consumers and to be interpreted in a misleading way.

118.  Defendants' conduct caused substantial injury to Plaintiff and the class in the amount of the overcharges, because of their loss of use of the funds overcharged, and based on their lost time value of money.

19

119. Plaintiff and the class members suffered ascertainable losses as a result of Defendants' UTPCPA violations including the amounts overcharged, as well as their loss of use of the funds overcharged and also their lost time value of money.

120. Defendants' conduct was intentional, wrongful, reckless, and outrageous.

121. Accordingly, Plaintiff and the individual class members and are entitled to recover compensatory damages, treble or statutory damages, costs and reasonable attorneys' fees.

## COUNT II
### Conversion and Misappropriation

122. The allegations contained in the previous paragraphs are incorporated by reference.

123. Plaintiff brings this claim individually under the laws of Alaska and on behalf of the class.

124. By its conduct, Defendants have converted and/or misappropriated funds belonging to Plaintiff and individual class members.

125. Plaintiff and the class members had a possessory interest in the converted funds.

126. Defendants intentionally interfered with that possession when they willfully and knowingly instituted an unlawful surcharge on Plaintiff and class members' purchases in the guise of a "tax."

127. As such, Defendants' collection of those surcharges converted and misappropriated the funds of Plaintiff and the members of the class without their consent.

128. Defendants' conduct in programming Audrey to surcharge Plaintiff and class members was the legal cause of the loss of their funds.

129. Defendants' conduct was intentional, wrongful, reckless, and outrageous

130. Alternatively, if the conversion and/or misappropriation was not deliberate, it is the result of Defendants' recklessness and gross neglect.

20

131.     This conversion and misappropriation of funds benefitted and continues to benefit Defendants, while acting to the severe pecuniary disadvantage of Plaintiff and class members.

132.     Accordingly, Plaintiff and the individual class members and are entitled to recover damages, interest, and punitive damages.

## PRAYER FOR RELIEF

133.     Wherefore, Plaintiff, on behalf of herself and the other members of this class, requests this Court award relief against Defendants as follows:

a.     Certifying the class and designating the named Plaintiff as the Class Representatives, and their counsel as Class Counsel;

b.     Declaring Defendants' conduct unlawful;

c.     Awarding Plaintiff and the proposed class members actual, statutory and punitive damages;

d.     Awarding attorneys' fees and costs; and

e.     For such other relief as the Court may deem necessary or appropriate.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: August 24, 2020

NORTHERN JUSTICE PROJECT, LLC

Attorneys for Plaintiff

By: */s/Goriune Dudukgian*
James J. Davis, Jr., AK Bar No. 9412140
Goriune Dudukgian, AK Bar No. 0506051

R. Bruce Carlson, Esq.
bcarlson@carlsonlynch.com
Kelly K. Iverson, Esq.
kiverson@carlsonlynch.com
(*All to be admitted pro hac vice*)

**CARLSON LYNCH, LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
(p) (412) 322-9243
(f) (412) 231-0246

**CERTIFICATE OF SERVICE**
I certify that on August 24, 2020
I served the foregoing document
electronically via the ECF system on:

Brewster Jamieson
Michael Baylous
Randolph Moore
Steven Graham

By: /s/ Goriune Dudukgian

22