IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| KATIE VAN, individually and on behalf of all others similarly situated,<br><br>                             Plaintiff,<br><br>   vs.<br><br>LLR, INC., d/b/a LuLaRoe, and LULAROE, LLC,<br><br>                            Defendants. | No. 3:18-cv-0197-HRH |

O R D E R

Motion to Dismiss

Defendants move to dismiss plaintiff's UTPCPA claim.[1] This motion is opposed.[2] Oral argument was not requested and is not deemed necessary.

Background

Plaintiff is Katie Van. Defendants are LLR, Inc., d/b/a LuLaRoe, and LuLaRoe, LLC.

"LuLaRoe is a multilevel-marketing company that sells clothing through fashion retailers located in all fifty states to consumers across the United States."[3] Plaintiff alleges that in May or June 2015, LuLaRoe retailers were required to begin using a point-of-sales

---

[1]Docket No. 76.

[2]Docket No. 77.

[3]Second Amended Class Action Complaint at 3, ¶ 7, Docket No. 73.

(POS) system called "Audrey."[4]  Plaintiff alleges that "[p]rior to April 2016, the Audrey system included a toggle-switch[] which permitted LuLaRoe's retailers to turn off tax charges when they made a sale into a tax-free jurisdiction[.]"[5]  Plaintiff alleges that in January of 2016, LuLaRoe "discovered . . . that, because of the way Audrey was programmed, LuLaRoe was remitting a tax to retailers' states on all sales based on the retailer location. . . ."[6]  Plaintiff alleges that "LuLaRoe manufactured a 'solution' to address this tax dilemma:  the 2016 'Tax' Policy. . . ."[7]

Plaintiff alleges that the 2016 Tax Policy was announced in April 2016 and pursuant to this policy, "Audrey would be collecting a 'tax' from end consumers based upon retailer location, across the board, on every transaction, regardless of where the product was delivered and regardless of whether there was any authority to impose such a 'tax' on the consumers. . . ."[8]  Plaintiff alleges that the 2016 Tax Policy was announced "via webinar and conference call" and "sent by email to all LuLaRoe retailers."[9]

---

[4]Id. at 5, ¶¶ 24-25.

[5]Id. at 5, ¶ 26.

[6]Id. at 5, ¶¶ 27-28.

[7]Id. at 5, ¶ 29.

[8]Id. at 6, ¶ 30.

[9]Id. at 6, ¶¶ 30, 32.

Plaintiff alleges that LuLaRoe issued a "white paper" to all of its retailers in which it "told [the] retailers that" the 2016 Tax Policy "requiring that tax be charged based upon the location of the retailer, was proper and legal."[10] Plaintiff alleges that "[t]he 'white paper' fraudulently claimed that it was proper to collect sales tax based on the retailer address, whether the customer is physically present or not, because it is as if the customer is purchasing from the retailers' home."[11] Plaintiff alleges that defendants knew that the 2016 Tax Policy was unlawful but that they did nothing to "discontinue [this] improper practice" even "after admitting to two different states' Attorney Generals that" this practice was "unlawful[.]"[12]

Plaintiff alleges that she "resides in Anchorage, Alaska, which has no sales or use tax."[13] She alleges that she "made purchases from LuLaRoe retailers in other states and had those purchases shipped to her home in Anchorage, Alaska."[14] Plaintiff alleges that she "was charged a 'tax' on purchases that she made from LuLaRoe's remote consultants, but such charge was not a 'tax' and LuLaRoe knew it was not a 'tax'."[15] Plaintiff alleges that she

---

[10] Id. at 8, ¶¶ 47-48.

[11] Id. at 8, ¶ 49.

[12] Id. at 9-10, ¶¶ 51-57.

[13] Id. at 10, ¶ 60.

[14] Id. at 10, ¶ 61.

[15] Id. at 10, ¶ 62.

