IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| KATIE VAN, individually and on behalf of all others similarly situated,<br><br>                         Plaintiff,<br><br>  vs.<br><br>LLR, INC., d/b/a LuLaRoe, and LULAROE, LLC,<br><br>                         Defendants. | No. 3:18-cv-0197-HRH |

O R D E R

Motion to Strike Twentieth Affirmative Defense

Plaintiff Katie Van moves to strike defendants' twentieth affirmative defense.[1] This motion is opposed by defendants LLR, Inc., d/b/a LuLaRoe and LuLaRoe LLC.[2] Oral argument was not requested and is not deemed necessary.

Background

"LuLaRoe is a multilevel-marketing company that sells clothing through fashion retailers located in all fifty states to consumers across the United States."[3] Plaintiff alleges

---

[1]Docket No. 88.

[2]Docket No. 90.

[3]Second Amended Class Action Complaint at 3, ¶ 7, Docket No. 73.

that she "resides in Anchorage, Alaska, which has no sales or use tax."[4] She alleges that she "made purchases from LuLaRoe retailers in other states and had those purchases shipped to her home in Anchorage, Alaska."[5] Plaintiff alleges that she "was charged a 'tax' on purchases that she made from LuLaRoe's remote consultants, but such charge was not a 'tax' and LuLaRoe knew it was not a 'tax'."[6]

Plaintiff commenced this action on September 5, 2018. Plaintiff brings this action on behalf of herself and others similarly situated. In Count I of her second amended complaint, plaintiff asserts an Alaska Unfair Trade Practices and Consumer Protection Act (UTPCPA) claim. Plaintiff alleges that defendants have violated the UTPCPA

> a.   [by] representing on invoices issued to [p]laintiff and class member[s] that they owed a "tax" when that representation was false;
> b.   by programming their POS system to add a non-existent "tax" to [p]laintiff and the class members' purchases;
> c.   by programming their online point-of-sale payment system to misrepresent there was a "tax" on class members' purchases and thereby surcharging [p]laintiff and members of the class;
> d.   by failing to disclose to [p]laintiff and the class members that they were overcharging them because of Audrey's system failures;
> e.   by issuing invoices that included a non-existent "tax' that created a likelihood of confusion;
> f.   by issuing invoices that included a non-existent "tax" that caused [p]laintiff and the class members damages; and/or

---

[4] Id. at 10, ¶ 60.

[5] Id. at 10, ¶ 61.

[6] Id. at 10, ¶ 62.

> g. by issuing invoices that included a non-existent "tax" that had a likelihood to deceive [the] customer and to be interpreted in a misleading way.[7]

In Count II of her second amended complaint, plaintiff asserts a common law conversion claim.

In their answer to plaintiff's second amended complaint, defendants assert a number of affirmative defenses. At issue in the instant motion is defendants' twentieth affirmative defense, which asserts that

> [p]laintiff's and the putative class' claims are barred, in whole or in part, under the voluntary payment doctrine because they voluntarily paid the sales taxes with full knowledge, or means of knowledge of the facts, of the sales taxes they paid.[8]

Pursuant to Rule 12(f), Federal Rules of Civil Procedure, plaintiff now moves to strike defendants' voluntary payment doctrine ("VPD") affirmative defense.

Discussion

"A court may strike an affirmative defense under Federal Rule of Procedure 12(f) if it presents an 'insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.'" Cyber Acoustics, LLC v. Belkin Int'l Inc., 988 F. Supp. 2d 1236, 1239 (D. Or. 2013) (quoting Fed. R. Civ. P. 12(f)). "The purpose of a Rule 12(f) motion is to avoid spending time and money litigating spurious issues." Id. "As a policy matter, when a

---

[7]Id. at 18-19, ¶ 113.

[8]Defendants LLR, Inc. d/b/a LuLaRoe and LuLaRoe, LLC's Answer and Affirmative Defenses to Plaintiff Katie Van's Second Amended Class Action Complaint at 32, ¶ 153, Docket No. 81.

