WO             IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA


KATIE VAN, individually and on behalf of        )
all others similarly situated,                          )
                                                                   )
                                        Plaintiff,        )
                                                                   )
        vs.                                                        )
                                                                   )
LLR, INC., d/b/a LuLaRoe, and LULAROE,    )
LLC,                                                             )        No. 3:18-cv-0197-HRH
                                                                   )
                                        Defendants.     )
_____ )

O R D E R

Motion for Class Certification

        Plaintiff Katie Van moves for class certification[1] as to her Count I,[2] a claim based

upon the Alaska Unfair Trade Practices and Consumer Protection Act (UTPCPA).  The

motion is opposed by defendants LLR, Inc. and LuLaRoe, LLC (referred to collectively as

"LLR" herein).[3]  Plaintiff has replied.[4]  Oral argument was requested and has been heard.

---

[1]Docket No. 96.

[2]Second Amended Class Action Complaint at 18-20, ¶¶ 110-121, Docket No. 73.

[3]Docket No. 107.  In connection with its opposition, LLR requests that the court take judicial notice of eleven, separately identified documents pursuant to Rule 201, Federal Rules of Evidence.  The documents in question are all court filings, of which the court can take judicial notice.  Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006).  To the extent that the court has relied on any of these exhibits, LLR's request for judicial notice is granted.  LLR's request for judicial notice is otherwise denied.

[4]Docket No. 113.

ORDER – Motion for Class Certification                                                        - 1 -

<u>Section I – Background Facts and Proceedings</u>

A. <u>LLR's Business</u>

LLR, which was started in May 2013, "is a multilevel-marketing company that sells clothing through fashion retailers located in all fifty states to consumers across the United States."[5] LLR's business model is to sell its products at a wholesale cost to independent fashion retailers or consultants, who in turn sell the products at a retail price to consumers.[6] Retailers are the point of contact for the end consumers of LLR's products.[7] Retailers "manag[e] all aspects of their independently-owned businesses, including inventory control, advertising, pricing, and delivery; and they ultimately determine how, when, and where their inventory will be sold."[8] Originally, retailers "sold their merchandise almost exclusively through in-home parties. For these purchases, merchandise [was] delivered to the customer at the site of the in-home party, which is typically the home of the [r]etailer or a friend or family member who lives nearby."[9] "In more recent years, however, [r]etailers have also sold merchandise through online pop-up boutiques and social media controlled solely by them."[10] "For these purchases, the merchandise is typically shipped to the address of the customer or

---

[5]Second Amended Class Action Complaint at 3, ¶ 7, Docket No. 73.

[6]Videotaped Deposition of LuLaRoe, by and through its Designated Representative, Mark Stidham at 35:20-36:2, Exhibit 2, Plaintiff's Motion for Class Certification, Docket No. 96.

[7]<u>Id.</u> at 36:16-19.

[8]Declaration of Mark Stidham [etc.] at 3, ¶ 5, Exhibit A, Appendix of Exhibits [etc.], Docket No. 108.

[9]<u>Id.</u> at 4, ¶ 7.

[10]<u>Id.</u>

Case 3:18-cv-00197-HRH   Document 127   Filed 09/16/21   Page 2 of 31

such other address as the customer might request and provide."[11]  In addition, LLR, in an effort to build hype around its products, would issue prints of its clothing in limited quantities, which meant that not all retailers had the same sizes, styles, and prints available.[12] This encouraged consumers to purchase clothing from retailers in other taxing jurisdictions.

## B.  LLR's Sales Tax Practices

Although retailers manage their own independently-owned businesses, at some point, LLR decided to take on the task of collecting sales tax for its retailers.  To that end, "LLR engaged the services of a Utah-based software developer to create a customized 'point-of-sale' system ('Audrey') that would be compatible with sales tax automation software so that taxes could be assessed, as appropriate, based on either the location of the [r]etailer or the location to which the [r]etailer shipped the merchandise."[13]  "Audrey was introduced to retailers on April 8, 2015."[14]  LLR informed retailers that it "would take over the responsibility for remitting and reporting sales taxes from that point forward[,]" although retailers retained the option to "opt-out and continue to be responsible for remitting and reporting sales taxes" themselves.[15]

After retailers began using Audrey, LLR discovered that "Audrey was not programmed to allow sales tax to be assessed based on the location where the [r]etailer

---

[11]Id. at 4-5, ¶ 7.

[12]Video Deposition of JT Eskelsen at 84:4-25, Exhibit 9, Plaintiff's Motion for Class Certification, Docket No. 96.

[13]Stidham Declaration at 5-6, ¶ 9, Exhibit A, Appendix of Exhibits [etc.], Docket No. 108.

[14]Id. at 6, ¶ 9.

[15]Declaration of Jamie Ellis [etc.] at 3, ¶ 3, Exhibit B,  Appendix of Exhibits [etc.], Docket No. 108.

shipped the merchandise."[16]  Rather, "the only location that Audrey was capable of identifying for either a wholesale or retail transaction was the home or business addresses of [r]etailers based on their individual profiles."[17]  "LLR solved this problem by including a toggle-switch that allowed [r]etailers to 'turn off' the automatic tax charges on any purchase and charge a different amount, including '0%.'  By using this feature, [r]etailers could override sales taxes for any sales made to a customer in a jurisdiction that did not charge sales tax on clothing purchases."[18]

In early 2016, LLR discovered that some retailers were using "the toggle switch to override the collection of sales taxes on taxable transactions" and also that some retailers "were not using the toggle switch to override sales taxes on transactions that were not taxable. . . ."[19]  As a result of the later, consumers in jurisdictions that had no sales tax (or no sales tax on clothing) were being billed for sales tax on their purchases, based upon the taxes imposed by the retailer's location.

In April 2016, in order to address the foregoing problems, LLR announced its new sales tax policy to its retailers.  LLR advised that it was working on a new point-of-sale (POS) system that would allow retailers to "[c]ompute and collect sales tax based on the physical address where the sale takes place (the point of sale) or where the products are

---

[16]Stidham Declaration at 6, ¶ 11, Exhibit A, Appendix of Exhibits [etc.], Docket No. 108.

[17]Id.

[18]Id. at 6-7, ¶ 12.

[19]Ellis Declaration at 3-4, ¶¶ 5-6, Exhibit B, Appendix of Exhibits [etc.], Docket No. 108.

