IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

KATIE VAN, individually and on
behalf of all others similarly situated,

                Plaintiff,

      vs.

LLR, INC., d/b/a LuLaRoe; and
LULAROE, LLC,

                Defendants.

Case No. 3:18-cv-00197-JMK

**ORDER REGARDING CLASS
CERTIFICATION**

      At Docket 167, Plaintiff Katie Van, individually and on behalf of others similarly situated, files a *Renewed and Amended Motion for Class Certification*. Defendants LLR, Inc., and LuLaRoe, LLC (collectively "LLR"), respond in opposition at Docket 176. Ms. Van then, at Docket 190, objected to evidence proffered in support of LLR's opposition. The Court took the motion under advisement after hearing oral argument on November 14, 2023.

      As explained below, the Court **DENIES** Ms. Van's *Motion for Class Certification*.

# I.   BACKGROUND

## A.   Factual Background

LLR is a multi-level marketing company that sells clothing to purchasers across the United States through "independent fashion retailers" located in all fifty states.[1] These retailers purchase LLR products wholesale and later sell those products to consumers.[2]   Retailers manage most aspects of their businesses, including ordering, inventory, advertising, marketing, pricing, invoicing, shipping, and returns.[3]

In 2014, LLR, through a software developer, created a customized "point of sale" system called "Audrey" to collect sales taxes for retailers, among other things.[4]   In 2015, LLR introduced Audrey to retailers and began collecting and remitting sales taxes on their behalf.[5]   However, Audrey did not allow sales taxes to be assessed based on the location where retailers shipped merchandise in interstate sales.[6]   Rather, Audrey was only capable of assessing sales taxes based on the taxing jurisdiction that corresponded with a retailer's address.[7]

In response to this flaw, LLR installed a toggle switch in Audrey which retailers could engage to override the system's tax calculation and charge a different amount or no tax at all.[8]   Nonetheless, by 2016, LLR concluded that Audrey had proved

---

[1]  Docket 108-1 at ¶ 3.
[2]  *See* Docket 96-2 at 5–6; Docket 108-1 at ¶ 3.
[3]  Docket 108-1 at ¶ 5.
[4]  *Id.* at ¶ 9.
[5]  *Id.*; Docket 108-2 at ¶ 3.
[6]  Docket 108-1 at ¶ 11.
[7]  *Id.*
[8]  *Id.* at ¶ 12.

unworkable for collecting sales taxes on inter-jurisdictional sales and took steps to address the issue, including implementing a new tax policy for its retailers.[9]  The policy informed retailers that Audrey would collect sales taxes from consumers based on the location of the retailer.[10]

Ultimately, LLR also concluded that Audrey could not be fixed and developed a new system called "Bless," which it launched in January 2017.[11]  Retailers transitioned to Bless by May 2017, and LLR disabled Audrey.[12]

From Audrey's introduction in April 2015 until Bless was fully implemented in May 2017, every transaction processed using Audrey charged sales tax based on the location of the retailer making the sale.[13]  As a result, Alaskans who purchased LLR products from retailers located outside Alaska were systematically charged a sales tax that they did not owe.

During this period, consumers questioned the tax or complained about its application to retailers.[14]  Retailers often explained LLR's interim tax policy and consumers nonetheless decided to purchase LLR products.[15]  Additionally, some retailers responded to inquiries about the improper sales tax by providing offsetting discounts on

---

[9] *Id.* at ¶¶ 13–16.
[10] Docket 96-10.
[11] Docket 108-1 at ¶ 17.
[12] *Id.* at ¶¶ 17–18.
[13] *Id.* at ¶ 18.
[14] Docket 108-2 at ¶ 9.
[15] Docket 108-21 at 18–19; Docket 176-7 at 4–6; Docket 176-9 at 4–6; Docket 176-10 at 4; Docket 176-11 at 4–5; Docket 176-12 at 4–5; Docket 176-13 at 4; Docket 176-14 at 4; Docket 176-15 at 4; Docket 176-16 at 5–6.

the price of merchandise, free shipping, free products, credit on future purchases, or vouchers.[16]

Beginning in June 2016, LLR analyzed and identified transactions in which consumers were charged a tax not owed in their jurisdictions, including transactions involving consumers in Alaska.[17] Then, beginning in March 2017, LLR issued refunds of erroneously assessed sales taxes.[18] LLR continued to review transactions and issue sales tax refunds for all transactions that occurred until Audrey was disabled on May 31, 2017.[19]

## B. Procedural History

In 2018, Ms. Van initiated this suit on behalf of a putative class of 10,606 Alaskans who made 72,373 separate purchases from LLR retailers in which a sales tax was improperly assessed. In an amended complaint, she alleged two causes of action: one for violation of the Alaska Unfair Trade Practices and Consumer Protection Act, and one for conversion and misappropriation.[20]

This case has twice been appealed to the Ninth Circuit Court of Appeals. In the first appeal ("*Van I*"), the panel reversed the district court's order dismissing the case for lack of jurisdiction.[21] It held that "the temporary loss of use of one's money constitutes

---

[16] *E.g.,* Docket 176-7 at 4–6 (discounts, credit, and vouchers); Docket 176-9 at 4–5 (discounts noted on invoices when consumers asked for discounts or when the retailer offered on their own); Docket 176-10 at 5 (same); Docket 176-11 at 5 (discounts, free shipping, or free merchandise); Docket 176-12 at 5 (discounts, free shipping, free merchandise, or promotional codes); Docket 176-13 at 4–5 (discounts or free shipping).