-3-

Case 3:18-cv-00197-HRH   Document 79   Filed 11/12/20   Page 3 of 20

"saw the 'tax' representation made on the invoices that LuLaRoe sent to her and [she] believed it represented a legitimate 'tax' and that she was required to pay."[16] Plaintiff alleges that on each invoice she received from a remote retailer, LuLaRoe falsely represented that she "owed a 'tax' on the purchase."[17] Plaintiff's second amended complaint includes an example of one such invoice.[18] Plaintiff alleges that this surcharge could not be considered a "tax" "because there was NO TAX whatsoever imposed by any taxing authority on [her] purchases."[19]

Plaintiff commenced this action on September 5, 2018. In her first amended complaint, plaintiff asserted an Alaska Unfair Trade Practices and Consumer Protection Act (UTPCPA) claim and a conversion claim. Defendants moved to dismiss plaintiff's first amended complaint due to a lack of standing, because plaintiff had not pled her UTPCPA claim with particularity, and because her claims were not plausible. The court granted defendants' motion to dismiss because it determined that plaintiff lacked standing to bring either of her claims.[20] Plaintiff appealed and the Ninth Circuit Court of Appeals "reverse[d] [this] court's dismissal of this action for lack of standing and remand[ed] for further

---

[16] Id. at 10, ¶ 63.

[17] Id. at 12, ¶¶ 70-71.

[18] Id. at 11, ¶ 64.

[19] Id. at 8, ¶ 43.

[20] Order re Motion to Dismiss at 15-16, Docket No. 52.

proceedings." Van v. LLR, Inc., 962 F.3d 1160, 1161 (9th Cir. 2020). Upon remand, this court denied defendants' motion to dismiss plaintiff's conversion claim but granted their motion to dismiss plaintiff's UTPCPA claim.[21]

In her first amended complaint, plaintiff's UTPCPA claim was based on allegations that defendants

> violated the UTPCPA by knowingly charging and collecting an unlawful sales tax on its clothing sales to Plaintiff and class member[s]; by failing to disclose that they were not authorized to collect such taxes; and by actively misrepresenting to their customers, directly and through [their] retailers, that their 2016 Tax Policy and their collection of "sales tax" from the class members was proper and lawful.[[22]]

Defendants argued that plaintiff's UTPCPA claim was not plausible because plaintiff could not show that she suffered an ascertainable loss and that she had failed to plead the claim with the particularity required under Rule 9(b). Plaintiff argued that her UTPCPA claim was plausible and that she had pled it with the required particularity. The court agreed as to plausibility, finding that plaintiff had plausibly alleged that she suffered an ascertainable loss. But, the court dismissed plaintiff's UTPCPA claim because she had not pled this claim with the required particularity. More specifically, the court stated that plaintiff had "to do more than simply allege that she was improperly charged sales tax on some of her purchases."[23]

---

[21]Order re Motion to Dismiss; Motion to Strike at 20, Docket No. 72.

[22]First Amended Class Action Complaint at 19, ¶ 108, Docket No. 4.

[23]Motion to Dismiss; Motion to Strike at 13, Docket No. 72.

The court stated that plaintiff had to "allege specific details connecting the 2016 Tax Policy to her individually" and "particulars as to her allegation that defendants were actively misrepresenting that their sales tax policy was proper and lawful."[24]

Plaintiff was given leave to amend her UTPCPA claim, and she has timely filed a second amended complaint. Plaintiff's UTPCPA claim is set out in Count I of the second amended complaint. Plaintiff alleges that defendants have violated the UTPCPA

> a. [by] representing on invoices issued to [p]laintiff and class member[s] that they owed a "tax" when that representation was false;
> b. by programming their POS system to add a non-existent "tax" to [p]laintiff and the class members' purchases;
> c. by programming their online point-of-sale payment system to misrepresent there was a "tax" on class members' purchases and thereby surcharging [p]laintiff and members of the class;
> d. by failing to disclose to [p]laintiff and the class members that they were overcharging them because of Audrey's system failures;
> e. by issuing invoices that included a non-existent "tax' that created a likelihood of confusion;
> f. by issuing invoices that included a non-existent "tax" that caused [p]laintiff and the class members damages; and/or
> g. by issuing invoices that included a non-existent "tax" that had a likelihood to deceive [the] customer and to be interpreted in a misleading way.[25]

---

[24]Id.

[25]Second Amended Class Action Complaint at 18-19, ¶ 113, Docket No. 73.