-3-

defense is insufficient as a matter of law, it should be stricken to eliminate the delay and unnecessary expense of litigating an invalid claim." Medi-Temp LLC v. CVS Pharmacy, Inc., Case No. CV 05-3241-PCT-JAT (Lead), CV 05-3242-PCT-JAT (Cons), 2006 WL 8440902, at *6 (D. Ariz. July 21, 2006). However, "[c]ourts often regard motions to strike with disfavor, since such motions are frequently used as stalling tactics and since pleadings are of limited importance in federal practice." Platte Anchor Bolt, Inc. v. IHI, Inc., 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004). "'[A] motion to strike will not be granted if the insufficiency of the defense is not clearly apparent, or if it raises factual issues that should be determined on a hearing on the merits.'" Kubanyi v. Golden Valley Electric Association, Case No. 4:04-cv-0026-RRB, 2007 WL 9697873, at *3 (D. Alaska May 25, 2007) (quoting 5C Wright & Miller, Federal Practice and Procedure, § 1381, at 427-28 (3d ed.)). "Some courts also refuse to grant Rule 12(f) motions unless prejudice would result to the moving party from denial of the motion." Platte Anchor Bolt, 352 F. Supp. 2d at 1057. But, the Ninth Circuit has never held that a showing of prejudice is required and in an unpublished case stated that "Rule 12(f) says nothing about a showing of prejudice. . . ." Atlantic Richfield Co. v. Ramirez, Case No. 98-56372, 1999 WL 273241, at *2 (9th Cir. May 4, 1999). "[W]hen ruling on a motion to strike, the [c]ourt takes the plaintiff's allegations as true and must liberally construe the complaint in the light most favorable to the plaintiff." Stearns v. Select Comfort Retail Corp., 763 F. Supp. 2d 1128, 1140 (N.D. Cal. 2010). "Ultimately, whether to grant a motion to strike under Rule 12(f) lies within the sound

-4-

discretion of the district court." Sirois v. East West Partners, Inc., 285 F. Supp. 3d 1152, 1159 (D. Hawai'i 2018).

Plaintiff argues that defendant's VPD defense should be stricken because Alaska does not recognize the VPD as a defense to her causes of action. "'The voluntary payment doctrine is an affirmative defense that provides that one who makes a payment voluntarily cannot recover it on the ground that he was under no legal obligation to make the payment.'" JPMorgan Chase Bank, N.A. v. SFR Investments Pool 1, LLC, 200 F. Supp. 3d 1141, 1177 (D. Nev. 2016) (quoting Nevada Ass'n Servs., Inc. v. Eighth Jud. Dist. Court, 338 P.3d 1250, 1253 (Nev. 2014)); see also, Russ v. Apollo Group, Inc., Case No. 09-904-VBF(FMOx), 2010 WL 11515297, at *4 (C.D. Cal. March 19, 2010) (quotation marks omitted) ("voluntary payment doctrine [is] an equitable defense which prevents a party from recovering money paid with knowledge of the relevant facts, unless the payment was made under duress or fraud"). "The doctrine has been adopted or acknowledged in some form in every American jurisdiction." Brutus 630, LLC v. Town of Bel Air, 139 A.3d 957, 960 (Md. 2016). "This doctrine exists because of 'the stabilizing legal principle preventing payors from disturbing the status quo by demanding reimbursement subsequently of payments made by them voluntarily with full knowledge of [the] facts.'" Sanders v. Washington Mut. Home Loans, Inc. ex rel. Washington Mut. Bank, Case No. 07–30032, 2007 WL 2766575, at *2 (5th Cir. Sept. 18, 2007) (quoting Whitehall Oil Co. v. Boagni, 229 So.2d 702, 705 (La. 1969)).
-5-