ORDER – Motion for Class Certification                                    - 4 -

shipped to a customer[.]"[20]  In the interim, retailers were to "[c]ompute and collect tax based on the home/business address of the" retailer.[21]  LLR thus altered Audrey so that retailers could not use the toggle switch to turn off the sales tax feature when making sales to consumers who lived in jurisdictions that had no sales tax.  Retailers were asked "to leave the sales tax box checked in Audrey" and told that it was LLR's "intent to develop the technology that w[ould] assess tax based on the zip code where the product is being purchased and received" but "[u]ntil then," retailers were asked to "please follow what we [LLR] have indicated."[22]  LLR's new POS system, Bless, was not implemented until May 2017, at which time LLR disabled Audrey.

Between April 2016 and May 2017, some consumers questioned or complained to retailers about LLR's sales tax policies.  Some retailers addressed these complaints and concerns by not using Audrey and instead used "payment platforms, such as Square, PayPal, or Mercari to avoid charging sales taxes to customers living in non-taxing jurisdictions."[23]  Others "provide[d] a discount to fully or partially offset the amount of the sales tax that Audrey would automatically apply to the sale."[24]  And, some retailers "provided discounts

---

[20]Sales Tax Update Memo, Exhibit 10 at 2,  Plaintiff's Motion for Class Certification, Docket No. 96.

[21]Id.

[22]Exhibit 8 at 2-3, Plaintiff's Motion for Class Certification, Docket No. 96.

[23]Ellis Declaration at 6, ¶ 9, Exhibit B, Appendix of Exhibits [etc.], Docket No. 108.

[24]Id. at 5, ¶ 9.

in other forms, such 'LuLaRoe Bucks,' which could be used for future purchases, free shipping, or credits on future purchases."[25]

During this same time frame, "LLR began receiving requests for sales tax refunds through its dedicated sales tax email account, salestax@lularoe.com."[26] "In most circumstances, LLR thanked the customer for his or her inquiry, informed the customer that it had investigated or would investigate the request for a sales tax refund, and informed the customer that it would issue a refund if one was owed."[27]

C. The Webster Case

In February 2017, a law suit (the Webster case) was filed in the Western District of Pennsylvania, "alleging claims on behalf of class members in eleven states with no sales tax on the clothing that LuLaRoe sells, but where those customers were surcharged in the guise of a 'tax'. . . ."[28] The plaintiffs in the Webster case were represented by the same counsel who are representing plaintiff in this case. Although plaintiff was not a named plaintiff in the Webster case,[29] there was an Alaska named plaintiff. In March 2017, the plaintiffs in Webster filed an emergency motion "for entry of an Order that enjoins Defendant from communicating with Plaintiff and putative class members regarding this litigation and/or the overcharges that Defendant admits to having improperly charged them in the guise of sales

---

[25]Id. at 6, ¶ 9.

[26]Id. at 7, ¶ 12.

[27]Id.

[28]Second Amended Class Action Complaint at 13, ¶ 83, Docket No. 73.

[29]In November 2017, plaintiff moved to be substituted as the representative of the Alaska class in the Webster case, a motion the court denied as moot after it denied the motion for class certification. Attorney Declaration of Kelly K. Iverson at 7, ¶ 16, Docket No. 36.

taxes."[30]  LLR contends that the intent of this motion was to prevent it from going forward with its refund program, which is discussed below.  The court summarily denied the "emergency motion" more than six months later, on November 6, 2017.[31]  On August 20, 2018, class certification was denied in the Webster case because the "[p]laintiffs [were] unable to establish Rule 23's requirements relating to commonality, the adequacy of class representation, predominance and superiority."[32]  The court's conclusion was primarily based on the fact that the laws of eleven different states would apply to the Webster plaintiffs' claims.  On September 19, 2018, the Webster case was dismissed for lack of jurisdiction.[33]

### D.  LLR's Refund Program

Plaintiff alleges that after the Webster case was filed, LLR "engaged in a confusing, ad hoc, refund scheme in a failed effort to escape responsibility for its bad acts."[34]  LLR, on the other hand, contends that it "recognized in or about June 2016 that a comprehensive sales tax refund program was needed[,]" in part due to "unexpected problems in resolving Audrey's limitations [which] caused delays in fully implementing the new sales tax policy."[35]  LLR contends that in June 2016, "with the assistance of outside vendors," it began the task

---

[30]Plaintiffs' Emergency Motion [etc.], Exhibit 3 at 46, Request for Judicial Notice [etc.], Docket No. 109.

[31]Order of the Court, Exhibit 4 at 50, Request for Judicial Notice [etc.], Docket No. 109.

[32]Memorandum Opinion, Exhibit 1 at 19, Defendants' Request for Judicial Notice [etc.], Docket No. 26.

[33]Order of Court, Exhibit 4, Defendants' Request for Judicial Notice [etc.], Docket No. 26.

[34]Second Amended Class Action Complaint at 14, ¶ 90, Docket No. 73.

[35]Ellis Declaration at 8, ¶ 16, Exhibit B, Appendix of Exhibits [etc.], Docket No. 108.

of "extrapolat[ing], compil[ing], and analyz[ing] the massive amount of data from Audrey to identify the transactions on which LLR might have over collected sales tax."[36] By March 2017, "the data was finally usable for purposes of issuing automatic sales tax refunds without the need for a specific request from a customer."[37] "By June 12, 2017, LLR had issued sales tax refunds on all transactions that it was able to identify between April 1, 2015, and May 31, 2017, for the 12 states that do not charge sales taxes on clothing."[38] In November and December 2017, LLR identified additional transactions "in which sales tax may have been over collected in states that do not collect sales taxes on clothing[,]" and by December 2017, refunds on these transactions had been issued.[39] "To date, LLR has issued sales tax refunds totaling more than $8.4 million to consumers with ship-to addresses in . . . eleven jurisdictions . . . who may have been overcharged on a transaction made through Audrey or by a [r]etailer who included the wrong sales tax amount using the toggle switch override."[40]

E.  Plaintiff's and the Proposed Class Members' LLR Experiences

Plaintiff testified that, for a time, she was "pretty obsessed with LuLaRoe and their . . . products" and that she purchased more than $10,000 of LLR products from the spring of 2016 through the fall of 2017.[41] "Plaintiff made 226 purchases, 164 of which included sales

---

[36]Id. at 9, ¶ 18.