[17] Docket 108-2 at ¶¶ 16–22.

[18] *Id.* at ¶ 23.

[19] *Id.* at ¶ 24–27.

[20] Docket 4.

[21] *Van v. LLR, Inc.*, 962 F.3d 1160 (9th Cir. 2020) (*Van I*).

an injury in fact for purposes of Article III" standing, reversed the district court's dismissal order, and remanded for further proceedings.[22]

Following further proceedings on remand, Judge Holland certified a class.[23] LLR appealed the certification order.[24]  On the second appeal ("*Van II*"), the Ninth Circuit addressed three issues:  whether (1) class members who suffered small injuries lacked standing; (2) class certification should be reversed because some class members voluntarily paid the sales tax; and (3) class certification should be reversed because some retailers offset the tax via individual discounts.[25]

With respect to the first question, the panel held that "[a]ny monetary loss, even one as small as a fraction of a cent, is sufficient to support standing" and that "the presence of class members who suffered only a fraction of a cent of harm does not create individualized issues that could predominate over class issues."[26]

With respect to the second question, the panel acknowledged that "[i]t is questionable whether a purchaser's voluntary payment of an improperly charged sales tax is a defense . . . to a UTPCPA [Unfair Trade Practices and Consumer Protection Act] claim under Alaska law."[27]  Nonetheless, it assumed the defense was valid for the purpose of argument and concluded that "LuLaRoe's minimal proffers of evidence supporting this defense were insufficient to raise individualized questions that could predominate over

---

[22] *Id.* at 1164.
[23] Docket 127.
[24] Docket 131.
[25] *Van v. LLR, Inc.*, 61 F.4th 1053 (9th Cir. 2023) (*Van II*).
[26] *Id.* at 1064.
[27] *Id.* at 1066.

common questions . . . ."[28]  Specifically, the panel held that invoices in the record reflected that purchasers did not pay an improper tax at all and did not show that any class members "knew of the sales tax *and then paid it*."[29]  Furthermore, the panel found that declarations from LLR retailers did "not state with certainty that any member of this Alaska class was informed of the nature of the improper sales tax, was not provided a discount, and paid the sales tax nonetheless."[30]

Finally, the panel held that the district court was obliged to determine whether common questions predominated over individualized questions related to individual discounts.  LLR provided 18 declarations that demonstrated that retailers provided discounts to purchasers to offset the improper tax.[31]  This evidence sufficed to substantiate that individualized issues existed regarding standing and "ascertainable loss" and should have triggered the district court to determine "whether a class-member-by-class-member assessment of the individualized issue will be unnecessary or workable."[32]

The panel therefore concluded that "the district court clearly erred in its assessment of whether the individualized issues generated by the retailer discounts—some of which were provided to offset the improper sales tax—defeat the predominance of class issues."[33]  It then vacated the district court's order certifying the class and remanded "[t]o

---

[28] *Id.*
[29] *Id.*
[30] *Id.* at 1068.
[31] *Id.* at 1068 n.13.
[32] *Id.* at 1069.
[33] *Id.* at 1058.

afford the district court a new opportunity to weigh the predominance of class issues against this individualized issue . . . ."[34]

Judge Christen also filed a partial concurrence in which she concluded the court lacked appellate jurisdiction to consider the "voluntary payment" defense as the district court had decided the issue in an order striking the defense prior to certification.[35] Moreover, in a footnote, she expressed serious doubts as to whether such a defense exists under Alaska law.[36]

## II. LEGAL STANDARD

Before certifying a class, a court must conduct a "rigorous analysis" and "probe behind the pleadings" to determine if plaintiffs have carried their burden of establishing that the proposed class action meets the requirements of Rule 23.[37] "This rigorous analysis requires judging the persuasiveness of the evidence presented for and against certification."[38] "Courts must resolve all factual and legal disputes relevant to class certification, even if doing so overlaps with the merits."[39]

---

[34] *Id.*

[35] *Id.* at 1070.

[36] *Id.* at 1070 n.1 ("There is no indication that the voluntary payment doctrine has ever been applied in a case involving the Alaska UTPCPA, and as far as I can tell, no other state that has adopted this uniform code has recognized the voluntary payment doctrine as a defense.").