Plaintiff alleges that "[d]efendants' representation on each invoice it issued to [p]laintiff and the [putative] class members stating they owed a 'tax' and [that d]efendants were collecting a 'tax' was deceptive and false" because "[t]here was no tax owed or being collected."[26]

Pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, defendants now move to dismiss plaintiff's UTPCPA claim.

## Discussion

"'To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Zixiang Li v. Kerry, 710 F.3d 995, 999 (9th Cir. 2013) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Iqbal, 556 U.S. at 678). "The plausibility standard requires more than the sheer possibility or conceivability that a defendant has acted unlawfully." Id. "'Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Iqbal, 556 U.S. at 678). "[T]he complaint must provide 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" In re Rigel Pharmaceuticals, Inc. Securities Litig., 697 F.3d 869, 875 (9th Cir. 2012) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "In

---

[26]Id. at 19, ¶ 114.

-7-

Case 3:18-cv-00197-HRH   Document 79   Filed 11/12/20   Page 7 of 20

evaluating a Rule 12(b)(6) motion, the court accepts the complaint's well-pleaded factual allegations as true and draws all reasonable inferences in the light most favorable to the plaintiff." Adams v. U.S. Forest Srvc., 671 F.3d 1138, 1142-43 (9th Cir. 2012). "However, the trial court does not have to accept as true conclusory allegations in a complaint or legal claims asserted in the form of factual allegations." In re Tracht Gut, LLC, 836 F.3d 1146, 1150 (9th Cir. 2016).

The UTPCPA "was designed to meet the increasing need in Alaska for the protection of consumers as well as honest businessmen from the depredations of those persons employing unfair or deceptive trade practices. The act protects the consumer from deceptive sales and advertising practices, and it protects honest businesses from their unethical competitors." Donahue v. Ledgends, Inc., 331 P.3d 342, 353 (Alaska 2014) (internal citation omitted). "Two elements must be proved to establish a prima facie case of unfair or deceptive acts or practices under the Alaska Act: (1) that the defendant is engaged in trade or commerce; and (2) that in the conduct of trade or commerce, an unfair act or practice has occurred." State v. O'Neill Investigations, Inc., 609 P.2d 520, 534 (Alaska 1980).

Defendants first argue that plaintiff's UTPCPA claim should be dismissed because she has failed to plead this claim with the particularity required by Rule 9(b), Federal Rules of Civil Procedure. "A motion to dismiss a complaint or claim 'grounded in fraud' under Rule 9(b) for failure to plead with particularity is the functional equivalent of a motion to dismiss under Rule 12(b)(6) for failure to state a claim." Vess v. Ciba-Geigy Corp. USA,

317 F.3d 1097, 1107 (9th Cir. 2003). Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Rule 9(b) applies to any claim that is "grounded in fraud. . . ." Id. at 1103. A case is grounded in fraud if "the plaintiff allege[s] a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of a claim." Id. A UTPCPA claim can be subject to the requirements of Rule 9(b). See, e.g., Steel Brothers, Inc. v. Dong Sung Heavy Industries, Ltd, Case No. 3:09–cv–00235-RRB, 2013 WL 11309602, at *5 (D. Alaska Jan. 8, 2013).

Plaintiff disputes that Rule 9(b) applies to her UTPCPA claim in the second amended complaint. Defendants, however, argue that plaintiff cannot now contend that her UTPCPA claim is not grounded in fraud because it is the law of the case that Rule 9(b) applies to this claim.

In its order[27] on the motion to dismiss plaintiff's UTPCPA claim in the first amended complaint, the court treated that claim as being subject to Rule 9(b) because there was no disagreement between the parties that Rule 9(b) applied. But, "[w]here, as here, a plaintiff files an amended complaint, the law of the case doctrine is inapplicable[.]" Maeda v. Kennedy Endeavors, Inc., 407 F. Supp. 3d 953, 964 (D. Hawai'i 2019). Plaintiff is not precluded from arguing that Rule 9(b) does not apply to her UTPCPA claim.