The Alaska Supreme Court has never recognized the VPD as a defense to a conversion claim or a statutory consumer protection claim. "When the highest court of a state has not directly spoken on a matter of state law, a federal court sitting in diversity must generally use its 'own best judgment in predicting how the state's highest court would decide the case.'" Fast Trak Investment Co. v. Sax, 962 F.3d 455, 465 (9th Cir. 2020) (quoting Fiorito Bros., Inc. v. Fruehauf Corp., 747 F.2d 1309, 1314 (9th Cir. 1984)). "In making this prediction, the federal court 'must ascertain from all available data what the state law is and apply it.'" Id. (quoting Estrella v. Brandt, 682 F.2d 814, 817 (9th Cir. 1982)). "'An intermediate state appellate court decision is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.'" Id. (quoting Estrella, 682 F.2d at 817). The federal court may also look to "'decisions from other jurisdictions, statutes, treatises, and restatements [for] guidance'" in predicting how the state's highest court would decide the issue at hand. Eichacker v. Paul Revere Life Ins. Co., 354 F.3d 1142, 1145 (9th Cir. 2004) (quoting S.D. Myers, Inc. v. City and County of San Francisco, 253 F.3d 461, 473 (9th Cir. 2001)).

Plaintiff argues that this court need look no further than State v. Stein, 806 P.2d 346 (Alaska Ct. App. 1991), to predict that the Alaska Supreme Court would reject the VPD as a viable defense to her claims. There, "Alan Stein was convicted in a non-jury trial of commercial fishing in closed waters, in violation of 5 Alaska Administrative Code (AAC)

33.310(c)(5)." Id. at 346. "A fine of $1,000 was imposed and paid." Id. "Two years later, Stein moved to correct his sentence and reduce the fine to $300." Id. The district court denied Stein's motion and Stein appealed. Id. The court of appeals "concluded that Stein's sentence was illegal and that the trial court erred in not correcting it" because "the legislature had limited fines for strict liability violations of fishing regulations to $300." Id. But, the court of appeals declined to determine whether "Stein [was] entitled to any remedy beyond correction of the judgment against him." Id. at 346-47. The court of appeals "express[ed] no opinion as to whether the district court ha[d] jurisdiction to grant restitution because the parties h[ad] not briefed the issue." Id. at 347. "Subsequently, Stein moved for return of $700 of the $1,000 fine he had paid. The district court granted Stein's motion," and the state appealed. Id. The court of appeals affirmed because it was "persuaded that Stein should receive restitution of the fine he paid in excess of $300." Id. The court of appeals explained that

> Stein paid an illegal fine under a valid statute. There is no question that Stein's conviction was valid, and that the court could legally impose a fine. Nevertheless, the fine actually imposed exceeded the amount the legislature had permitted. We recognize that some courts have refused restitution under similar circumstances, in reliance on the rule that a payment voluntarily made pursuant to a mistake of law is not recoverable. See, e.g., Prilliman v. City of Canon City, 146 Colo. 159, 360 P.2d 812 (1961). We are satisfied that this rule should not be adopted in this jurisdiction. In our view, the principles of equity favor Stein and persuade us to affirm the judgment of the district court.

Id. Plaintiff argues that the "rule" that the Stein court made reference to was the VPD and thus the Alaska Court of Appeals clearly rejected the VPD as a defense that would be recognized in Alaska.

However, a closer reading of Stein reveals that the "rule" the court was referring to was not the VPD. The Stein court stated that "[w]e recognize that some courts have refused restitution under similar circumstances, in reliance on the rule that a payment voluntarily made pursuant to a mistake of law is not recoverable" and it cited to Prilliman v. City of Canon City, 360 P.2d 812 (Colo. 1961), as an example. Id. The court in Prilliman was discussing the general rule set out in 70 C.J.S. Payment § 156(c), which is that "[m]oney paid under an unconstitutional or invalid statute or ordinance, without any circumstances of compulsion is paid under a mistake of law, and so cannot be recovered[.]" Id. at 812. This is not the voluntary payment rule, which is described in 70 C.J.S. Payment § 94. Section 94 explains that

> [u]nder what is generally referred to . . . as the 'voluntary payment doctrine,' a person generally cannot . . . recover money he or she has voluntarily paid, with full knowledge of all the relevant facts, and without any fraud, duress, or extortion, even if no obligation to make the payment existed, and even if he or she could not have been legally compelled to make the payment.