[37]Id. at 10, ¶ 18.

[38]Id. at 11, ¶ 25.

[39]Id. at 12, ¶ 26.

[40]Id. at 12, ¶ 27.

[41]Video Deposition via Videoconference of Katie Helen Van at 76:2-77:18, Exhibit I, Appendix of Exhibits [etc.], Docket No. 108.

ORDER – Motion for Class Certification                                              - 8 -

taxes totaling $531.25."[42]  Plaintiff has "received a full refund of any sales taxes she paid on her LLR purchases."[43]

"Based on" LLR's "internal sales and refund data, the putative class" members made "72,373 separate purchase transactions, which resulted in the payment of sales tax in the amount of $255,263.72[.]"[44]  LLR products were shipped to 10,369 unique addresses in Alaska.[45]  "4,295 putative class members, more than 40% of the putative class, only made one purchase."[46]  "Based on LLR's internal sales and refund data, the putative class had approximately 13,680 transactions where a discount was provided."[47]  LLR contends that all over-collected sales taxes have been refunded to all the proposed class members.

## F.  Plaintiff's Lawsuit

Plaintiff commenced this action on September 5, 2018, which was after LLR had completed its refund program.  Plaintiff filed an amended complaint on September 13, 2018,[48] and on October 26, 2018, LLR moved to dismiss the amended complaint.[49]  The court granted LLR's motion to dismiss, holding that plaintiff's alleged loss of interest of $3.67 was "too little to support Article III standing as to either of plaintiff's UTPCPA or conversion

---

[42]Declaration of Randolph T. Moore [etc.] at 6, ¶ 14, Exhibit C, Appendix of Exhibits [etc.], Docket No. 108.

[43]Id. at 7, ¶ 14.

[44]Ellis Declaration at 13, ¶ 28, Exhibit B, Appendix of Exhibits [etc.], Docket No. 108.

[45]Exhibit 17 at 12, Plaintiff's Motion for Class Certification, Docket No. 96.

[46]Ellis Declaration at 13, ¶ 29, Exhibit B, Appendix of Exhibits [etc.], Docket No. 108.

[47]Id. at 7, ¶ 11.

[48]Docket No. 4.

[49]Docket No. 28.

Case 3:18-cv-00197-HRH   Document 127   Filed 09/16/21   Page 9 of 31

claims."[50]  LLR appealed, and on appeal, the Ninth Circuit Court of Appeals held "that the temporary loss of use of one's money constitutes an injury in fact for purposes of Article III." Van v. LLR, Inc., 962 F.3d 1160, 1164 (9th Cir. 2020).  Thus, the appeals court found that plaintiff had standing because she had suffered the loss of use of her money for the period between her payment of invoices including a sales tax item and the time the amount of the tax paid was reimbursed to her.

The case was then remanded to this court and in due course, plaintiff filed a second amended class action complaint.[51]  In Count I of the second amended complaint, plaintiff asserts a  UTPCPA claim and in Count II, she asserts a conversion claim.  In her second amended complaint, plaintiff seeks to certify the following class:

> All persons who were assessed tax on purchases of LuLaRoe products and whose purchases were delivered into a location in Alaska that does not assess a sales or use tax on the clothing that LuLaRoe sells.[52]

However, in her motion for class certification, plaintiff seeks to certify the following class to pursue UTPCPA claims only:

> All persons who paid "tax" on a purchase of LuLaRoe products and whose purchase was delivered into a location in Alaska that does not assess sales or use tax on the clothing that LuLaRoe sells.
>
> Excluded from the class are Defendants, their past and present officers, employees, agents or affiliates; counsel who

---

[50]Order re Motion to Dismiss at 15, Docket No. 52.

[51]Docket No. 73.

[52]Id. at 16, ¶ 101.

ORDER – Motion for Class Certification                                    - 10 -

> have entered an appearance in this action; and any judge who presides over this action.[53]

The court deems the instant motion to embody a request that plaintiff's second amended class action complaint be amended to reflect the second above class definition – that is, "[a]ll persons who paid 'tax'. . . ."[54] This request is granted. The court will consider whether the proposed class, as framed by plaintiff in the instant motion, should be certified.

## Section II – Law

### A. Class Actions

"A plaintiff pursuing class certification must satisfy each prerequisite of Rule 23(a) and establish an appropriate ground for maintaining the class action under Rule 23(b)." Walker v. Life Ins. Co. of the Southwest, 953 F.3d 624, 630 (9th Cir. 2020). "As the party seeking class certification, [plaintiff] bears the burden of demonstrating that she has met each of the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b)." Zinser v. Accufix Research Institute, Inc., 253 F.3d 1180, 1186 (9th Cir. 2001). "[T]he four requirements of Rule 23(a) [are]: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation." Senne v. Kansas City Royals Baseball Corp., 934 F.3d 918, 927 (9th Cir. 2019). "'Class certification is proper only if the trial court has concluded, after a rigorous analysis, that Rule 23(a) has been satisfied.'" Id. (quoting Parsons v. Ryan, 754 F.3d 657, 674 (9th Cir. 2014)). If the trial court concludes that Rule 23(a) has been satisfied, then it must determine whether the proposed class also "meet[s] the requirements of one or more of the three different types of classes set forth in Rule 23(b)." Id. (citation omitted).

---

[53]Plaintiff's Brief in Support of Motion for Class Certification at 8, Docket No. 97.

[54]Id.

Here, plaintiff seeks to certify a class pursuant to Rule 23(b)(3). "A class may be certified under Rule 23(b)(3) only if the district court 'finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'" Id. (quoting Fed. R. Civ. P. 23(b)(3)).