[37] *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011); *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 543–44 (9th Cir. 2013).

[38] *Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC*, 993 F.3d 774, 784 (9th Cir. 2021) (internal citation and quotation marks omitted).

[39] *Id.*

The party seeking class certification bears the burden of showing that they have met the four requirements of Rule 23(a) and that their class action may be maintained as one of the types of such actions defined in Rule 23(b).[40]

In a "predominance" class action under Rule 23(b)(3), a plaintiff must demonstrate that six prerequisites under Rule 23 are met: (1) the class is so numerous that joinder of all members is impracticable ("numerosity"); (2) there are questions of law or fact common to the class ("commonality"); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ("typicality"); (4) the representative parties will fairly and adequately protect the interests of the class ("adequacy of representation"); (5) common questions of law or fact predominate over any questions affecting only individual members ("predominance"); and (6) the class-action mechanism is "superior to other available methods for fairly and efficiently adjudicating the controversy" ("superiority").[41] In a Rule 23(b)(3) class action, "Rule 23(a)(2)'s 'commonality' requirement is subsumed under, or superseded by, the more stringent Rule 23(b)(3) requirement that questions common to the class 'predominate over' other questions."[42]

At the class certification stage, a district court's consideration of whether a plaintiff has met the requirements for certification "should not be limited to only admissible

---

[40] *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001), *opinion amended on denial of reh'g*, 273 F.3d 1266 (9th Cir. 2001).

[41] Fed. R. Civ. P. 23(a), (b)(3); *Zinser*, 253 F.3d at 1186.

[42] *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 609 (1997).

evidence."[43]  "When conducting its 'rigorous analysis' into whether the Rule 23(a) requirements are met, the district court need not dispense with the standards of admissibility entirely."[44]  "Instead, an inquiry into the evidence's ultimate admissibility should go to the weight that evidence is given at the class certification stage."[45]

## III.   DISCUSSION

### A.    Ms. Van's Evidentiary Objections

As a preliminary matter, the Court must address several objections Ms. Van raises to evidence adduced in support of LLR's opposition to class certification.  Ms. Van argues that declarations produced in support of LLR's opposition to class certification should be given limited weight.

At this stage, the Court may consider evidence in connection with class certification, even if it ultimately may not be admissible.  "[E]vidence's ultimate admissibility should go to the weight that evidence is given at the class certification stage."[46]

As explained below, the evidentiary objections Ms. Van raises do not sway the Court's decision regarding class certification.

### 1.    The retailer declarations deserve weight in the Court's class certification analysis

Ms. Van argues that the declarations of LLR retailers submitted in support of LLR's opposition to class certification ("the retailer declarations") are generic, lack

---

[43] *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1005 (9th Cir. 2018).
[44] *Id.* at 1006.
[45] *Id.*
[46] *Id.* at 1005.

personal knowledge, and do not address specific sales to any Alaska customer.[47] She highlights that many of the retailers, during depositions, could not identify specific transaction in Alaska for which they provided a discount.[48] Furthermore, she asserts that the declarations are "boilerplate" and thus warrant skeptical treatment.[49]

LLR responds that the Retailer declarations are not speculative and do not suffer from a lack of personal knowledge as they are based on each retailer's experience selling to Alaska customers.[50] It also asserts that the fact that retailers do not recall specific details regarding their transactions with Alaska customers reinforces its contention that individualized inquiry that will be required to identify those who received discounts and those who did not.[51] Moreover, LLR insists that the retailer declarations are not boilerplate or "cookie-cutter" and that their similarity reinforces that the provision of discounts was widespread.[52]

The Court finds the retailer declarations at issue are based on personal knowledge and are not speculative. Each retailer declaration addresses the declarant's experience managing their LLR sales and includes assertions that the retailer made sales to customers in Alaska in particular. In at least one case, a retailer knew that they had made sales in Alaska because they had previously lived in the state and made sales to members

---

[47] Docket 190 at 6–9.
[48] Docket 201 (SEALED) at 4.
[49] Docket 190 at 6.
[50] Docket 197 at 9.
[51] *Id.* at 10.
[52] *Id.* at 13.

of their previous community.[53]  In another, the retailer sold in all 50 states.[54]  Thus, while some of the declarations are framed generally, it is clear that the declarants made sales to Alaska customers.  Furthermore, it is understandable that the declarants could not identify specific transactions involving Alaska customers as the sales at issue constituted a few among many and took place years prior to their depositions.

The retailer declarations are not boilerplate or "cookie cutter" in a way that fundamentally undercuts their reliability.  That the declarations are similarly structured and use similar language suggests that they are litigation driven.  But this Court need not indulge the fiction that a declarant's statements are the organic product of an uninterested party.  The declarations are not unreliable or unhelpful for purposes of class certification because they were drafted for the purpose of litigation.  At bottom, the declarations point to inconsistent, idiosyncratic practices among LLR retailers when providing discounts to Alaska customers.  Although the declarations may be taken with a grain of salt, this basic point is sufficiently substantiated.