Turning then to that question, plaintiff argues that Rule 9(b) does not apply to her UTPCPA claim in the second amended complaint because her claim is asserted under the

---

[27]Docket No. 72.

catchall provision of the UTPCPA, which "states that '[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce are declared to be unlawful.'" Kenai Chrysler Center, Inc. v. Denison, 167 P.3d 1240, 1255 (Alaska 2007) (quoting AS 45.50.471(a)). "[T]he prohibition on [unfair or] deceptive acts or practices in subsection .471(a) . . . encompasses innocent material misrepresentations" as well as intentional misrepresentations. Borgen v. A & M Motors, Inc., 273 P.3d 575, 591 (Alaska 2012). Plaintiff seems to be arguing that she has alleged that defendants engaged in unfair or deceptive conduct, as opposed to fraudulent conduct, and thus Rule 9(b) does not apply to her UTPCPA claim.

Plaintiff cites to Bald v. Wells Fargo Bank, N.A., Case No. 13-16622, 2017 WL 1433314 (9th Cir. April 24, 2017), in support of her argument. There, the plaintiffs alleged that Wells Fargo had violated Hawaii's consumer protection act, which "prohibits 'unfair or deceptive acts or practices in the conduct of any trade or commerce,' including acts that violate common law duties." Id. at *1 (quoting Kapunakea Partners v. Equilon Enters. LLC, 679 F. Supp. 2d 1203, 1209–10 (D. Haw. 2009)). Wells Fargo argued that Rule 9(b) applied to the plaintiffs' claim but the Ninth Circuit rejected that argument, explaining that there was a distinction in Hawaii's law between fraudulent practices and unfair practices. Id. at *3. Because the plaintiffs' claim involved allegations of unfair practices, rather than fraudulent conduct, the court held that Rule 9(b)'s heightened pleading standard did not apply. Id. Other courts have reached similar conclusions. See Windy City Metal Fabricators & Supply,

Inc. v. CIT Technology Financing Services, Inc., 536 F.3d 663, 670 (7th Cir. 2008) ("[b]ecause neither fraud nor mistake is an element of unfair conduct under Illinois' Consumer Fraud Act, a cause of action for unfair practices under the Consumer Fraud Act need only meet the notice pleading standard of Rule 8(a), not the particularity requirement in Rule 9(b)"); Consumer Financial Protection Bureau v. Frederick J. Hanna & Associates, P.C., 114 F. Supp. 3d 1342, 1372 (N.D. Ga. 2015) ("Rule 9(b) expressly applies only to claims alleging 'fraud or mistake,' and as the Tenth Circuit and several district courts have reasoned, consumer protection claims are not claims of fraud, even if there is a deceptive dimension to them"); Walkup v. Santander Bank, N.A., 147 F. Supp. 3d 349, 361 (E.D. Pa. 2015) (citation omitted) ("[s]ince the Plaintiffs need not plead the elements of fraud," in order to state a plausible unfair trade practices claim under Pennsylvania law, "they also need not plead with the particularity required by Rule 9(b) for allegations of 'fraud or mistake'").

Plaintiff argues that the court should follow the reasoning of these cases because the UTPCPA makes a distinction between unfair and deceptive acts and fraudulent conduct. Plaintiff insists that in her second amended complaint, her UTPCPA claim is based on allegations that defendants engaged in unfair or deceptive conduct, not fraudulent conduct.

In addition, plaintiff points out that Alaska law provides that "[i]n interpreting [the UTPCPA] due consideration and great weight should be given the interpretations of 15 U.S.C. 45(a)(1) (§ 5(a)(1) of the Federal Trade Commission Act)." AS 45.50.545. Section 5(a) of the FTC Act prohibits "unfair or deceptive acts or practices in or affecting

-11-

commerce[.]" 15 U.S.C. § 45(a). And at least one circuit has noted that Rule 9(b) does not apply to § 5 claims. F.T.C. v. Freecom Communications, Inc., 401 F.3d 1192, 1204 n.7 (10th Cir. 2005). The Tenth Circuit explained that

> [a] § 5 claim simply is not a claim of fraud as that term is commonly understood or as contemplated by Rule 9(b), and the district's court's inclination to treat it as such unduly hindered the FTC's ability to present its case. Unlike the elements of common law fraud, the FTC need not prove scienter, reliance, or injury to establish a § 5 violation.