Because Stein was not addressing the VPD, it is not "'persuasive data'" for predicting how the Alaska Supreme Court would decide the issue of whether the VPD is a viable defense to plaintiff's claims. Fast Trak Investment Co., 962 F.3d at 465 (quoting Estrella, 682 F.2d at 817). Moreover, Stein was addressing the payment of an incorrect amount of

-8-

money under a constitutional statute. The situation was not that Stein was not obligated to pay a fine, but rather that the amount of the fine he paid was incorrect. Here, in contrast, plaintiff is alleging that she owed no sales tax at all, that defendants' imposition of any amount of sales tax was invalid.

Although Stein provides little to no guidance as to what the Alaska Supreme Court would do if faced with the question of whether the VPD is a viable defense to plaintiff's claims, Principal Mutual Life Insurance Co. v. State, Division of Insurance Department of Commerce and Economic Development, 780 P.2d 1023 (Alaska 1989), does provide some guidance. There, Principal sought a refund of taxes it had paid pursuant to a statute which it alleged was unconstitutional. Id. at 1025. The Alaska Supreme Court agreed that the statute in question was unconstitutional and then turned to the question of whether Principal was entitled to a refund. Id. at 1028. In considering that question, the court observed that "[t]he general rule at common law is that if an illegal tax is voluntarily paid by the taxpayer without compulsion it cannot be recovered back in an action at law." Id. at 1030. Had this common law rule "regarding the voluntary payment of taxes" not been altered by statute, id., the Alaska Supreme Court would have followed it because the court's "task [is] to explicate the common law which we will apply in these situations unless and until the Alaska legislature acts to modify it." Surina v. Buckalew, 629 P.2d 969, 973 (Alaska 1981).

Extending that reasoning to the VPD, which is similar to the common law rule at issue in Principal Mutual Life, the court predicts that the Alaska Supreme Court would hold that

-9-

the VPD applies to plaintiff's common law conversion claim.[9] Both cases involve the voluntary payment of taxes and there is nothing to suggest that the Alaska Supreme Court would not apply the general rules that apply to such payments as long as the rule has not been altered by statute. The court is mindful, as plaintiff points out, that the Alaska Supreme Court has rejected other common law defenses. See, e.g., Leavitt v. Gillaspie, 443 P.2d 61, 68 (Alaska 1968) (rejecting assumption of risk as an affirmative defense to the extent that it "could result in a situation where an accident victim, even though not contributorily at fault, could be barred from recovery because he knew or should have known of a negligently created risk"). But, based on Principal Mutual Life Insurance, the court is persuaded that the Alaska Supreme Court would not reject the VPD as a defense to common law claims such as plaintiff's conversion claim.

Plaintiff's UTPCPA claim is a different matter. The UTPCPA expressly provides that "[a] waiver by a consumer of the provisions of AS 45.50.471 - 45.50.561 is contrary to public policy and is unenforceable and void." AS 45.50.542. Applying the VPD to plaintiff's UTPCPA claim would essentially constitute a waiver of that claim and thus the court predicts

---

[9]Although the parties did not cite to any cases that expressly considered whether the VPD applies to a conversion claim, there are cases that have so held. See, e.g., Cordaro v AdvantageCare Physicians, P.C., 131 N.Y.S.3d 523, 530 (N.Y. Sup Ct. 2020) (conversion claim barred by the voluntary payment doctrine); Independent Glass Ass'n Inc. v. Safelite Group, Inc., Case No. 05–238 ADM/AJB, 2005 WL 2093035, at *10 (D. Minn. Aug. 26, 2005) ("[a]ssuming, arguendo, the conversion claim is appropriately before the Court, it is barred by the voluntary payment doctrine").

-10-

that the Alaska Supreme Court would hold that the VPD is not a viable defense to plaintiff's UTPCPA claim.

Nothing in the statute indicates that the Alaska legislature intended to limit AS 45.50.542 to contractual waivers, as defendants contend.[10] The statute simply states that "[a] waiver by a consumer of the provisions of AS 45.50.471 - 45.50.561 is contrary to public policy and is unenforceable and void." AS 45.50.542. This language clearly indicates that the Alaska legislature's intent was to prevent consumers from waiving their rights under the UTPCPA "by either implication or agreement." Hoehne v. Sherrodd, Inc., 668 P.2d 232, 234 (Mont. 1983). As the court in Huch v. Charter Communications, Inc., 290 S.W.3d 721, 727 (Mo. 2009), explained, "the voluntary payment doctrine is a principle based on waiver and consent" and it "is not always available when its application would be contrary to public policy[.]" The court reasoned that "having declined to recognize waiver by a provision in a written contract when such waiver would nullify the protections" of a consumer protection statute, which was enacted for the benefit of the public, it followed that a "waiver [that] originates from conduct, such as waiver under the voluntary payment doctrine[,]" should not be imposed. Id. (citation omitted). The court observed that "[h]aving enacted paternalistic legislation designed to protect those that could not otherwise protect themselves, the Missouri