### B. UTPCPA

The UTPCPA was "designed to meet the increasing need in Alaska for the protection of consumers as well as honest businessmen from the depredations of those persons employing unfair or deceptive trade practices. The act protects the consumer from deceptive sales and advertising practices, and it protects honest businesses from their unethical competitors." Donahue v. Ledgends, Inc., 331 P.3d 342, 353 (Alaska 2014) (citation omitted). "The keystone of Alaska's UTPCPA "is § 471(a) which states that 'unfair or deceptive acts or practices in the conduct of trade or commerce are declared to be unlawful[.]'" State v. O'Neill Investigations, Inc., 609 P.2d 520, 523 (Alaska 1980) (emphasis omitted) (quoting 45.50.471(a)). "An act or practice is deceptive or unfair if it has the capacity or tendency to deceive and . . . neither actual injury nor intent to deceive is required." ASRC Energy Services Power and Communications, LLC v. Golden Valley Elec. Ass'n, Inc., 267 P.3d 1151, 1159 (Alaska 2011) (citation omitted). "Two elements must be proved to establish a prima facie case of unfair or deceptive acts or practices under the Alaska Act: (1) that the defendant is engaged in trade or commerce; and (2) that in the conduct of trade or commerce, an unfair act or practice has occurred." O'Neill Investigations, 609 P.2d at 534. "A person who suffers an ascertainable loss of money or property as a result of another person's act or practice declared unlawful by AS 45.50.471 may bring a

Case 3:18-cv-00197-HRH   Document 127   Filed 09/16/21   Page 12 of 31

civil action to recover for each unlawful act or practice three times the actual damages or $500, whichever is greater." AS 45.50.531. The treble damages provision in AS 45.50.531 does have "a punitive role." <u>Kenai Chrysler Center, Inc. v. Denison</u>, 167 P.3d 1240, 1260 (Alaska 2007). But, "[t]he legislative history of [this] provision establishes that treble damages were adopted not just to deter fraud, but also to encourage injured parties to file suits under the [UTPCPA] and to ensure that they would be adequately compensated for their efforts." <u>Id.</u>

Section III – Rule 23(a) Analysis

A. Numerosity

A proposed class must be "so numerous that joinder of all members is impracticable[.]" Fed. R. Civ. P. 23(a)(1). "There is no magic number required to satisfy numerosity; instead, courts consider the facts of each specific case." <u>Crosby v. Calif. Physicians' Srvc.</u>, 498 F. Supp. 3d 1218, 1229 (C.D. Cal. 2020).

Discovery undertaken in this case has revealed that a line item for a tax charge was included on billings for 72,373 separate transactions initiated by LLR customers residing in Alaska jurisdictions which do not impose a sales tax. Those transactions involved the delivery of 10,396 orders to Alaska addresses within jurisdictions that do not impose a sales tax. The court infers that there are approximately 10,369 potential class members, many of whom were involved in only one or a very few transactions. For many of the proposed class members, initiating a litigation would be hugely uneconomic, given that they only paid a few dollars in sales taxes, which means that their potential loss of the use of their money between the time of their purchases and the time LLR refunded those taxes was relatively slight. It

would be totally impractical to join all of the potential class members in a single proceeding. Thus, the Rule 23(a)(1) numerosity requirement is met.

### B. Commonality

To meet the commonality factor, plaintiff "must demonstrate that [she] and the proposed class members have suffered the same injury and have claims that depend on a common contention capable of class-wide resolution." Willis v. City of Seattle, 943 F.3d 882, 885 (9th Cir. 2019). "Capable of class-wide resolution 'means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" Id. (quoting Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011)). "The commonality element may be fulfilled if the court can determine 'in one stroke' whether a single policy or practice which the proposed class members are all subject to 'expose them to a substantial risk of harm.'" Id. (quoting Parsons, 754 F.3d at 678).

Here, the court can determine "'in one stroke'" whether a single practice which the proposed class members were "all subject[ed] to 'expos[ed] them to a substantial risk of harm.'" Id. (quoting Parsons, 754 F.3d at 678). Plaintiff and the proposed class members are all customers of LLR retailers who lived in jurisdictions which do not impose a sales tax and who were billed for a sales tax based on LLR's POS system, Audrey. Thus, the Rule 23(a)(2) commonality requirement is met.

### C. Typicality

"The test for typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." Sandoval v. County of Sonoma, 912 F.3d 509, 518 (9th Cir. 2018) (citation omitted).

ORDER – Motion for Class Certification - 14 -

Records of plaintiff's transactions with LLR retailers and proposed class members transactions with LLR retailers reflect that plaintiff's claims are similar if not identical to the proposed class members' claims. The conduct on which plaintiff's and the proposed class members' claims are based is that they were billed for and paid non-existent taxes. Thus, the Rule 23(a)(3) typicality requirement is met.

### D. Adequacy of Representation

The adequacy of representation requirement "'serves to uncover conflicts of interest between named parties and the class they seek to represent' as well as the 'competency and conflicts of class counsel.'" In re Hyundai and Kia Fuel Economy Litig., 926 F.3d 539, 566 (9th Cir. 2019) (quoting Amchem Products, Inc. v. Windsor, 521 U.S. 591, 625 (1997)). "To determine legal adequacy," the court "resolve[s] two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" Id. (quoting Hanlon v. Chrysler Corporation, 150 F.3d 1011, 1020 (9th Cir. 1998)).

LLR has not suggested, and the court is aware of no information suggesting, a possible conflict of interest between plaintiff and counsel on the one hand, and proposed class members on the other hand. Plaintiff and her counsel have heretofore vigorously pursued this litigation through the motion to dismiss proceedings and an appeal by which they obtained the reversal of this court's dismissal order. In addition, counsel who represent plaintiff have extensive class action experience.[55]

---

[55]Declaration of Kelly K. Iverson in Support of Motion for Class Certification at 2, ¶ 3 and Exhibit 2 thereto, Exhibit 19; Declaration of Goriune Dudukgian in Support of Motion for Class Certification at 2-4, ¶ 5, Exhibit 20; Plaintiff's Motion for Class Certification, Docket No 96.

Case 3:18-cv-00197-HRH   Document 127   Filed 09/16/21   Page 15 of 31

LLR does, however, suggest that plaintiff and her counsel will not fairly and adequately represent the class because of their involvement in the Webster case. As set out above, plaintiff is represented by the same counsel who represented the plaintiffs in Webster, plaintiff tried to become a named plaintiff in the Webster case,[56] and the court denied the Webster plaintiffs' motion to certify a class. Thus, LLR accuses plaintiff and her counsel of once again seeking to certifying a class where the proposed class members have received a full refund of any sales taxes that they paid. LLR implies that this shows that plaintiff and her counsel are "only looking out for themselves and not the best interests of the putative class."[57] LLR insists that "[a] representative who proposes that high transaction costs (notice and attorneys' fees) be incurred at the class members' expense to obtain a refund that already is on offer is not adequately protecting the class members' interests." In re Aqua Dots Products Liability Litig., 654 F.3d 748, 752 (7th Cir. 2011).