## 2.    The retailer declarations are not replete with hearsay

Ms. Van further argues that the retailers' assertions related to their prior communications with Alaska consumers and other retailers are inadmissible hearsay.[55]  LLR replies that any statements made concerning communications between the retailers

---

[53] *See* Docket 176-9 at ¶ 5.
[54] *See* Docket 176-11 at ¶ 2.
[55] Docket 190 at 8.

and putative class members are statements of a party opponent under Federal Rule of Evidence 801(d)(2).[56]

The Ninth Circuit has not adopted "a blanket rule of admissibility for the statements of absent class members pursuant to Fed. R. Evid. 801(d)(2)(A)."[57] "Absent class members are considered 'parties for some purposes and not for others,'" so whether their statements constitute those of a party opponent depends on the context in which those statements are made.[58] When a putative or absent class member's statement is obtained within a process with "adequate strictures . . . to ensure that the requirements of Fed. R. Evid. 801 were met," those statements are treated as those of a party opponent.[59] In *Pierce*, the Court found there were adequate strictures to treat the statements of an absent class member as those of a party opponent because there was notice to counsel, disclosure of the nature of the suit, and counsel's presence when the statements were taken.[60]

Here, the putative class members' statements are not those of a party opponent as they were made prior to litigation and without any strictures like those that existed in *Pierce*.

However, the retailer declarations are not replete with hearsay as the Alaska customer statements referenced are not needed for their truth. The Court is concerned with the retailers' conduct—namely, whether retailers provided discounts—rather than whether

---

[56] Docket 197 at 15.
[57] *Pierce v. Cnty. of Orange*, 526 F.3d 1190, 1202 n.9 (9th Cir. 2008).
[58] *See id.* (quoting *Devlin v. Scardelletti*, 536 U.S. 1, 10 (2002)).
[59] *Id.*
[60] *Id.*

*Van v. LLR, Inc., et al.*                                                        Case No. 3:18-cv-00197-JMK
Order Regarding Class Certification                                                          Page 12
Case 3:18-cv-00197-JMK   Document 203   Filed 12/05/23   Page 12 of 28

Alaska customers inquired about the tax or requested a discount. These are ancillary issues which are not relevant to the Court's predominance inquiry.

### 3. The retailer declarations do not contain inadmissible habit or routine evidence

Ms. Van also argues that the declarations are not admissible as evidence of habit or routine business practices.[61] LLR responds that it does not proffer these declarations as evidence of habit or routine business practices, but rather to generally show what types of discounts retailers applied to offset the improper tax.[62]

LLR need not show the provision of discounts was a habit or a routine business practice under Federal Rule of Evidence 406. Rule 406 provides that of "a person's habit or an organizations routine practice may be admitted to prove that on a particular occasion the person or organization acted in accordance with the habit or routine practice."[63] LLR's retailer declarations are not proffered for the purpose of proving that an individual retailer acted in accordance with a habit or practice on any particular occasion.

### 4. Jaime Ellis's supplemental declaration is entitled to some weight

Additionally, Ms. Van argues that the supplemental declaration of LLR Representative Jaime Ellis lacks personal knowledge and is speculative.[64] In her view, Mr. Ellis's assertions regarding the discounts provided by retailers to Alaskans cannot be based on his personal knowledge because the discounts were given by independent LLR

---

[61] Docket 190 at 5.
[62] Docket 197 at 11.
[63] Fed. R. Evid. 406.
[64] Docket 190 at 9.

retailers and not the result of any LLR practice.[65]  LLR responds that Mr. Ellis has shown personal knowledge in his declaration and that Ms. Van had not identified any contradictory evidence or basis to conclude that Mr. Ellis's declaration is unreliable.[66]

Mr. Ellis's supplemental declaration purports to provide a wider view of the putative class and the range of discounts that LLR retailers applied to transactions involving putative class members.[67]  In part, it seeks to correct a prior declaration in which Mr. Ellis indicated that there were approximately 13,680 transactions with retailers in Alaska where a retailer provided a discount.[68]  In his supplemental declaration, Mr. Ellis clarifies that this number was inaccurate because it only identified transactions where a discount was noted on the invoice.[69]

Mr. Ellis's supplemental declaration deserves weight.  The Court need not consider Mr. Ellis's characterization of the types of discounts retailers offered, as that information is adequately expressed in other declarations.