Id. Similarly, under the UTPCPA, there is not a requirement of proof of an intent to deceive. S. Peninsula Hospital v. Xerox State Healthcare LLC, 223 F. Supp. 3d 929, 940-41 (D. Alaska 2016). Thus, plaintiff argues that the court should find that Rule 9(b) does not apply to her UTPCPA claim.

Plaintiff's argument fails. Plaintiff's UTPCPA claim is based on allegations that defendants' representations were "deceptive and false[:]"[28] that defendants were intentionally misrepresenting that the tax being charged consumers in Alaska such as plaintiff was proper. Plaintiff's UTPCPA claim is based on allegations that defendants made fraudulent misrepresentations and thus is grounded in fraud.

The question then becomes whether plaintiff has pled her UTPCPA claim with the required particularity. "Under Rule 9(b), a plaintiff 'must state with particularity the circumstances constituting fraud.'" United States v. United Healthcare Ins. Co., 848 F.3d

---

[28]Second Amended Class Action Complaint at 19, ¶ 114, Docket No. 73.

-12-

1161, 1180 (9th Cir. 2016) (quoting Fed. R. Civ. P. 9(b)). "This means the plaintiff must allege 'the who, what, when, where, and how of the misconduct charged[.]'" Id. (quoting Ebeid ex rel. United States v. Lungwitz, 616 F.3d 993, 998 (9th Cir. 2010)). "[M]ere conclusory allegations of fraud are insufficient." Id. (quoting Wool v. Tandem Computers Inc., 818 F.2d 1433, 1439 (9th Cir. 1987)). "Broad allegations that include no particularized supporting detail do not suffice, but statements of the time, place and nature of the alleged fraudulent activities are sufficient[.]" Id. (citation omitted).

Defendants first argue that plaintiff's UTPCPA has not been pled with particularity because plaintiff did not comply with the "explicit instructions" that the court provided[29] in its order on defendants' motion to dismiss the first amended complaint. In that order,[30] the court determined that plaintiff's UTPCPA claim had not been pled with the required particularity and made some suggestions as to what plaintiff would have to plead in order to meet the Rule 9(b) requirement. Plaintiff did not take up the court's suggestions, instead choosing to take a different tack in repleading her UTPCPA claim. Defendants argue that plaintiff was not allowed to do this but rather was required to comply with the court's instructions and her failure to do so means that she has not pled her UTPCPA claim with particularity. But, plaintiff's failure to include the allegations that the court suggested does not necessarily mean that her UTPCPA claim has not been pled with particularity.

---

[29]Defendants' Reply [etc.] at 2, Docket No. 78.

[30]Docket No. 72.

Defendants next argue that plaintiff has not met the particularity requirement as to the two allegedly fraudulent acts that are the basis of her UTPCPA claim in the second amended complaint. According to defendants, these two allegedly fraudulent acts are 1) that LuLaRoe misrepresented that the 2016 Tax Policy and the resulting collection of sales taxes was proper and lawful and 2) that LuLaRoe knowingly collected a non-existent and unlawful sales tax and concealed this information from its retailers and end consumers.

As for the first allegedly fraudulent act, defendants argue that plaintiff has not alleged that she actually saw or read the 2016 Tax Policy. Rather, according to defendants, she has only alleged that LuLaRoe "announced [its] new [tax] policy . . . via webinar and conference call[.]"[31] But, she does not allege that she was a participant in the webinar and conference call. Plaintiff does allege that she "saw the 'tax' representation made on the invoices that LuLaRoe sent to her" and that she "believed it represented a legitimate 'tax'" that she was required to pay.[32] But she does not allege that anyone told her that this was a legitimate tax that she was required to pay. Defendants argue that alleging that she saw the tax on her invoices is nothing more than an allegation that she was overcharged sales tax, an allegation that the court has already found is not sufficient for Rule 9(b) purposes. Defendants acknowledge that plaintiff has alleged that "[i]f a customer questioned LuLaRoe about the 'tax' charge, LuLaRoe perpetuated its deceptive practice by telling the customers that there

---

[31]Second Amended Class Action Complaint at 6, ¶ 30, Docket No. 73.