---

[10]It may be worth noting that the bill that became the UTPCPA was a governor's bill that was transmitted to the legislature with a letter of intent. The letter of intent stated that a provision had been added to the bill "to prohibit any waiver by a consumer of the provisions of the Act." 1977 House Journal 124 (emphasis added).

-11-

legislature would not want the protections of Chapter 407 to be waived by those deemed in need of protection." Id. (citation omitted). Thus, the court held that "[i]n light of the legislative purpose of the merchandising practices act, the voluntary payment doctrine is not available as a defense to a violation of the act."[11] Id.

The same is true here. The UTPCPA was "designed to meet the increasing need in Alaska for the protection of consumers. . . . The act protects the consumer from deceptive sales and advertising practices[.]" Donahue v. Ledgends, Inc., 331 P.3d 342, 353 (Alaska 2014) (internal citation omitted). Having passed such legislation to protect consumers who might not otherwise be able to protect themselves, the Alaska legislature would not have intended that the protections of the UTPCPA could be waived either by contract or conduct.

Ramsey v. City of Sand Point, 936 P.2d 126 (Alaska 1997), is not to the contrary. Ramsey involved a contractual waiver of a City ordinance, and in discussing whether that waiver was valid, the Alaska Supreme Court observed that the general rule is that "a statute is waivable if it was designed for the protection of the individuals who are parties to the contract, but is not waivable if it was enacted for the protection of the public generally." Id. at 129-31. Even if this general rule only applies to the contractual waiver of statutory rights,

---

[11]Courts in other jurisdictions have similarly found that the VPD does not apply to "violations of statutorily-defined public policy[.]" Pratt v. Smart Corp., 968 S.W.2d 868, 872 (Tenn. Ct. App. 1997); see also, MBS-Certified Public Accountants, LLC v. Wisconsin Bell, Inc., 809 N.W.2d 857, 868 (Wis. 2012); Southstar Energy Services, LLC v. Ellison, 691 S.E.2d 203, 205 (Ga. 2010); MacDonell v PHH Mortg. Corp., 846 N.Y.S.2d 223, 224 (N.Y.A.D. 2 Dept. 2007); Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc., 170 P.3d 10, 24 (Wash. 2007).

-12-

as defendants argue, that does not mean that AS 45.50.452 is limited to contractual waivers. Ramsey was not considering the waiver provision in AS 45.50.452 and thus Ramsey has little, if any, application to the question at hand.

Precluding application of the VPD as a defense to a UTPCPA claim would not, as defendants contend, mean that a defendant would not be able to assert any affirmative defenses to a UTPCPA claim. As defendants point out, the Alaska Supreme Court has held that some affirmative defenses apply to UTPCPA claims. See, e.g., Weimer v. Continental Car & Truck, LLC, 237 P.3d 610, 615 (Alaska 2010) (affirming dismissal of UTPCPA claim on statute of limitations defense); Kenai Chrysler Center, Inc. v. Denison, 167 P.3d 1240, 1250 (Alaska 2007) ("we agree with Kenai Chrysler that its right to raise a mitigation defense on this point could not be denied as a matter of law"). But, application of these defenses to a UTPCPA claim would not totally defeat the public policy behind the statute, whereas application of the VPD to a UTPCPA claim would.