This case is not the Webster case and what went on there is irrelevant to the Rule 23 analysis in this case. As for LLR's reliance on In re Aqua Dots in support of its argument that plaintiff is not an adequate representative, the court previously found such reliance

> misplaced because a refund of the sales tax [the putative class members] were charged is not the only relief plaintiff and putative class members would be entitled to if they were to prevail on their UTPCPA claims. Plaintiff and the putative class members could be entitled to statutory damages of $500 per transaction. Because plaintiff and the putative class members are seeking statutory damages, which could be substantial, plaintiff is not proposing that high transaction costs be incurred

---

[56]See footnote 29.

[57]Memorandum in Support of Defendants LLR, Inc. and LuLaRoe LLC's Opposition to Plaintiff's Motion for Class Certification at 56, Docket No. 107.

> in order for class members to recover something [LLR] may
> have already provided.[58]

The court declines LLR's invitation to reconsider its position on this issue. The court is persuaded that plaintiff and her counsel are adequately protecting the interests of the proposed class members. The Rule 23(a)(4) adequacy of representation requirement has been met here.

Section IV – Rule 23(b)(3) Analysis

A. Predominance

"'The predominance inquiry focuses on the relationship between the common and individual issues and tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" Senne, 934 F.3d at 927 (quoting Vinole v. Countrywide Home Loans, Inc., 571 F.3d 935, 944 (9th Cir. 2009)). "In determining whether the predominance requirement is met, courts have a 'duty to take a close look at whether common questions predominate over individual ones' to ensure that individual questions do not 'overwhelm questions common to the class.'" Id. (quoting Comcast Corp. v. Behrend, 569 U.S. 27, 34 (2013)).

The issues of substance raised by Count I of plaintiff's second amended complaint are:

○ Did LLR commit an unfair trade practice?

○ Did LLR's conduct take place in commerce?

○ Did plaintiff and the proposed class members suffer a loss of money?

○ How many transactions were the subject of LLR's conduct?

---

[58]Order re Motion to Dismiss; Motion to Strike at 16, Docket No. 72.

Case 3:18-cv-00197-HRH   Document 127   Filed 09/16/21   Page 17 of 31

As explained in more detail below, the court finds and concludes that the foregoing common issues of fact and law do not require individual proof, but rather, are subject to proof by common evidence as to LLR's operation of its Audrey POS system.

Through discovery, plaintiff has developed evidence common to all of the foregoing issues. Plaintiff and all of the proposed class members were the subject of the same POS system (Audrey) which gave rise to plaintiff's Count I. LLR kept detailed records – all 72,000 transactions – between plaintiff and the proposed class members and LLR. Those records disclose the amount of each transaction, the assessment of non-existent "taxes", the amount paid by each customer, and in some instances, whether there was a discount which arguably had the effect of reversing the assessment of a non-existent tax. From the customer account records and from records of LLR's refund to customers of taxes paid, common evidence is available as to the amount of money, use of which the proposed class members were deprived, as well as the time which elapsed between customers' payments to LLR retailers and LLR's refund of "taxes" to individual customers. With the assistance of forensic accountants, and using LLR's records, the gross number of transactions, the gross amount of non-taxes imposed upon customers, and the gross period of time during which customers were deprived of the use of their money can be computed. The same records are available to LLR for purposes of putting forward its defenses with respect to the number of transactions and amount of taxes which were arguably not paid by customers due to discounts which arguably have the effect of cancelling non-existent taxes disclosed by various of LLR retailers' bills to customers. Computation of the gross number of transactions that resulted in customers paying a non-existent tax is an issue of importance because of the $500-per-transaction statutory penalty imposed by the UTPCPA.

LLR continues to question whether or not the proposed class members have suffered a cognizable, concrete injury as a consequence of its use of the Audrey POS system given that the amount of sales taxes paid by many of the proposed class members may have been relatively small.[59] As a consequence of plaintiff's successful appeal, it is clear beyond any question that plaintiff has suffered a cognizable, concrete injury. As for the proposed class members, the Ninth Circuit court's explanation of its ruling as to plaintiff is instructive:

> Van suffered a cognizable and concrete injury: the loss of a significant amount of money (over $500) for a substantial amount of time (months with respect to some purchases, over a year with respect to others). This injury is not too trifling to support standing.

Van, 962 F.3d at 1162. It is significant that the circuit court focused on the amount of money, the use of which LLR's customers were deprived, as opposed to the monetary amount of the remedy appropriate for the loss of use of money.[60] Focusing on the amount of money LLR's customers were deprived of using is entirely appropriate in light of the fact that the alleged unfair trade practice was the imposition of a non-existent sales tax. It was the amount of the sales tax that customers were deprived of. The amounts of money billed by LLR's retailers to their customers in Alaska residing in jurisdictions which do not impose a sales tax was not de minimus.

---

[59]If the total amount of sales taxes refunded ($255,263.72) is divided by the total number of separate purchase transactions (72,373), the average amount of sales tax charged per transaction would be $3.52. Given that 40% of the proposed class only made one purchase, many of the proposed class members paid a relatively small amount of sales tax.

[60]The remedy for the loss of use of money is usually interest. If the amount of sales taxes paid by many of the proposed class members was relatively small, the amount of interest on that loss would be even smaller.

ORDER – Motion for Class Certification                                          - 19 -

LLR also argues that the predominance requirement has not been met here because the proposed class contains a large number of members who suffered no injury because they received a discount in an amount at least equal to the tax item. In other words, LLR argues that the number of uninjured proposed class members is not <u>de minimus</u>. <u>Williams v. Apple, Inc.</u>, --- F.3d ---, 2021 WL 2186223, at *8 (N.D. Cal. 2021). This argument is based on LLR's contention that "[a] discount was provided on approximately 19 percent of the putative class's transactions[.]"[61] But, proposed class members who received a discount are not necessarily uninjured, given that it is not at all clear that all of the discounts were given to offset the sales taxes being billed.[62] LLR retailers gave discounts for a variety of reasons[63] and often did not explain on the invoice the reason for the discount. For example, plaintiff received discounts on twenty invoices, but none of these invoices indicated that the discount was to offset the sales tax being billed.[64] The discounts plaintiff received may have been to offset the sales tax she was being billed, but they may have been for another reason entirely. The same is true for the proposed class members. LLR has offered a sampling of invoices

---

[61]Memorandum in Support of Defendants LLR, Inc. and LuLaRoe LLC's Opposition to Plaintiff's Motion for Class Certification at 48, Docket No. 107.