### 5. The collateral source benefits rule does not preclude LLR from introducing evidence of offsetting discounts

Ms. Van argues that discounts that offset sales taxes for Alaska customers constitute gratuitous benefits and evidence of these offsets may not be admitted under Alaska's collateral source benefit rule.[70]  LLR responds that Ms. Van misapplies the collateral source rule, which it asserts is a post-verdict procedure for reducing a damages

---

[65] *Id.*
[66] *See* Docket 197 at 20.
[67] *See* Docket 176-2.
[68] Docket 176-2 at ¶ 4 (discussing Mr. Ellis's prior declaration at Docket 108-2).
[69] *Id.* at ¶¶ 4–6.
[70] Docket 190 at 7–8.

*Van v. LLR, Inc., et al.*                                                                     Case No. 3:18-cv-00197-JMK
Order Regarding Class Certification                                                                                Page 14
Case 3:18-cv-00197-JMK   Document 203   Filed 12/05/23   Page 14 of 28

award where a plaintiff has received a collateral source benefit for the same injury that is the basis of their suit and is inapplicable.[71]

Alaska's common law collateral source benefits rule provides that "damages may not be diminished or mitigated on account of payments received by plaintiff from a source other than the defendant."[72] "Evidence of payments from collateral sources is thus generally excluded at trial as more prejudicial than probative" and this "exclusion is based on the assumption that if the jury knows that the plaintiff has been or will be compensated for the injuries by someone other than the defendant, this information will more likely than not influence the jury against the plaintiff on the issues of liability and damages."[73]

Alaska statute modifies this common law rule and creates a "post-verdict procedure for reducing a damage award if the plaintiff has received amounts 'as compensation for the same injury from collateral sources that do not have a right of subrogation by law or contract.'"[74] Notwithstanding this procedure, a defendant may not introduce evidence of "gratuitous benefits provided to the claimant."[75]

The collateral source benefits rule is inapplicable. LLR seeks to introduce evidence of discounts LLR retailers provided to putative class members because a discount that offsets erroneously assessed taxes may vitiate an individual class member's standing to assert a claim for violation of the UTPCPA.[76] In turn, the presence of individualized

---

[71] Docket 197 at 6–7.
[72] *Beaulieu v. Elliott*, 434 P.2d 665, 673 (Alaska 1967).
[73] *Weston v. AKHappytime, LLC*, 445 P.3d 1015, 1021 (Alaska 2019) (internal quotations and citations omitted).
[74] *Id.* (quoting Alaska Stat. § 09.17.070(a)).
[75] Alaska Stat. § 09.17.070(d)(3).
[76] *See Van II*, 61 F.4th at 1068 n.12.

issues of standing may bear on whether common issues predominate such that the Court may certify a class. The evidence of discounts is not proffered to diminish or mitigate damages, but to demonstrate that many individual class members may lack standing and that the court will need to assess standing on a class-member-by-class-member basis.

Furthermore, the evidence will not be introduced to a jury as the Court will assess standing as a threshold matter. At this stage, there is no risk that a jury will be influenced. Accordingly, it is not appropriate to limit the weight accorded to the retailer declarations on this basis.

## B. Ms. Van's Motion for Class Certification

Having considered Ms. Van's evidentiary objections, the Court turns to the issue of class certification. Ms. Van requests that the Court certify a class of:

> All persons who, on at least one occasion, paid a "tax" on a purchase of LuLaRoe products and: (1) had no discount identified on the transaction; and (2) had the purchase delivered to a location in Alaska that does not assess sales or use tax on such purchase.

Here, the Court focuses its analysis on the "predominance" inquiry required by Rule 23(b)(3). The Court previously found that the four Rule 23(a) requirements are present in this case and that the class action mechanism was superior to other methods of adjudication.[77] The Ninth Circuit did not disturb the reasoning underlying those conclusions and the parties did not raise them in briefing this motion. Therefore, for the reasons explained in the Court's prior certification order, these requirements are met. The

---

[77] Docket 127 at 13–29.

remaining issue is whether common questions of law or fact predominate over any questions affecting only individual members in Ms. Van's proposed class.

As Ms. Van laid out in her prior motion for class certification, several questions of law and fact are common to all putative class members: whether (1) LLR charged them a tax, whether this tax was authorized by law; (2) this conduct was unfair, deceptive, or likely to deceive consumers; and (3) they are entitled to damages under the UTPCPA.[78] In her renewed motion, Ms. Van argues that an amended class should be certified, as the proposed class definition ensures that she and other class members will only recover UTPCPA damages for transactions in which there was an improper tax charged and no discount that could have offset the tax.[79]

LLR responds that individualized issues predominate over the common issues and preclude class certification.[80] Specifically, LLR argues that the Court will need to individually assess whether putative class members who received discounts that offset the tax suffered "ascertainable loss" or have Article III standing.[81] Furthermore, LLR asserts that individualized inquiry will be required to determine whether individual class members knew of the tax and chose to pay it anyway, eliminating the causal connection between LLR's acts and class members' alleged loss.[82]

---

[78] *See* Docket 97 at 11; *see also* Docket 167-1 at 6 (explicitly incorporating these arguments).
[79] Docket 167-1 at 6–8.
[80] Docket 176 at 20–30.
[81] *Id.* at 22–27.
[82] *Id.* at 27–30.