[32]Id. at 10, ¶ 63.

was a tax imposed by retailer locations."[33] But, defendants point out that plaintiff does not allege that she ever questioned LuLaRoe about the tax charge or that she was ever told by LuLaRoe that this tax was proper. Defendants argue that to satisfy the Rule 9(b) particularity requirements, plaintiff must allege that she was told that the tax was lawful and proper. Without such allegations, defendants argue that plaintiff has failed to connect the 2016 Tax Policy to her individually.

That plaintiff did not allege that she had read or seen the 2016 Tax policy is not fatal to her UTPCPA claim as it is currently pled. Plaintiff's UTPCPA claim in the second amended complaint is based on allegations that LuLaRoe's tax representations on the invoices she received were false because the "tax" was really an improper surcharge. It is sufficient that plaintiff has alleged that she saw the "tax" charge, thought the "tax" charge was legitimate, and paid the "tax" charge, which was not a "tax" at all. Contrary to defendants' contention, "[t]he gist of plaintiff's UTPCPA claim is [not] that LLR misrepresented, via the 2016 Tax Sales Policy, that it was authorized to collect sales taxes on the transactions at issue."[34] The gist of plaintiff's UTPCPA claim in the second amended complaint is that LuLaRoe misrepresented on the invoices that she received that there was a sales tax owed, even though no sales tax was actually owed. Her UTPCPA claim, as

---

[33]Id. at 12, ¶ 78.

[34]Defendants' Reply [etc.] at 8, Docket No. 78.

-15-

currently pled, focuses on misrepresentations made on the invoices, rather than any misrepresentations made in the 2016 Sales Tax Policy itself.

As for the second allegedly fraudulent act, defendants contend that plaintiff has not alleged which retailers she purchased clothing from which lead to her being charged the allegedly non-existent tax, when she made such purchases, or what she was told by any retailer or LuLaRoe about the lawfulness of this tax. Without such facts, defendants argue that plaintiff has failed to meet the particularity requirement as to the second allegedly fraudulent act.

Rule 9(b) only requires that "allegations of fraud . . . be 'specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong.'" Bly-Magee v. Calif., 236 F.3d 1014, 1019 (9th Cir. 2001) (quoting Neubronner v. Milken, 6 F.3d 666, 672 (9th Cir. 1993)). Plaintiff's allegations in the second amended complaint are specific enough to put defendants on notice as to the misconduct which she alleges violates the UTPCPA. Plaintiff has sufficiently pled "the who, what, when, where, and how of the misconduct charged." Vess, 317 F.3d at 1106 (citation omitted).

Plaintiff has alleged the "where and when" because she has alleged that between April 2016 and June 2017, she made remote purchases of LuLaRoe clothing from retailers outside of Alaska and had those purchases shipped to her Anchorage home. She has alleged the

-16-

"who and how" because she has alleged that for each purchase, a LuLaRoe invoice was generated through the Audrey system, and she has included an example of one such invoice in her second amended complaint. She has alleged the "what" because she has alleged that for each remote purchase, LuLaRoe represented that it was collecting a "tax" on the purchase and that this representation was false each time it was made because no jurisdiction assessed a tax on the sale. And, she has alleged the "why" because she has alleged that LuLaRoe changed its policies and reprogrammed Audrey because it was overpaying taxes to retailers' jurisdictions and it wanted to save the immediate costs of those overpayments.

Defendants next argue that plaintiff's UTPCPA claim should be dismissed as implausible because she failed to indicate on which specific provision of the UTPCPA she is basing her claims. In her first amended complaint, plaintiff specifically alleged that defendants had violated AS 45.50.471(b)(11) and (12).[35] In her second amended complaint, plaintiff does not reference any specific provision of AS 45.50.471(b). Defendants argue that this is fatal because it means that plaintiff has failed to state an actionable violation of the UTPCPA.

Plaintiff's failure to identify any specific provision of AS 45.50.471(b) in her second amended complaint is not fatal because her UTPCPA claim is based on AS 45.50.471(a), the catchall provision of the UTPCPA. The UTPCPA contains two subsections, subsection .471(a) and subsection .471(b). Borgen, 273 P.3d at 583. A UTPCPA claim can be based

---

[35]First Amended Class Action Complaint at 18-19, ¶ 107, Docket No. 4.

on either subsection. In her second amended complaint, plaintiff has clearly indicated that she is relying on subsection .471(a).[36]

Defendants also argue that plaintiff has not identified what unfair or deceptive act defendants engaged in other than to allege that LuLaRoe charged an unfair sales tax, which defendants contend is not sufficient to state a plausible UTPCPA claim. This argument fails.