Defendants contend that district courts in the Ninth Circuit as well as courts in other jurisdictions have held that the VPD is a viable defense to a consumer protection claim. See Vaccariello v. XM Satellite Radio, Inc., 295 F.R.D. 62, 74 (S.D.N.Y. 2013); Gawry v. Countrywide Home Loans, Inc., 640 F. Supp. 2d 942, 957 (N.D. Ohio 2009); Newman v. RCN Telecom Services, Inc., 238 F.R.D. 57, 78 (S.D.N.Y. 2006); Webster v. LLR, Inc., Case No. 2:17cv225, 2018 WL 10230741 at *405 (W.D. Pa. 2018); Endres v. Wells Fargo Bank, Case No. C 06–7019 PJH, 2008 WL 344204, at *12 (N.D. Cal. Feb. 6, 2008); Davis v.

-13-

Homecomings Financial, Case No. C05-1466RSL, 2006 WL 2927702, at *5 (W.D. Wash. Oct. 10, 2006).

But, these cases involved class certification motions and the question facing the court in each case was whether a class could be certified, a very different question from the question facing the court here. The question here is whether the VPD is viable defense to plaintiff's UTPCPA claim, not whether such a defense would be fatal to the certification of a class.

Defendants have also cited to McIntosh v. Walgreens Boots Alliance, Inc., 135 N.E.3d 73 (Ill. 2019). There, McIntosh alleged that "Walgreens violated the Consumer Fraud and Deceptive Business Practices Act by . . . unlawfully collecting a municipal tax imposed by the City of Chicago (City) on purchases of bottled water that were exempt from taxation under the City ordinance." Id. at 76-77. The court rejected McIntosh's argument that the VPD did not apply to her claim in part because "McIntosh's assertion that Consumer Fraud Act claims are exempt from the voluntary payment doctrine is in direct conflict with well-established principles that govern a legislative abrogation of a common-law rule." Id. at 82. The court explained that "[n]othing in the language of the Consumer Fraud Act reflects a legislative intent to alter the voluntary payment doctrine or its applicability to claims brought under the statute. Therefore, it cannot be said that the Consumer Fraud Act abrogates the voluntary payment doctrine." Id. at 82-83.

But, here the language of the UTPCPA, specifically the language in AS 45.50.452, does reflect a legislative intent to alter the applicability of the VPD to claims brought under the statute. In light of AS 45.50.452, the court predicts that the Alaska Supreme Court would hold that the VPD, which is a common law defense that, if applied, would essentially amount to a waiver of the protections of the UTPCPA, would be against public policy and thus would not be a viable defense to plaintiff's UTPCPA claim.

Finally, if the court were inclined to hold that the VPD applied to either or both of her claims, plaintiff argues that doing so would be inconsistent with Alaska law holding that equitable defenses are inapplicable to actions at law.

> In general, the availability of an equitable defense such as laches depends on the nature of the action in which it is raised. "When a party is seeking to enforce a legal right, as opposed to invoking the discretionary equitable relief of the courts, the applicable statute of limitations should serve as the sole line of demarcation for the assertion of the right," and equitable defenses are not available.

State, Dep't of Revenue, Child Support Enforcement Div. ex rel. Valdez v. Valdez, 941 P.2d 144, 152 (Alaska 1997) (quoting Kodiak Elec. Ass'n v. DeLaval Turbine, Inc., 694 P.2d 150, 157 (Alaska 1984)); see also, Gudenau v. Bang, 781 P.2d 1357, 1363 (Alaska 1989) ("[l]aches is an equitable defense inapplicable to actions at law").

This argument fails. As defendants point out, under Alaska law, "estoppel and waiver[,]" which are also equitable defenses "are available even where only legal claims are brought in a litigation." Copper River Seafoods, Inc. v. Chubb Custom Insurance, Co. Case

-15-

No. 3:16-cv-00039-TMB, 2018 WL 6220064, at *2 (D. Alaska Sept. 19, 2018). Similarly, although the VPD is an equitable defense, it can be asserted in an action at law.

## Conclusion

Plaintiff's motion to strike[12] is granted in part and denied in part. The motion is granted as to plaintiff's UTPCPA claim. Defendants' twentieth affirmative defense, the VPD defense, is stricken as it applies to plaintiff's UTPCPA claim. The motion is otherwise denied.

DATED at Anchorage, Alaska, this 3rd day of March, 2021.

/s/ H. Russel Holland
United States District Judge

---

[12]Docket No. 88.