[62]Plaintiff contends that the billing per se is a violation of the UTPCPA, irrespective of a discount, but plaintiff has chosen to limit the proposed class to those who "paid" a sales tax on LLR products that were delivered to jurisdictions in Alaska that did not impose such a tax. Arguably, if a consumer received a discount that was expressly provided to offset the sales tax being charged, that consumer did not "pay" a sales tax and would not be a class member.

[63]Van Deposition at 111:8-112:14, Exhibit A, Plaintiff's Reply Brief in Support of Motion for Class Certification, Docket No. 113.

[64]Exhibit B, Plaintiff's Reply Brief in Support of Motion for Class Certification, Docket No. 113.

ORDER – Motion for Class Certification                    - 20 -

for Alaska customers who received a discount.[65]  By the court's rough count, this sample contained 83 Alaska invoices, only two of which expressly stated that the discount being provided was to offset the sales tax being billed.  This evidence "merely highlights the possibility that an injurious course of conduct may sometimes fail to cause injury to certain class members.  However, it fails to reveal a flaw that may defeat predominance, such as the existence of large numbers of class members who were never <u>exposed</u> to the challenged conduct to begin with." <u>Ruiz Torres v. Mercer Canyons Inc.</u>, 835 F.3d 1125, 1136 (9th Cir. 2016).  Here, all of the proposed class members were <u>exposed</u> to the challenged conduct, being billed sales tax while living in a jurisdiction that did not impose sales tax on the products LLR sold.  Some of the proposed class members may not have been injured if it can be determined that the discount they received was to offset the sales tax being billed, but the number of proposed class members for whom it can presently be determined received a discount to offset the sales tax being billed is <u>de</u> <u>minimus</u>.  Moreover, the fact that individualized determinations may need to be made as to the nature of the discounts provided does not defeat class certification.  "Rule 23 specifically contemplates the need for such individualized claim determinations after a finding of liability." <u>Briseno v. ConAgra Foods, Inc.</u>, 844 F.3d 1121, 1131 (9th Cir. 2017).

LLR also argues that the question of whether proposed class members actually suffered an ascertainable loss for purposes of the UTPCPA raises individual inquiries which will predominate over common issues.  In order to assert a viable UTPCPA claim, a plaintiff must have suffered "an ascertainable loss of money or property. . . ."  AS 45.50.531.  LLR contends that many of the proposed class members may not have suffered an ascertainable

---

[65]Exhibit F, Appendix of Exhibits [etc.], Docket No. 108.

loss because they knew they lived in a jurisdiction that did not impose such a tax, but they paid the tax anyway.

This is largely a recast of LLR's voluntary payment defense (VPD), a defense the court has previously considered and rejected as to plaintiff's UTPCPA claim. As the court has explained, "[t]he UTPCPA expressly provides that '[a] waiver by a consumer of the provisions of AS 45.50.471 - 45.50.561 is contrary to public policy and is unenforceable and void'" and thus "[a]pplying the VPD to plaintiff's UTPCPA claim would essentially constitute a waiver of that claim. . . ."[66] Moreover, neither intent nor actual deception is necessary to show deception under the UTPCPA. ASRC Energy Services, 267 P.3d at 1163. As a result, whether any of the proposed class members knew that they should not have been paying a sales tax on their LLR purchases but paid it anyway is not an individualized inquiry that will need to be made.

Finally, LLR argues that plaintiff's UTPCPA claim is nothing more than a disguised request for a sales tax refund and that in asserting such a claim, she is attempting to avoid exclusive administrative remedies by which mistakenly-paid taxes can be recovered in the jurisdictions where the tax money was paid. LLR contends that these administrative remedies raise individualized issues that will overwhelm the common issues.

But, plaintiff's UTPCPA claim is not one for a tax mistakenly paid. Plaintiff contends that she was wrongfully billed for a non-existent tax, and it is recompense for that allegedly unfair trade practice that plaintiff seeks. There are no administrative remedies issues in this case.

---

[66]Order re Motion to Strike Twentieth Affirmative Defense at 10-11, Docket No. 94 (quoting AS 45.50.542).

The court finds and concludes that there are common issues of fact and law that will predominate over any individualized inquiries as to plaintiff's UTPCPA claim. Although there may be some "'important matters [that] will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members[,]'" these matters will not overwhelm the issues that are common to the class. <u>Senne</u>, 934 F.3d at 938 (quoting <u>Tyson Foods, Inc. v. Bouaphakeo</u>, 577 U.S. 442, 453 (2017)).

B. Superiority

The superiority prong of Rule 23(b)(3) requires the court to consider whether the "class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

> Generally, the factors relevant to assessing superiority include "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action."

<u>Wolin v. Jaguar Land Rover North Amer., LLC</u>, 617 F.3d 1168, 1175 (9th Cir. 2010) (quoting Fed. R. Civ. P. 23(b)(3)(A–D)). "This list is not exhaustive and other factors may be considered." <u>Id.</u>

(1) <u>Class members' interest in individually controlling litigation</u>. The fact that there is no pending litigation against LLR brought by proposed class members suggests that others may have little interest in initiating this litigation. The fact that LLR has reimbursed its Alaska customers for any sale taxes paid by them increases the unlikelihood of potential class members wishing to litigate on their own. Likewise, the relatively small monetary

Case 3:18-cv-00197-HRH   Document 127   Filed 09/16/21   Page 23 of 31

losses of many of the proposed class members further decreases the likelihood of others being interested in bringing this litigation.

(2) <u>The nature of any litigation already begun</u>. As suggested above, there is no known extant litigation which would duplicate the issues raised in this case. And, as LLR has pointed out, other actions filed by plaintiff's counsel in federal courts in New York and Montana seeking to certify classes of consumers who had been overcharged sales taxes on their LLR purchases have been dismissed. <u>Hill v. LLR, Inc.</u>, Case No. CV-18-120-GF-BMM-KLD, 2020 WL 9770748, at *2 (D. Mont. Nov. 16, 2020); <u>Porsch v. LLR, Inc.</u>, Case No. 18cv9312 (DLC), 2019 WL 3532114, at *4 (S.D.N.Y. Aug. 2, 2019).