At the class certification stage, the party seeking certification bears the burden of proving that class issues predominate over individualized issues, though they "need not rebut every individualized issue that could possibly be raised."[83]  They must "demonstrate by a preponderance of the evidence that a common question of law or fact exists—an issue that is capable of class-wide resolution."[84]  "If the plaintiff demonstrates that class issues exist, the defendant must invoke individualized issues and provide sufficient evidence that the individualized issues bar recovery on at least some claims, thus raising the spectre of class-member-by-class-member adjudication of the issue."[85]  "If the defendant provides evidence that a valid defense—affirmative or otherwise—will bar recovery on some claims, then the district court must determine, based on the particular facts of the case, 'whether individualized questions . . . will overwhelm common ones and render class certification inappropriate under Rule 23(b)(3).'"[86]

Ultimately, "[p]redominance is not . . . a matter of nose-counting.  Rather, more important questions apt to drive the resolution of the litigation are given more weight in the predominance analysis over individualized questions which are of considerably less significance to the claims of the class."[87]  "Therefore, even if just one common question

[83] *Van II*, 61 F.4th at 1066 (citing *Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 664–65 (9th Cir. 2022) (en banc)).

[84] *Id.* at 1066–67.

[85] *Id.* at 1067 (citing *True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923, 932 (9th Cir. 2018)).

[86] *Id.* (quoting *Olean Wholesale Grocery Cooperative, Inc.*, 31 F.4th at 669).

[87] *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1134 (9th Cir. 2016) (internal citation omitted).

predominates, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately."[88]

Although Ms. Van has demonstrated that common questions of law and fact are capable of class-wide resolution, the existence of individualized questions of Article III standing counsels that certification of the amended class Ms. Van proposes is inappropriate.

### 1. Ms. Van demonstrates that common questions of fact and law exist

Ms. Van has demonstrated that class issues exist. In the Court's prior order certifying a class, it found that whether LLR committed an unfair trade practice, whether its conduct took place in commerce, whether Ms. Van and the proposed class suffered a loss of money, and how many transactions were the subject of LLR's conduct were issues of fact and law that "do not require individual proof, but rather, are subject to proof by common evidence as to LLR's operation of its Audrey POS system."[89] This remains true.

### 2. LLR raises the spectre of class-member-by-class-member adjudication

For its part, LLR produced sufficient evidence to show that there are individualized issues with respect to Article III standing and the existence of an "ascertainable loss" for purposes of the UTPCPA. Rather, LLR's evidence demonstrates that there is a risk that these issues will require class-member-by-class-member adjudication.

---

[88] *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 557 (9th Cir. 2019) (internal citations and quotations omitted).

[89] Docket 127 at 17–18.

In *Van II*, the Ninth Circuit held that LLR's 18 retailer declarations "invoked an individualized issue—that retailer discounts left some class members uninjured—and provided evidence that at least some class members lack meritorious claims because of this issue, thus summoning the spectre of class-member-by-class-member adjudication."[90] It then instructed the Court that it "must determine whether the plaintiff has proven by a preponderance of the evidence that the questions of law or fact common to class members predominate over any questions affecting only individual members—that is, whether a class-member-by-class-member assessment of the individualized issue will be unnecessary or workable."[91]

On remand, LLR strengthened its showing with respect to the discount issue by submitting more specific retailer declarations.[92] These declarations substantiate that retailers who sold LLR products to Alaska customers applied discounts and gave other benefits that they intended to offset an improper tax. Moreover, the retailers' declarations show that they did so in several different ways that were not consistently recorded on customer invoices.

---

[90] *Van II*, 61 F.4th at 1069.
[91] *Id.*
[92] *See* Docket 176-7; Docket 176-9; Docket 176-10; Docket 176-11; Docket 176-12; Docket 176-13; Docket 176-14; Docket 176-15; Docket 176-16.

### 3. The presence of discounts that may vitiate standing requires individualized inquiries that will overwhelm the common questions

The potential application of individual discounts that eliminate Article III standing for putative class members will require individualized inquiry and precludes the certification of the amended class sought here.[93]

It remains an open question whether a class representative must demonstrate that all putative class members have standing before a class may be certified.[94] However, "[e]very class member must have Article III standing in order to recover individual damages."[95] As such, "[w]hen individualized questions relate to the injury status of class members, Rule 23(b)(3) requires that the court determine whether individualized inquiries about such matters would predominate over common questions."[96] "Rule 23 . . . requires a district court to determine whether individualized inquiries into this standing issue would predominate over common questions."[97]

The *Van II* panel noted "[b]oth parties and the district court agree that any class member who received a discount in an amount greater than or equal to the improper sales tax for the purpose of offsetting the improper sales tax has no claim against

---

[93] The Court addresses the Article III standing issue and does not discuss "ascertainable loss" for the purposes of the UTPCPA because this issue was not substantively briefed. However, the inquiries are likely similar as the UTPCPA permits civil actions when "[a] person who suffers an ascertainable loss of money or property as a result of another person's act or practice declared unlawful by AS 45.50.471 . . . ." Alaska Stat. § 45.50.531(a).