Alaska uses "a multi-factored approach" to determine "whether an 'unfair' practice existed." Borgen, 273 P.3d at 590.

> The factors are:
>
> (1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or other- wise—whether, in other words, it is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers.

Id. (citation omitted). "[W]hether an act is 'deceptive' is determined simply by asking whether" the conduct at issue "has the capacity or tendency to deceive." Id. at 591 (citation omitted). It is plausible that charging a "sales tax" when there was no such tax could be considered unfair. It is also plausible that adding a line to invoices stating that a "tax" was being collected, thereby implying that this "tax" was legitimate, when it was not, could be considered deceptive.

---

[36] Second Amended Class Action Complaint at 18, ¶ 112, Docket No. 73.

-18-

Case 3:18-cv-00197-HRH Document 79 Filed 11/12/20 Page 18 of 20

Finally, defendants appear to argue that plaintiff's UTPCPA claim is not plausible "because the collection of sales tax is a ministerial act[,]"[37] which is not actionable under the UTPCPA. See Blass v. Rite Aid of Connecticut, Inc., 16 A.3d 855, 863 (Conn. Super. Ct. 2009) ("[t]he miscollection of taxes, whether negligent or intentional, does not constitute an unfair or deceptive act or practice in the conduct of any trade or commerce" in large part because "[a] retailer gains no personal benefit from the overcollection of taxes"); McGonagle v. Home Depot, U.S.A., Inc., 915 N.E.2d 1083, 1089 (Mass. Ct. App. 2009) (finding that Home Depot's collection of sales tax was not an unfair or deceptive act because "[i]t is undisputed that the company sought and received no profit from the imposition of the sales tax. It transmitted to DOR all tax payments received from the plaintiffs").

Defendants' reliance on Blass and McGonagle is misplaced. These cases involved the collection of sales tax from consumers in jurisdictions that actually had a sales tax. In Blass, the plaintiff alleged that Rite Aid was miscollecting sales tax because it was "charging sales tax on the gross sales prices of customers' purchases before subtracting the full face value of coupons therefrom[.]" Blass, 16 A.3d at 857. McGonagle, 915 N.E.2d at 1086, also involved allegations of overcollection of sales tax on purchases when a consumer used a coupon. In these cases, the plaintiffs were not alleging that no sales tax should have been collected; they were alleging that the amount that was collected was too much. In contrast,

---

[37]Defendants' Motion to Dismiss UTPCPA Claim [etc.] at 8, Docket No. 76.

here, plaintiff is alleging that no sales tax should have been collected because she lives in a jurisdiction that does not have a sales or use tax.

This case is similar to Porsch v. LLR, Inc., 380 F. Supp. 3d 418 (S.D.N.Y. 2019). There, the plaintiffs alleged that "they were charged sales tax based on the tax laws of the jurisdiction in which the [LuLaRoe] Retailer was located, rather than exempted from paying sales tax under the laws of New York." Id. at 422. "New York State exempts clothing sold for less than $ 110 from state sales tax" and "[c]ertain local jurisdictions in New York also exempt clothing under $ 110 from local sales tax." Id. The court rejected the argument that the collection of sales tax was a non-actionable ministerial act, explaining that

> LLR was not performing a ministerial act on behalf of New York when it collected the allegedly improper sales tax. Viewed from the perspective of New York law, LLR simply overcharged its customers -- whether that charge was labeled "sales tax" or something else is immaterial.

Id. at 427. Similarly here, it is plausible that defendants were not performing a ministerial act when they collected sales tax from plaintiff on the purchases she made from remote retailers but rather that defendants was "simply overcharg[ing]" plaintiff. Id.

### Conclusion

Based on the foregoing, defendants' motion to dismiss plaintiff's UTPCPA claim is denied.

DATED at Anchorage, Alaska, this 12th day of November, 2020.

/s/ H. Russel Holland
United States District Judge

-20-

Case 3:18-cv-00197-HRH   Document 79   Filed 11/12/20   Page 20 of 20