(3) <u>Desirability or undesirability of concentrating the litigation</u>. As a matter of public policy, the State of Alaska has an interest in the individual, citizen enforcement of the UTPCPA. Given the actual monetary losses which proposed class members have suffered, the concentration of claims in a single action is more than likely to be the only vehicle by which private individuals will endeavor to enforce the UTPCPA.

(4) <u>Difficulty in management</u>. The court does not perceive anything unusual or difficult about the management of a class action based upon allegations that LLR's use of its Audrey POS system for collecting sales taxes violated the UTPCPA.

(5) <u>Other factors</u>. LLR argues that its voluntary refund program is superior to the proposed class action because it "has already provided an immediate and comprehensive solution to the class by refunding all alleged overcharged sales tax. . . ."[67] The question is

---

[67]Memorandum in Support of Defendants LLR, Inc. and LuLaRoe, LLC's Opposition to Plaintiff's Motion for Class Certification at 29, Docket No. 107.

Case 3:18-cv-00197-HRH   Document 127   Filed 09/16/21   Page 24 of 31

whether the court can consider LLR's voluntary refund program as part of its superiority analysis.

In <u>Wolin</u>, 617 F.3d at 1175, the court of appeals states that the Rule 23(b)(3)(A) through (D) factors are not "exhaustive and other factors may be considered." The court of appeals does not address the question of whether or not matters such as a voluntary refund program may be considered. Rather, the circuit court cites Wright and Miller's view that "the purpose of the superiority requirement is to assure the class action is the most efficient and effective means of resolving the controversy." <u>Id.</u> (quoting 7AA Charles Wright, Arthur Miller & Mary Kay Kane, Federal Practice and Procedure, § 1779 (3d ed. 2005)). The Ninth Circuit goes on to discuss litigation costs on an individual basis as opposed to class litigation. This court concludes that <u>Wolin</u> stands for the proposition that factors in addition to those specified by the rule which have a nexus to the evaluation of two or more means of <u>adjudication</u> may be considered. <u>Wolin</u> does not stand for the proposition that the comparison of a voluntary refund program to a class action would be appropriate. <u>Wolin</u> does not open the door to consideration of private, non-adjudicative proceedings such as LLR's refund program.

A voluntary refund program, such as that undertaken by LLR, is not a form of adjudication. Rule 23(b)(3)(A)-(D) list is expressly not exclusive, but that list does not in any fashion alter the court's chore with respect to superiority, which is to compare methods of <u>adjudication</u>. "Adjudicate" means "to rule upon judicially" or "adjudge".[68] By Rule 23(b)(3), the Supreme Court, with the consent of Congress, has provided that this court should compare the methods of adjudicating a controversy, focusing upon the methods that

---

[68]<u>Black's Law Dictionary</u> at 47 (9th ed.).

Case 3:18-cv-00197-HRH   Document 127   Filed 09/16/21   Page 25 of 31

are available for the fair and efficient "adjudication" of controversies. LLR's unilateral decision to embark upon a refund program is not a form of adjudication. See In re Aqua Dots, 654 F.3d at 752 (recall program that included refunds not an adjudication for purposes of Rule 23(b)(3)); In re Scotts EZ Seed Litig., 304 F.R.D. 397, 415 (S.D.N.Y. 2015) (rejecting argument that refund program was superior to class action, in part because court was "not convinced non-adjudicative forms of redress may even be considered under Rule 23(b)(3)'s superiority analysis"); In re Hannaford Bros. Co. Customer Data Sec. Breach Litig., 293 F.R.D. 21, 35 (D. Me. 2013) (concluding "that Hannaford may or may not have a good [refund] program to satisfy aggrieved customers, but . . . the Hannaford program is not relevant to my superiority determination under the class certification decision"); Martin v. Monsanto Co., Case No. ED CV 16–2168–JFW (SPx), 2017 WL 1115167, at *9 (C.D. Cal. March 24, 2017) (citation omitted) (rejecting argument that refund program was superior to class action because "[p]ursuant to the plain language of Fed. R. Civ. P. 23(b)(3), [t]he analysis is whether the class action format is superior to other methods of adjudication, not whether a class action is superior to an out-of-court, private settlement program"); Korolshteyn v. Costco Wholesale Corp., Case No. 3:15-cv-709-CAB-RBB, 2017 WL 1020391, at *8 (S.D. Cal. March 16, 2017) ("allowing class members to obtain a refund is not an alternative to 'adjudicating' whether [the d]efendants are liable for material misrepresentations on the labels of their products"); Forcellati v. Hyland's, Inc., Case No. CV 12–1983–GHK (MRWx), 2014 WL 1410264, at *12 (C.D. Cal. Apr. 9, 2014) (rejecting argument that the defendants' refund program was superior to a class action because "it does not comport with the plain language of Rule 23, which directs courts to consider other available methods of adjudication").

The court is mindful that other courts have reached a different result and concluded that "non-litigation alternatives" such as a refund program can be considered as part of the superiority analysis. In re ConAgra Peanut Butter Products Liability Litig., 251 F.R.D. 689, 700 (N.D. Ga. 2008); see also, Kurtz v. Kimberly–Clark Corp., 321 F.R.D. 482, 552 (E.D.N.Y. 2017) (observing that other "[c]ourts in this circuit have considered the availability of non-judicial alternatives, such as a refund program for consumers, as an alternative method of adjudication"); Pagan v. Abbott Laboratories, Inc., 287 F.R.D. 139, 151 (E.D.N.Y. 2012) (citation omitted) (finding that a class action was not superior to the defendants' refund program because "[w]here available refunds afford class members a comparable or even better remedy than they could hope to achieve in court, a class action would merely divert a substantial percentage of the refunds' aggregate value to the class lawyers"); Webb v. Carter's Inc., 272 F.R.D. 489, 504 (C.D. Cal. 2011) (concluding that "a class action would not be a superior method of adjudicating the claims presented here . . . because Carter's is already offering the very relief that [the p]laintiffs seek" via a refund program); In re Phenylpropanolamine (PPA) Products Liability Litig., 214 F.R.D. 614, 622 (W.D. Wash. 2003) (finding that a class action was not superior to the defendants' refund program because "[i]t makes little sense to certify a class where a class mechanism is unnecessary to afford the class members redress"); Daigle v. Ford Motor Co., Case No. 09–3214 (MJD/LIB), 2012 WL 3113854, at *5 (D. Minn. July 31, 2012) (concluding that because Ford's refund program "provide[d] most of the putative class the relief it seeks[,] a class action does not appear to be a superior method to adjudicate the putative class claims"). But, in all of these cases, except for ConAgra, the courts did not expressly consider whether a refund program was an "adjudication" for purposes of Rule 23(b)(3). Rather, they