[94] *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021) (emphasis in original) ("We do not here address the distinct question whether every class member must demonstrate standing *before* a court certifies a class.").

[95] *Id.* at 2208.

[96] *Olean Wholesale Grocery Cooperative, Inc.*, 31 F.4th at 668.

[97] *Id.* at 668 n.12.

LuLaRoe."[98] But it further indicated in a footnote that "the district court may be required to address this issue on remand."[99] In particular, it suggested that the district court may need to decide whether putative class members who received a discount to offset the improperly assessed sales tax have suffered a loss or injury sufficient to support Article III standing.[100]

In *Transunion*, the U.S. Supreme Court made clear that although a plaintiff may have a statutory cause of action to sue a defendant over a violation of law, they must also have suffered a concrete harm to satisfy the injury-in-fact prong of the Article III standing inquiry. "[U]nder Article III, an injury in law is not an injury in fact."[101] "Only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court."[102]

Putative class members who paid an improper sales tax, but received a discount in an amount equal to or greater than the tax did not suffer any injury in fact. The *Transunion* court recognized that "certain harms readily qualify as concrete injuries under Article III" and that "[t]he most obvious are traditional tangible harms, such as physical harms and monetary harms."[103] And the Ninth Circuit has already instructed this Court that Ms. Van "suffered a cognizable and concrete injury: the loss of a significant amount

---

[98] *Van II*, 61 F.4th at 1068.
[99] *Id.* at 1068 n.12.
[100] *Id.*
[101] *TransUnion*, 141 S. Ct. at 2205.
[102] *Id.*
[103] *Id.* at 2204.

of money (over $500) for a substantial amount of time (months with respect to some purchases, over a year with respect to others)."[104]

However, some class members were charged an improper sales tax but were given a discount in at least the amount of the tax. They therefore paid no more to purchase LLR products than they otherwise would have. As a result, they did not suffer the monetary harm contemplated here: the loss of the use of their money until the tax was later refunded.[105]

Some putative class members did not receive discounts, but received other benefits that retailers intended to offset the improper assessed tax. LLR submits declarations from retailers indicating that some provided free shipping, free products, credit on future purchases, or vouchers to customers who were assessed a sales tax they did not owe. It is not clear whether purchasers who received these benefits suffered a monetary harm or some other injury sufficient to constitute Article III standing. In cases where a retailer offset the tax by providing free shipping, a purchaser did not spend any more money than they otherwise would have in purchasing LLR products and therefore did not suffer a temporary loss of the use of their money.

On the other hand, the Court cannot say with certainty that a purchaser who received a benefit like a voucher, a promotional code, or free products did not temporarily lose the use of the money they paid to cover the improper tax, even if they received a

---

[104] *Van I*, 962 F.3d at 1162.
[105] *See id.* at 1162–65 (indicating Ms. Van's standing is based on the loss of the use of her money).

benefit of equal or greater value. In those cases, an individual who received a non-monetary benefit, like free merchandise, or a monetary benefit that could only be applied to future purchases, like a voucher, did temporarily lose the use of the money they paid to cover the improper tax. As such, they may have standing.

Adjudicating these individual questions of standing is necessary and "apt to drive the resolution of the litigation."[106] The standing inquiry is a compulsory, jurisdictional analysis that the trial court must undertake and that may be dispositive in many cases. Ultimately, identifying class members who lack standing requires individualized analysis and "will overwhelm common [questions] and render class certification inappropriate under Rule 23(b)(3).'"[107]

As the retailer declarations show, putative class members received discounts that could vitiate standing in several different ways. Crucially, discounts were not consistently reflected on invoices or provided in the same ways to all customers. As a result, there appears to be no means of common proof that would allow LLR to litigate whether an individual class member has standing and may recover damages. Instead, LLR would need to take testimony from each putative class member and potentially the retailer from whom they made their LLR purchase to determine whether an offsetting discount had been applied. Similar testimony would be required to identify those cases in which a purchaser received free shipping and then determine whether this was provided to offset

---

[106] *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1134 (9th Cir. 2016) (internal citation omitted).
[107] *Olean Wholesale Grocery Cooperative, Inc.*, 31 F.4th at 669.

the tax or was given for an independent reason. The evidence required to conduct this individualized analysis would dwarf that required to adjudicate common questions in this case.[108]