appeared to just assume that a refund program could be considered as part of the superiority analysis. And, in ConAgra, the court's conclusion that it could consider the defendants' recall/refund program as part of its superiority analysis was largely based on the fact that "the [p]laintiffs did not cite any cases in this Circuit specifically holding that only litigation alternatives be considered." ConAgra, 251 F.R.D. at 700. However, as explained above, this court does not believe that it can blatantly ignore the dictate of Rule 23(b)(3), which is that the court compare available methods for fairly and efficiently adjudicating the controversy between parties. Because LLR's voluntary refund program is not an "adjudication" for purposes of Rule 23(b)(3), it has no bearing on the court's superiority analysis.

LLR also questions whether a class action can be considered superior "where certification of a class would threaten to impose liability disproportionate to the harm caused." Bateman v. American Multi-Cinema, Inc., 623 F.3d 708, 717 (9th Cir. 2010). Here, for most, if not all, of the proposed class members, there is a huge disparity between the remedy for loss of use of money for a brief period of time as compared to the $500 statutory penalty for each transaction. But, the Ninth Circuit counsels against "deny[ing] class certification based on the potential amount of damages as compared to the extent of harm. . . ." Id. at 719. Applying that counsel to this case means that the court may not second-guess the Alaska Legislature on the appropriateness of a $500 statutory penalty, even if the actual monetary loss may be small by comparison. Superiority considerations must be consistent with the purpose of the statute in question, which means, in this case, that consideration of a seemingly trivial loss as opposed to a huge statutory penalty would be a false comparison.

Having considered all relevant factors, the court finds and concludes that the proposed class action "is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Section V – Conclusion

In consideration of the foregoing, plaintiff's motion for class certification is granted. The court finds that the four requirements of Rule 23(a), numerosity, commonality, typicality, and adequacy of representation, have been met. The court also finds that the prerequisites for the certification of a Rule 23(b)(3) class action have been established. Questions of law and fact common to members of the class predominate over the questions affecting individual members and a class action will be superior to other available methods for fairly and efficiently adjudicating the controversy between plaintiff and the class, on the one hand, and LLR, on the other hand.

In furtherance of Rule 23(c)(1)(B), the court defines the class as:

> All persons who paid "tax" on a purchase of LuLaRoe products and whose purchase was delivered into a location in Alaska that does not assess a sales or use tax on the clothing that LuLaRoe sells.

> Excluded from the class are Defendants, their past and present officers, employees, agents or affiliates; counsel who have entered an appearance in this action; and any judge who presides over this action.[69]

The class claim is that LLR engaged in unfair trade practices by billing class members residing in jurisdictions which do not impose a sales tax for a non-existent sales tax as alleged in Count I of plaintiff's second amended complaint.

---

[69]Plaintiff's Brief in Support of Motion for Class Certification at 8, Docket No. 97.

Case 3:18-cv-00197-HRH   Document 127   Filed 09/16/21   Page 29 of 31

## Section VI – Appointment of Class Counsel

Having certified this case as a class action for plaintiff's UTPCPA claim, the court is obligated to appoint class counsel. Fed. R. Civ. P. 23(g).

Plaintiff's current counsel, Kelly K. Iverson, of Carlson Lynch Sweet Kilpela & Carpenter, LLP, of Pittsburgh, Pennsylvania, and James J. Davis, Jr. and Goriune Dudukgian of Northern Justice Project, LLC, of Anchorage, Alaska, seek appointment as class counsel. In appointing class counsel, the court considers the factors set out in Rule 23(g)(1)(A).

The court's file in this case reflects that counsel have done extensive work. Depositions have been taken, records have been procured from LLR, and motion practice – as well as an appeal to the Ninth Circuit Court of Appeals – have been successfully negotiated by plaintiff's counsel. And, as discussed above, the declarations of Iverson and Dudukgian reflect their class action experience. Motion practice in this case has demonstrated counsel's knowledge of applicable law. Finally, and judging from the foregoing, counsel have the resources to move this case forward.

LLR has suggested that plaintiff's counsel are only looking out for themselves, given that they continue to pursue plaintiff's claims in this case even though other cases they have brought against LLR have been dismissed. But nothing the court has seen to date convinces it that plaintiff's counsel are not acting in the best interest of plaintiff and the proposed class.

The court finds that proposed class counsel will fairly and adequately represent the interests of the class certified for this case.

## Section VII – Conduct of the Case as a Class Action

Rule 23(c)(2)(B) provides for giving notice of class certification to class members by "the best notice that is practicable under the circumstances, including individual notice to all

Case 3:18-cv-00197-HRH   Document 127   Filed 09/16/21   Page 30 of 31

members who can be identified through reasonable effort."[70]  Counsel for plaintiff, in consultation with counsel for LLR, shall propose an appropriate form and means of effecting the required notice to class on or before October 18, 2021.

Based upon input from counsel, the court has heretofore entered a Rule 16, Federal Rules of Civil Procedure, scheduling and planning order for the development of this case.[71] Counsel will please confer and, on or before September 30, 2021, inform the court as to whether there is a need to modify the current scheduling order.  As required by Rule 23(d)(1)(B), counsel will please confer and, on or before September 30, 2021, inform the court of their view regarding the issuance of orders pursuant to Rule 23(d)(1)(A) through (E).

DATED at Anchorage, Alaska, this 16th day of September, 2021.

/s/  H. Russel Holland
United States District Judge

---

[70]Rule 23(c)(2)(B) specifies the possible means of giving notice, including the United States mail.  This rule further specifies seven items that must be addressed in the notice.

[71]Docket No. 83.

Case 3:18-cv-00197-HRH   Document 127   Filed 09/16/21   Page 31 of 31