District courts have declined to certify classes in similar circumstances. For example, in *True Health Chiropractic, Inc. v. McKesson Corporation*, 896 F.3d 923 (9th Cir. 2018), the Ninth Circuit affirmed a district court's denial of class certification with respect a subclass of individuals who allegedly suffered violations of the Telephone Consumer Protection Act. At issue was whether an affirmative defense—that class members consented to receive communications that violated the TCPA—required individualized analysis.[109] Ultimately, the court found that class members who may have consented to receive communications in individual communications with McKesson representatives could not form a subclass because the defense would require individualized analysis of putative class members' communications and relationships with McKesson representatives.[110] By contrast, other possible subclasses, such as members who had consented in product registrations, could be formed because the defense was subject to common proof.[111]

Here, as in *McKesson*, individualized analyses of communications and relationships between LLR retailers and putative class members would be required to

---

[108] Even assuming putative class members who received benefits like vouchers or free merchandise had standing and did not need to be screened from the class, the magnitude of the individual analysis required to determine whether discounts or free shipping eliminated individuals from the class renders certification improper.

[109] *Id.* at 932–33.

[110] *Id.* at 933.

[111] *Id.*

adjudicate the standing defense to each class member's claim. Accordingly, the individualized question of standing predominates over the common questions of law and fact Ms. Van identifies, rendering class certification impracticable.

### 4. Putative class members' voluntary payment of the improper sales tax is not an issue that requires individualized inquiry

LLR argues that a second question persists that demands individualized analysis: whether Van and class members can prove any loss was caused by LLR's conduct because they paid the sales tax with full knowledge that it was an improper, out-of-state sales tax.[112] Ms. Van insists that this Court has already ruled that this defense is unavailable.[113] Failing that, Ms. Van argues that LLR's voluntary payment argument misconceives the UTPCPA's objective standard and that LLR had not produced sufficient evidence to show any individualized issue of voluntary payment.[114]

The Court has already ruled out the voluntary payment defense in this case. It is therefore not an individualized issue that will bar recovery on the UTPCPA claims. At Docket 94, the Court struck the voluntary payment defense and addressed it detail why the defense cannot apply to UTPCPA claims.[115] Further, in its order certifying a class at Docket 127, the Court again rejected LLR's "voluntary payment" argument because it was "largely a recast of LLR's voluntary payment defense (VPD), a defense the court has previously considered and rejected as to plaintiff's UTPCPA claim."[116] There, the Court

---

[112] Docket 176 at 22.
[113] Docket 200 (SEALED) at 16–17.
[114] *Id.* at 17–18.
[115] Docket 94 at 10–16.
[116] Docket 127 at 22.

noted its prior decision striking the defense at Docket 94 and that "neither intent nor actual deception is necessary to show deception under the UTPCPA."[117]  Ultimately, it held that "whether any of the proposed class members knew that they should not have been paying a sales tax on their LLR purchases but paid it anyway is not an individualized inquiry that will need to be made."[118]

Although this issue was addressed in LLR's appeal and the Ninth Circuit's decision in *Van II*, the panel did not disturb the Court's decision striking the voluntary payment doctrine as a defense.  Instead, the panel reasoned that, *assuming, arguendo,* that the Court had erred, LLR had not provided sufficient evidence to show that this individualized issue predominated over class issues.[119]  Indeed, at the outset, the appellate court indicated that, on remand, the trial court was to address only one of the three issues raised in the appeal.  It wrote, "the district court clearly erred in its assessment of whether the individualized issues generated by the retailer discounts—some of which were provided to offset the improper sales tax—defeat the predominance of class issues."[120]  It then vacated the class certification order and remanded "[t]o afford the district court a new opportunity to weigh the predominance of class issues against *this* individualized issue . . . ."[121]

---

[117] *Id.*

[118] *Id.*

[119] *Van II*, 61 F.4th at 1066 ("[W]e need not delve into this murky area of state law.  Even assuming, *arguendo*, that such a defense is valid under Alaska law, applies to the UTPCPA, and that the communications by some retailers were sufficient to make the defense applicable, LuLaRoe's minimal proffers of evidence supporting this defense were insufficient to raise individualized questions that could predominate over the common questions raised by Van.").

[120] *Id.* at 1058.

[121] *Id.* (emphasis added).

As it did in its prior certification order, this Court refuses to indulge LLR's recast of an issue that has been litigated and decided. Having previously concluded that LLR may not raise "voluntary payment" as a defense to its alleged violations of the UTPCPA, the fact that some individual class members may have purchased LLR products knowing that they were being assessed a tax that they did not owe is not an individualized issue that defeats the predominance of class issues.

## IV. CONCLUSION

Ms. Van's *Renewed Motion for Class Certification* is **DENIED**.

IT IS SO ORDERED this 5th day of December, 2023, at Anchorage, Alaska.

_____ */s/ Joshua M. Kindred* _____
JOSHUA M. KINDRED
United States District Judge